LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
(212) 465-1188
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| DENNY GONZALEZ, *on behalf of himself, and all* *FLSA Collective Plaintiffs and the Class,* | Case No.: |
| Plaintiff, | **CLASS AND COLLECTIVE** **ACTION COMPLAINT** |
| -against- | |
| HANOVER VENTURES MARKETPLACE LLC,    d/b/a LE DISTRICT, JOHN DOE COMPANY 1,    d/b/a HPH HOSPITALITY, PAUL LAMAS, PETER A POULAKAKOS, NICOLAS ABELLO, and DAVID COUCKE | JURY TRIAL DEMANDED |
| Defendants. | |

---

## <u>COMPLAINT</u>

Plaintiff DENNY GONZALEZ ("Plaintiff") on behalf of himself and all others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against HANOVER VENTURES MARKETPLACE LLC, d/b/a LE DISTRICT, JOHN DOE COMPANY 1, d/b/a HPH HOSPITALITY (together, "Corporate Defendants"), PAUL LAMAS, PETER A POULAKAKOS, NICOLAS ABELLO, and DAVID COUCKE (together, the "Individual Defendants," and collectively with the Corporate Defendants, the "Defendants"), and states as follow:

## INTRODUCTION

1.      Plaintiff allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, (2) unpaid overtime (3) unpaid wages due to an invalid tip credit, (4) liquidated damages, and (5) attorneys' fees and costs.

2.      Plaintiff further allege that, pursuant to the New York Labor Law ("NYLL"), they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, (2) unpaid overtime (3) unpaid wages due to an invalid tip credit, (4) unpaid spread of hours premium, (5) an award equal to all surcharges illegaly retained by Defendants, (6) statutory penalites, (7) liquidated damages, and (8) attorneys' fees and costs.

3.      Plaintiff brings this action on behalf of himself and all others similarly situated to recover unpaid wages, overtime wages, liquidated damages, interest, and reasonable attorney's fees and costs under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 *et seq.*) and the wage orders promulgated thereunder by the U.S. Department of Labor, and Articles 6, 7, and 19 of the New York Labor Law and the wage orders promulgated thereunder by the New York State Department of Labor and codified at 12 N.Y.C.R.R. §§ 135-146 ("NYLL").

4.      Additionally, Plaintiff DENNY GONZALEZ damages and other relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), New York Executive Law § 296 ("NYHRL"), and New York City Administrative Code § 8-107 ("NYCHRL") for creating and fostering a hostile work environment through persistent sexual harassment against Plaintiff.

5.      Plaintiff DENNY GONZALEZ also seeks damages and other relief under the common law of the State of New York for battery, subjected to regular sexual harassment at the

hands of his supervisor, Defendant DAVID COUCKE.

## JURISDICTION, AND VENUE

6.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C §1367.

7.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

8.      Plaintiff DENNY GONZALEZ, for all relevant time periods, was a resident of Hudson County, New Jersey.

9.      Defendants operate the marketplace known as Le District, which encompasses at least four (4) restaurants, at least two (2) cafes, at least seven (7) food counters, a grocer, and a wholesaler.   Le District's marketplace functions as a single integrated enterprise, with the following establishments operating at the following address:

     a.   225 Liberty Street, New York, NY  5th Avenue, New York, NY  10281 ("Le District")
        (i)   Restaurants
            a.   Beaubourg
            b.   Le Bar
            c.   Bar a Vin
            d.   L'Appart
        (ii)   Cafes
            a.   Coffee Bar
            b.   Café Gourmand
        (iii)   Counters
            a.   Poissonnerie
            b.   Rotisserie
            c.   Bar A Frites
            d.   Delices Du Chef
            e.   Cheese & Characuterie
            f.   Boulangerie
            g.   Boucherie
        (iv)   Grocers

       a. An Grocer (including a Florist, Juice Bar, Salad Bar, Wholesaler and Coffee Kiosk)
       b. An Online Wholesaler

(collectively, "Le District Establishments"). These restaurants, cafes and counters are listed on the Le District website as of March, 2020. *See* **Exhibit A**.

10.    HANOVER VENTURE MARKETPLACE, LLC, is the owner of Le District Establishments.  Defendant, HANOVER VENTURE MARKETPLACE, LLC, is listed as the employer on all paystubs and notices, and Defendant, HANOVER VENTURE MARKETPLACE, LLC is listed as the applicant for the licensing and permiting of the following establishments operated from within Le District's marketplace:

       a. Beauborg
       b. Boulangerie
       c. Le District
       d. Patisserie
       e. Le District Ice Cream
       f. Coffee Bar
       g. Bar A Fritte
       h. Le District Wholesalers
       i. Rotisserie

11.    These restaurants, cafes, bars, and counters are listed on the NYC Business License search located at https://www1.nyc.gov/nycbusiness/status/licenses-permits.  *See* **Exhibit B**.

12.    Le District Establishments advertise jointly on Defendants' website: https://www.ledistrict.com/#districts. Le District Establishments are listed alongside one another in the locations under the "Opening Hours" section of the website. *See* **Exhibit C**.

13.    The Le District Establishments advertise as a single unit, often refering to the establisments that comprise the Le District as a collective using possessive pronouns like "our." *See* **Exhibit D**.

14.    Le District Establishments serve a similar cuisine – French – and all share a similar décor and appearance.  In fact, according to the Defendants, all of Le District and their enterprises

share a common mission, "Our mission is to deliver delicious French-inspired fare in an environment where service and quality are paramount. Our market of bustling districts is comprised of culinary-specific stations, exciting restaurants, outdoor patio, and a fresh grocery curated by our talented taste-makers." *See* **Exhibit D**.

15.    Defendant HANOVER VENTURE MARKETPLACE, LLC, and Le District Establishments are owned and operated by Defendannt, JOHN DOE COMPANY 1, d/b/a HPH HOSPITALITY ("HPH HOSPITALITY").  Defendant HPH HOSPITALITY owns and operates the following 17 hospitality venues, which includes Le District, throughtout the city:

  a.    The Dead Rabbit Grocery and Grog – 30 Water Street, New York, NY 10004;

  b.    Vintry Wine & Whisky – 57 Stone Street, New York, NY 10004;

  c.    Harry's NYC – 1 Hanover Square, New York, NY 10004;

  d.    Le District – 225 Liberty St, New York, NY 10281;

  e.    Liberty Bistro/Beaubourg - 225 Liberty St, New York, NY 10281;

  f.    L'Appart - 225 Liberty St, New York, NY 10281;

  g.    Financier Patisserie – 93 Pearl St, 3rd Floor, New York, NY 10004;

  h.    Pier A Harbor House – 22 Battery Pl, New York, NY 10004;

  i.    The 18th Room – 134 9th Ave, New York, NY 10011;

  j.    Bathtub Gin – 132 9th Ave, New York, NY 10011;

  k.    Two Forks – 119 West 40th St, New York, NY 10018 and 4 New York Plaza, New York, NY 10004;

  l.    Harry's Italian Pizza Bar – 225 Murray St, New York, NY 10282;

  m.    The Pennsy Food Hall – 2 Pennslyvania Plaza, New York, NY 10121;

n.      Adrienne's Pizza Bar – 54 Stone St, New York, NY 10004;

o.      Vintry Fine Wines – 230 Murray Street, New York, NY 10282;

p.      Ulyss's Folk House – 58 Stone St/ 95 Pearl St, New York, NY 10004; and

q.      Stone Street Coffee Company – 129 9th St, Brooklyn, NY 11215. (collectively the "Restaurants")

16.     All the Restaurants belong to the JOHN DOE CORPORATION d/b/a HPH, which is owned and operated by Individual Defendants. The Restaurants are operated as a single integrated enterprise, under the common control of the Defendants.  Specifically, the Restaurants are engaged in related activities, share common ownership and have a common business purpose:

a.  All the Restaurants are owned and operated by the JOHN DOE CORPORATION d/b/a HPH.  Specifically, HPH's website lists all of the Restaurants on its page under "Our Properties" *See* **Exhibit E**.

b.  All the Restaurants use a central marketing department, and in fact HPH has hired a marketing team to design the entire marketing strategy, "including original video content for their entire portfolio of restaurants, bars, and cafes." *See* **Exhibit F**.

c.  All websites, and social media presence for the Restaurants are designed by the same company at the direction of HPH. *See* **Exhibit G**.

d.  Prior to opening, all new Restaurants must be approved by the Individual Defendants and Defendant, JOHN DOE CORPORATION d/b/a HPH.

e.  All the Restaurants' websites are exhibited when the Website-visitor clicks on each of the Restaurant links on the Website. ***See*** **Exhibit E** for the webpage of

the Website where Restaurants' menus may be accessed by clicking on the links.

f.   All the Restaurants share a common look and feel of a trendy New York City bar restaurant.

g.   All the Restaurants offer their venues for private parties and events on one (1) common Website.

h.   All the Restaurants are marketed jointly on the same Vimeo webpage. *See* **Exhibit H**.

i.   The Restaurants regularly share and exchange non-exempt employees, who are interchangeable among the Restaurants. Defendants require employees to work at Restaurant locations different from their primary place of employment on special occasions (e.g., parties or private events) when one (1) location is short-staffed. Defendants, on occasion, transfer employees between different locations based on their own business needs.

17.    Corporate Defendant, HANOVER VENTURE MARKETPLACE, LLC, was and is a Delaware limited-liability corporation duly registered with and doing business by virtue of the laws of the State of New York, with an address for service of process located at 93 Pearl Street, 3rd Floor, New York, NY, 10004 and a principle place of business at 225 Liberty Street, New York, NY 10281.

18.    Corporate Defendant JOHN DOE COMPANY 1, d/b/a HPH HOSPITALITY, is a business entity (the number and identity of which is not presently known) of unknown citizenship afiliated with Defendants' enterprise.

19.    At all relevant times, the Corporate Defendants were and continue to be an

"enterprise engaged in commerce" within the meaning of the FLSA and New York Labor Law and the Regulations thereunder.

20.     Individual Defendants, PETER A POULAKAKOS,  and PAUL LAMAS are owners and principals of each of the Corporate Defendants. Individual Defendants exercise operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class.  Individual Defendants exercise the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees of the Restaurants could complain to Individual Defendants directly regarding any of the terms of their employment, and Individual Defendants would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

21.     At all relevant times, Individual Defendant NICOLAS ABELLO, and DAVID COUCKE were a manager and supervisor of the L'Appart located at 225 Liberty St, New York, NY 10281, or otherwise an owner, shareholder, member, officer, director, manager, and/or supervisor of one or more of the Corporate Defendants.

22.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

23.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees (including but not limited to waiters, bussers, food runners, dishwashers, and bartenders) employed by

Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

24.    At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them (i) their proper wages due to application of invalid tip credit (ii) improper retention of FLSA Collective Plaintiffs tips. The claims of Plaintiff, stated herein, is essentially the same as those of the other FLSA Collective Plaintiffs.

25.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

26.    Plaintiff bring claims for relief as a collective action pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees (including but not limited to waiters, bussers, food runners, dishwashers, and bartenders) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("Class" or "Class Members").

27.    All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held,

and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

28.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff, DENNY GONZALEZ is a member of both the Class and the Tipped Subclass.

29.     Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All Class members were subject to Defendants' corporate practices of (i) failing to pay spread of hourse premium, (ii) failing to provide wage statements per requirements of the New York Labor Law, and (iii) failing to properly provide wage notices to Class members, at date of hiring and annually, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

30.     With regard to Plaintiff DENNY GONZALEZ, and the Tipped Subclass, Defendants failed to pay them the proper minimum wage and overtime because Defendants were not entitled to claim any tip credit because they failed to meet the statutory requirements under the

New York Labor Law. Plaintiff and the Tipped Subclass suffered from Defendants' failure to pay minimum wage and their proper overtime due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, (iv) failed to accurately keep track of daily tips earned and maintain records thereof and (v) instituted a improper tip pooling scheme,  improperly including "back-office employees," such as dishwashers, dish polishers, expiditers..

31.     Defendants' company-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

32.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

33.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

34.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

35.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class class members, including:

        a.   Whether Defendants employed Plaintiff and the Class members within the meaning of the New York law;

b.  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c.  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d.  Whether Defendants properly notified Plaintiff and the Class members of their hourly rates and overtime rates;

e.  Whether Defendants paid Plaintiff and Class members the proper wage for all hours worked;

f.  Whether Defendants properly provided notice to Plaintiff and the Tipped Subclass that Defendants were taking a tip credit;

g.  Whether Defendants improperly withheld tips from Plaintiff and the Tipped Subclass by illegally retaining portions of tips earned by Plaintiff the Tipped Subclass;

h.  Whether Defendants mandated an unlawful tip-pooling scheme whereby Plaintiff and the Tipped Subclass members were required to share tips earned with non-tipped employees;

i.  Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

j.  Whether Defendants required Plaintiff and the Tipped Subclass members to engage in non-tipped duties exceeding 20% of each workweek;

k.  Whether Defendants took the proper amount of tip credit allowance for each payment period under the New York Labor Law;

l.   Whether Defendants provided proper wage statements informing (i) Plaintiff and the Tipped Subclass of the amount of tip credit taken for each payment period, and (ii) all non-exempt employees of information required to be provided on wage statements under the New York Labor Law;

m.   Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the New York Labor Law; and

n.   Whether Defendants paid the "spread of hours" premium owed to Plaintiff and Class members working more than ten hours per day as required by New York Labor Law.

## STATEMENT OF FACTS

*Wage And Hour Allegations*

36.   Le District owns and operates a Michlin Star restaurant also known as "L'Appart a Le District", which is located at 255 Liberty Street New York, NY 10281.

37.   Plaintiff and others similarly situated worked at Defendants' restaurant.  Plaintiff worked as a waiter, but was frequently asked to engage in non-tipped tasks.

38.   Plaintiff began workings at Le District on February 12, 2018.

39.   During the entirety of Plaintiff's employment, he was paid a wage of $10 per hour.

40.   The typical weekly work schedule for Plaintiff and others similarly situated was 9 hours per day, 5 days a week.  During Plaintiff's employment at Defenedants' restaurant, his typical weekly work schedule was 3:00 P.M. until 12:00 A.M. Tuesday through Saturday.

41.   Despite routinely working over 10 hours per day throughout their employment with Defendants, Plaintiff and others similarly situated never received spread-of-hours compensation

as required under the NYLL.

42.    Additionally, Defendants had several timekeeping and payroll policies that functioned to reduce the paid hours of Plaintiff and others similarly situated in violation of the FLSA and NYLL.

43.    Specifically, Defendants deduct workers' hours for a every day to account for a daily lunch break, but Defendants routinely made employees work through these breaks.

44.    Defendants would, without prior notice or warning, change Plaintiff's schedule and tell Plaintiff not to come into work, "because it is too slow," or even be told to go home for the same.

45.    Plaintiff and the other similarly situated workers were also required to engage more than twenty percent (20%) of their working time in non-tipped related activities. Even though Defendants required tipped employees to engage in non-tipped activities for hours exceeding twenty percent (20%) of the total hours worked each workweek, Defendants improperly claimed tip credit for all hours worked by tipped employees.

46.    Plaintiff and others similarly situated, failed to receive, and Defendant failed to provide, the New York Labor Law's statutorily required wage notice and wage statement requirements.

47.    Defendants also failed to record the unpaid time Plaintiff and others similarly situated worked, and thereby failed to make and keep accurate payroll records and provided Plaintiff and others similarly situated with fraudulent wage statements in violation of the FLSA and NYLL.

48.    At all relevant times Defendants were joint employers of Plaintiff and others similarly situated as a matter of economic reality, and as a result, Defendants are jointly and

severally liable for all claims made under the FLSA and NYLL.

49.     Defendants were or should have been aware of their statutory requirements as employers, including specifically but without limitation the requirements under the FLSA and NYLL to pay Plaintiff and others similarly situated for all of the time they worked, and to make and preserve proper payroll records.

50.     However, Defendants knowingly failed to pay Plaintiff and others similarly situated all of the wages to which they were entitled, and to make and preserve proper payroll records.

51.     As such, the various violations of the FLSA and NYLL alleged herein were committed knowingly, willfully, and intentionally by  Defendants.

52.     Furthermore, these violations are ongoing, as Defendants continue to engage in the wrongful conduct described herein.

*Sexual Harassment and Assault Allegations*

53.     In addition to the wage and hour violations, Defendants also created and fostered a hostile work environment in the form of regular and sexual harassment directed at Plaintiff for his sexual orientation.

54.     Throughout Plaintiff's employment with Defendants, Plaintiff was subject to regular sexual harassment from David Coucke, supervisor and Maitre D of Plaintiff at L'Appart. Coucke's harassment of Plaintiff included belittlement, consistent contempt, and derision due to Plaintiff's sexual orientation..  Plaintiff was consistently called "princess," "puto" and "bitch" by Coucke.  Plaintiff was routinely physically bullied by Couke.  Plaintiff was routinely shoved by Couke. Plaintiff was routinely subject to comments and derisive conversations regarding his personlaity by Couke.

55.     Plaintiff was and continues to be highly traumatized by his experiences with

Coucke and Defendants.

56.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class Members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT ON BEHALF OF PLAINTIFF AND FLSA COLLECTIVE PLAINTIFFS

57.     Plaintiff reallege and reaver Paragraphs 1 through 56 of this Class and Collective Action Complaint as if fully set forth herein.

58.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

59.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

60.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00.

61.     At all relevant times Defendants were joint employers of Plaintiff and the other FLSA Collective Plaintiffs.

62.     Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiff and FLSA Collective Plaintiffs due to an invalid tip credit. Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them the statutory

minimum wage due to an invalid tip credit.

63.     Defendants were not entitled to take any tip credits under the FLSA, because (i) they failed to properly provide notice to all tipped employees that Defendants were taking a tip credit, rendering the tip credit invalid in respect of all tipped employees; and (ii) they retained portions of service charges without giving notice to customers that management was sharing in service charges.

64.     Plaintiff is in possession of certain records concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs. Further records concerning these matters should be in the possession and custody of the Defendants. Plaintiff intend to obtain all records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

65.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

66.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

67.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, and an equal amount as liquidated damages.

68.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**

<u>**VIOLATION OF THE NEW YORK LABOR LAW ON BEHALF OF PLAINTIFF AND**</u>

<u>**CLASS MEMBERS**</u>

69.     Plaintiff reallege and reaver Paragraphs 1 through 68 of this Class and Collective Action Complaint as if fully set forth herein.

70.     At all relevant times, Plaintiff and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

71.     Defendants willfully violated Plaintiff's and the Tipped Subclass members' rights by failing to pay them minimum wages in the lawful amount for hours worked. Defendants were not entitled to claim any tip credits.

72.     Defendants willfully violated Plaintiff's and Tipped Subclass members' right by implement a policy and practice of illegally retaining gratuities.

73.     Defendants failed to provide a proper wage and hour notice, at the date of hiring and annually, to all non-exempt employees per requirements of the New York Labor Law.

74.     Defendants failed to provide proper wage statements with correct payment as required by New York Lab. Law § 195(3).

75.     Plaintiff and the other Class members regularly worked in excess of 10 hours per day and 40 hours per week, but were not paid all of the wages to which they were entitled under the NYLL, including regular, overtime, and spread-of-hours wages.

76.     As a direct and proximate result of the Defendants' willful disregard of the NYLL, Plaintiff and Class members are entitled to recover from Defendants their unpaid wages due to invalid tip credit, misappropriated gratuities due to the unlawful tip pooling scheme imposed by Defendants, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and

disbursements of the action, pursuant to New York Labor Law.

## COUNT III

## <u>TITLE VII DISCRIMINATION ON BEHALF OF PLAINTIFF DENNY GONZALEZ</u>

77.     Plaintiff reallege and reaver Paragraphs 1 through 76 of this Class and Collective Action Complaint as if fully set forth herein.

78.     At all relevant times, Plaintiff was an employee and a qualified person within the meaning of Title VII.

79.     At all relevant times, the Corporate Defendants as a joint enterprise were and continue to be an employer within the meaning of Title VII.

80.     Pursuant to Section 703(a)(1) and (2) of Title VII, it is an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," or "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

81.     Pursuant to Section 704(a) of Title VII, it is an unlawful employment practice for an employer "to discriminate against any of his employees . . . because he has opposed[] any practice made an unlawful employment practice by this title."

82.     As alleged herein, the Corporate Defendants discriminated against Plaintiff with respect to the terms, conditions, and privileges of his employment through the creation and maintenance of a hostile work environment.

83.     This hostile work environment was created and fostered through pervasive and

regular sexual harassment in the form of comments and behavior directed towards Plaintiff.

84.     The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

85.     Defendants were on notice of the conduct constituting the hostile work environment and took no action to resolve it. The discrimination described herein occurred with malice and reckless disregard of Plaintiff's rights.

86.     As a direct and proximate result of said discrimination, Plaintiff suffered and continues to suffer actual damages in forms including specifically but without limitation loss of past and future earnings, mental anguish, and pain and suffering.  Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under Title VII.

**COUNT IV**

**NYHRL DISCRIMINATION ON BEHALF OF PLAINITFF DENNY GONZALEZ**

87.     Plaintiff DENNY GONZALEZ realleges and reavers Paragraphs 1 through 86 of this Class and Collective Action Complaint as if fully set forth herein.

88.     At all relevant times, Plaintiff was an employee within the meaning of the NYHRL.

89.     At all relevant times, the Corporate Defendants as a joint enterprise were and continue to be an employer within the meaning of the NYHRL.

90.     At all relevant times, the Corporate Defendants had at least four persons in their employ, and therefore the Corporate Defendants and their agents and employees were and are required to comply with the NYHRL.

91.     Section 296(1)(a) of the NYHRL prohibits employers from discriminating against

an employee because of sex "in terms, conditions or privileges of employment."

92.     Section 296(6) of the NYHRL provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

93.     Section 296(7) provides that it is an unlawful discriminatory practice "to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article."

94.     Defendants violated the NYHRL by discriminating against the terms, conditions, and privileges of Plaintiff's employment through the creation and maintenance of a hostile work environment.

95.     This hostile work environment was created and fostered through pervasive and regular sexual harassment in the form of comments and behavior directed towards Plaintiff.

96.     The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

97.     Defendants were on notice of the conduct constituting the hostile work environment and took no action to resolve it.  The Corporate Defendants' failure to address the hostile work environment constituted a violation of Section 296(1)(a) of the NYHRL.

98.     Defendant DAVID COUCKE's comments and behavior directly created and maintained the hostile work environment to which Plaintiff was submitted in violation of Section 296(6) of the NYHRL.

99.     The Individual Defendants were involved in the promotion, demotion, hiring, and firing of Plaintiff and other employees. Defendant DAVID COUCKE was aware of Plaintiff's

complaints and took no action upon them, and terminated Plaintiff in retaliation for his complaints, in violation of Sections 296(6) and 296(7) of the NYHRL.

100.     The discrimination described herein occurred with malice and reckless disregard of Plaintiff's rights.

101.     As a direct and proximate result of said discrimination, Plaintiff suffered and continues to suffer actual damages in forms including specifically but without limitation loss of past and future earnings, mental anguish, and pain and suffering.  Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYHRL.

## COUNT V

### NYCHRL DISCRIMINATION ON BEHALF OF PLAINTIFF DENNY GONZALEZ

102.     Plaintiff DENNY GONZALEZ realleges and reavers Paragraphs 1 through 101 of this Class and Collective Action Complaint as if fully set forth herein.

103.     At all relevant times, Plaintiff was an employee within the meaning of the NYCHRL.

104.     At all relevant times, the Corporate Defendants as a joint enterprise had at least four persons in their employ, and therefore the Corporate Defendants and their agents and employees were and are required to comply with the NYCHRL.

105.     Section 8-107(1)(a)(3) of the NYCHRL prohibits employers from discriminating against an employee because of sex "in terms, conditions or privileges of employment."

106.     Section 8-107(6) of the NYCHRL provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

107.    Section 8-107(7) of the NYCHRL provides that it is an unlawful discriminatory practice "to retaliate or discriminate in any manner against any person because such person has [] opposed any practice forbidden under this chapter."

108.    Defendants violated the NYCHRL by discriminating against the terms, conditions, and privileges of Plaintiff's employment through the creation and maintenance of a hostile work environment.

109.    This hostile work environment was created and fostered through pervasive and regular sexual harassment in the form of comments and behavior directed towards Plaintiff.

110.    The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

111.    Defendants were on notice of the conduct constituting the hostile work environment and took no action to resolve it. The Corporate Defendants' failure to address the hostile work environment constituted a violation of Section 8-107(1)(a)(3) of the NYCHRL.

112.    Defendant DAVID COUCKE's comments and behavior directly created and maintained the hostile work environment to which Plaintiff was submitted in violation of Section 8-107(6) of the NYCHRL.

113.    The Individual Defendants were involved in the promotion, demotion, hiring, and firing of Plaintiff and other employees. Defendant YOSHI KOJIMA was aware of Plaintiff's complaints and took no action upon them, and constructively terminated Plaintiff in retaliation for his complaints, in violation of Section 8-107(6) and (7) of the NYCHRL.

114.    The discrimination described herein occurred with malice and reckless disregard of Plaintiff's rights.

As a direct and proximate result of said discrimination, Plaintiff suffered and continues to suffer actual damages in forms including specifically but without limitation loss of past and future earnings, mental anguish, and pain and suffering.  Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYCHRL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court assume jurisdiction herein and thereafter grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages due under the FLSA and the New York Labor Law, including those due to an invalid tip credit;

d. An award of unpaid wages due under the FLSA and the New York Labor law, including those due to payments made under minimum wage.

e. An award of unpaid wages due under the FLSA and the New York Labor law, including those due to failure of Defendant to pay overtime premium;

f. An award of unpaid wages due under the FLSA and the New York Labor law, due to Defendant's failure to pay spread of hours premium;

g.   An award equal to the amount of the improperly retained tips withheld by Defendants;

h.   An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

i.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to proper wages pursuant to 29 U.S.C. § 216;

j.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages for all hours of work, pursuant to the New York Labor Law;

k.   An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

l.   Designation of Plaintiff as Representatives of the FLSA Collective Plaintiffs;

m.   Designation of this action as a class action pursuant to F.R.C.P. 23;

n.   Designation of Plaintiff as Representatives of Class; and

o.   On the Third, Fourth and Fifth Cause of Action, judgment for Plaintiff against Defendant, for damages to be determined at trial, together with punitive damages, interest, costs, and attorney's fees;

p.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: February 16, 2021
New York, New York

LEE LITIGATION GROUP, PLLC

By: _____*/s/ C.K. Lee*_____
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
(212) 465-1188
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*