**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DENNY GONZALEZ, *on behalf of himself, and all FLSA Collective Plaintiffs and the Class,*<br><br>       Plaintiff,<br><br>   -against-<br><br>HANOVER VENTURES MARKETPLACE LLC,<br>       d/b/a LE DISTRICT,<br>JOHN DOE COMPANY 1,<br>       d/b/a HPH HOSPITALITY,<br>PAUL LAMAS, PETER A POULAKAKOS,<br>NICOLAS ABELLO, and DAVID COUCKE<br><br>       Defendants. | **Case No.:** 21-cv-01347-ER |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION

C. K. Lee, Esq. (CL 4086)
Lee Litigation Group, PLLC
148 West 24th Street, 8th Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs*
*and the Class*

i

# TABLE OF CONTENTS

EXHIBITS ........................................................................................................... iv

TABLE OF AUTHORITIES .................................................................................v

I.        PRELIMINARY STATEMENT ...................................................................1

II.       DEFENDANT HANOVER'S EMPLOYEES ARE ALL SUBJECT TO
THE SAME POLICY AND PROCEEDURES OF A CENTRALIZED
MANAGEMENT TEAM ...........................................................................3

    A)    Interrelation of Activities............................................................ 4

    B)    Common Control ......................................................................... 6

    C)    Common Business Purpose ......................................................... 7

III.      PLAINTIFF'S FLSA COLLECTIVE ACTION CLAIMS ............................8

          A.    DEFENDANTS FAILED TO PROVIDE PROPER TIP CREDIT
                NOTICE TO TIPPED EMPLOYEES ....................................9

          B.    PLAINTIFF AND COVERED EMPLOYEES WERE
                ROUTINELY REQUIRED TO PERFORM NON-TIPPED
                DUTIES FOR MORE THAN 20 PERCENT OF THEIR SHIFTS.....................11

          C.    PLAINTIFF AND COVERED EMPLOYEES DID NOT
                RECEIVE ALL REQUIRED TIPS FROM DEFENDANTS..............................13

          D.    DEFENDANTS INSTITUTUED AN IMPROPER AUTOMATIC
                MEAL BREAK DEDUCTION ...........................................................15

IV.       PLAINTIFF IS SIMILARLY SITUATED AS COVERED
EMPLOYEES ...........................................................................................16

          A.    EARLY NOTICE TO 'SIMILARLY SITUATED' EMPLOYEES
                IS APPROPRIATE AND NECESSARY .............................................16

                i.    Sending Expedited Notice to "Similarly Situated" Employees
                      Fulfills the FLSA's Broad Remedial Purposes..............................17

          B.    THE COURT SHOULD CERTIFY THE COLLECTIVE ACTION
                AND ORDER NOTICE ...................................................................18

                i.    The Standard for Conditional Certification and Notice Is
                      Lenient ..........................................................................18

     ii.    The Underlying Merits of the Case are Immaterial to the Determination of Conditional Certification and Notice .............................21

     iii.   Plaintiff Has Made the Modest Factual Showing Required for Conditional Certification ...............................................................................22

C.    DISCOVERY OF NAMES, ADDRESSES AND TELEPHONE NUMBERS IS PROPER AND NECESSARY UNDER § 216(b) ......................22

D.    THE PROPOSED NOTICE IS FAIR AND ADEQUATE ...................................23

E.    EQUITABLE TOLLING .......................................................................................23

V.    CONCLUSION...............................................................................................................24

## <u>EXHIBITS</u>

**EXHIBIT A** – Proposed Form of Collective Notice

**EXHIBIT B –** Defendant HANOVER'S Permits with New York City

**EXHIBIT C** – Le District's Website's Homepage

**EXHIBIT D** – Descriptions and Menus Located on Le District's Website

**EXHIBIT E** – Le District's Mission Statement

**EXHIBIT F** – Defendants' Payroll Summary for Plaintiff

**EXHIBIT G** – Le District's Common Event Booking Page

**EXHIBIT H** – Le District's Social Media Accounts

**EXHIBIT I** – Le District's Common Contact Us Page

**EXHIBIT J** – Indeed Posting of Le District

**EXHIBIT K** – Le District's Onboarding Documents

**EXHIBIT L** – Correspondence from Le District's Common HR Department

**EXHIBIT M** – Defendant HANOVER's Wage Notice

**EXHIBIT N** – Plaintiff's New Hire Packet Listing David Coucke Listed as Manager

**EXHIBIT O** – Defendants' Policy Regarding Service Charge Split

**EXHIBIT P** – Plaintiff's Punch-in and out Records

# TABLE OF AUTHORITIES

## CASES

*Anglada v. Linens n' Things, Inc.*, No. 06 Civ. 12901, 2007 U.S. Dist. LEXIS 39105 (S.D.N.Y. Apr. 26, 2007) ................................................................................................................ 19, 22

*Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504 (S.D.N.Y. 1998) (Sotomayor, J.)) ......... 4, 6

*Argudo v. Parea Grp. LLC*, 2019 U.S. Dist. LEXIS 163249, 2019 WL 4640058 (S.D.N.Y. Sep. 24, 2019) ........................................................................................................................... 13

*Azkour v. Little Rest Twelve, Inc.*, No. 10 Civ. 4132(RJS)(KNF), 2012 U.S. Dist. LEXIS 16039 (S.D.N.Y Feb. 7, 2012) ...................................................................................................... 13

*Braunstein v E. Photographic Labs.*, 600 F.2d 335 (2d Cir. 1978) ............................................ 17

*Brennan v. Arnheim & Neely*, 410 U.S. 512 (1973) ....................................................................... 4

*Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 WL 313483 (S.D.N.Y. Feb. 1, 2007) ... 11

*Chu Chung v. The New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220 (S.D.N.Y. 2002) ............ 13

*Cook v. United States*, 109 F.R.D. 81 (E.D.N.Y. 1985) ............................................................... 17

*Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253 (S.D.N.Y. 2011) ..................... 11, 13

*Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628 (S.D.N.Y. 2007) .............................. 16, 19, 22

*Dumitrescu v. Mr. Chow Enters., Ltd.*, No. 07 Civ. 3601, 2008 U.S. Dist. LEXIS 49881 (S.D.N.Y. June 30, 2008) .................................................................................................... 20

*Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. 2007) ...................... passim

*Foster v. Food Emporium*, No. 99 Civ, 3860, 2000 U.S. Dist. LEXIS 6053 (S.D.N.Y. Apr. 26, 2000) .................................................................................................................................. 17

*Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880 (D. Md. 2011) .......................................... 13

*Gjurovich v. Emmanuel's Marketplace*, 282 F. Supp. 2d 91 (S.D.N.Y. 2003). .............. 18, 20, 23

*Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784, 2013 WL 4834428 (S.D.N.Y. Aug. 26, 2013) .................................................................................................................................. 24

*Gonzalez v. Jane Roe Inc.*, No. 10 Civ. 1000, 2015 U.S. Dist. LEXIS 103370 (E.D.N.Y. July 15, 2015) ...................................................................................................................................... 9

*Hallissey v. Amer. Online, Inc.*, No. 99 Civ. 3785, 2008 U.S. Dist. LEXIS 18387 (S.D.N.Y. Feb. 19, 2008) ............................................................................................................................ 19

*Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997) ........................................ 18, 20, 21

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) ......................................................... 17

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007) .................... 18, 19, 20

*Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490 (S.D.N.Y. 2015) ........................................ 10

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152 (S.D.N.Y. 2014) ................................................... 24

*Juarez v. 449 Restaurant, Inc.*, No. 13 Civ. 6977, 2014 WL 3361765 (S.D.N.Y. July 2, 2014) ... 8

*Kemper v. Westbury Operating Corp.*, No. 12 Civ. 895, 2012 WL 4976122 (E.D.N.Y. Oct. 17, 2012) ................................................................................................................................... 24

*Khalil v. Original Homestead Rest., Inc.*, No. 07 Civ. 695, 2007 U.S. Dist. LEXIS 70372 (S.D.N.Y. Aug. 9, 2007) ...................................................................................................... 20

*Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346 (E.D.N.Y. 2008) ................................... 21

*Lee v. ABC Carper & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006) ...................................... 19, 22, 23

*Lixin Zhao v. Benihana, Inc.*, No. 01 Civ. 1297, 2001 U.S. Dist. LEXIS 10678 (S.D.N.Y. May 7, 2001) ................................................................................................................................... 20

*Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357 (S.D.N.Y. 2007) ................................ 21

*Machuca v. Villaggio Catering Corp.*, No. 14 Civ. 3508, Dkt. No. 43 (E.D.N.Y. Jan. 12, 2015) . 8

*Masson v. Ecolab, Inc.*, No. 04 Civ. 4488 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 17, 2005) ........................................................................................................................ 20

*Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194, 2005 U.S. Dist. LEXIS 30321 (S.D.N.Y. Nov. 29, 2005) ................................................................................................................ 20

*McGlone v. Contract Callers*, 867 F. Supp. 2d 438 (S.D.N.Y. 2012) ........................................ 24

*Mendez v. Int'l Food House Inc.*, 13 Civ. 2651, 2014 U.S. Dist. LEXIS 121158, 2014 WL 4276418 (S.D.N.Y. Aug. 28, 2014) ...................................................................................... 11

*Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178 (S.D.N.Y. 2007) .............................. 19, 21

*Padilla v. Manlapaz*, 643 F. Supp. 2d 302 (E.D.N.Y. 2009) ................................................ 11, 13

*Paguay v. Buona Fortuna, Inc.*, 2013 U.S. Dist. LEXIS 107561, 2013 WL 3941088 (S.D.N.Y. July 31, 2013) ............................................................................................................... 13

*Patton v. Thomson Corp.*, 264 F. Supp. 2d 263 (E.D.N.Y. 2005) .................................. 18, 22, 23

*Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303 (S.D.N.Y. 1998) .............................................. 20

*Reyes v. Sofia Fabulous Pizza Corp.*, No. 13 Civ. 7549, 2014 U.S. Dist. LEXIS 188734 (S.D.N.Y. Apr. 7, 2014) ............................................................................................... 9, 10

*Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008) .............................................................. 15

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir. 2011) ................... 13

*Sherrill v. Sutherland Global Servs., Inc.*, 487 F. Supp. 2d 344 (W.D.N.Y. 2007) ..................... 22

*Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28, 2007) ............................................................................................ 18, 19, 21

*Velez v. 111 Atlas Rest. Corp.*, No. 14 CV 6956 (MKB) (CLP), 2016 U.S. Dist. LEXIS 107230 (E.D.N.Y. Aug. 11, 2016) ................................................................................................ 10

*Young v. Cooper Cameron Corp.*. 229 F.R.D. 50 (S.D.N.Y. 2005) ........................................... 21

## STATUTES

29 C.F.R. § 770.221 ................................................................................................................ 6

29 C.F.R. § 779.206 ................................................................................................................ 4

29 U.S.C. § 206 ...................................................................................................................... 9

29 U.S.C. § 216 ............................................................................................................... passim

29 U.S.C. § 256(b) ................................................................................................................ 17

29 U.S.C. §§ 255 ................................................................................................................... 17

29 U.S.C. 203(m)(2)(B) ......................................................................................................... 13

## RULES

Rule 23 ................................................................................................................................ 20

## REGULATIONS

12 CRR-NY 146-3.3 .............................................................................................................. 11

12 N.Y.C.R.R. § 146-1.3 ......................................................................................................... 9

12 N.Y.C.R.R. § 146-2.2 ........................................................................................................ 10

29 C.F.R. § 531.59 .................................................................................................................. 9

29 C.F.R. 10.28(b)(2)(i) ......................................................................................................... 12

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.9 ...................................................................... 11

## I.    <u>PRELIMINARY STATEMENT</u>

On February 16, 2021, Plaintiff DENNY GONZALEZ ("Plaintiff") filed a Class and Collective Action Complaint ("Complaint") against HANOVER VENTURES MARKETPLACE LLC, d/b/a LE DISTRICT ("HANOVER"), JOHN DOE COMPANY 1, d/b/a HPH HOSPITALITY (collectively "Corporate Defendants"), PAUL LAMAS, PETER A POULAKAKOS, NICOLAS ABELLO, and DAVID COUCKE ("Individual Defendants," and together with Corporate Defendants, "Defendants" or "Le District"), seeking unpaid wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiff brought the FLSA claims on behalf of himself and all non-exempt employees, including waiters, runners, bussers, and bartenders by Defendants within the last six (6) years.

The Complaint seeks to recover damages for (1) unpaid wages due to invalid tip credit, (2) unpaid wages due to time-shaving (3) illegally retained gratuities, (4) failure to provide valid notice of the tip credit allowance claimed, (5) statutory penalties, (6) liquidated damages and (7) attorneys' fees and costs.

The current motion seeks conditional collective certification as to only all non-exempt employees, including waiters, runners, bussers, bartenders, cooks, line cooks, dishwashers, and porters by Defendant HANOVER within the Le District Marketplace located at 225 Liberty Street, New York, NY 10080 within the last six (6) years ("Covered Employees").

In accordance with Plaintiff's proposed Order attached as **Exhibit 1**, and by this motion, Plaintiff seeks the following:

(1)    The Court to grant conditional certification of the FLSA claim as a representative collective action pursuant to 29 U.S.C. § 216(b) on all current and former non-exempt employees, including but not limited to waiters runners, bussers, bartenders, cooks, line cooks, dishwashers, and porters persons

1

employed by Defendant HANOVER at Le District located at 225 Liberty Street, New York, NY 10080 on or after the date that is six (6) years before the filing of the Complaint.

(2)     The Court to approve the distribution of the notice of this FLSA action to Covered Employees, and including a consent form (or opt-in form) as authorized by the FLSA.

(3)     The Court to approve the proposed FLSA notice of this action and the consent form, attached as **EXHIBIT A** to the Memorandum of Law.

(4)     The Court to approve the consent forms of opt-in plaintiffs to be sent directly to Plaintiff's counsel.

(5)     Within 10 days of the Court's Order, Defendants to produce in Excel format the names, social security numbers, titles, compensation rates, dates of employment, last known mailing addresses, email addresses and all known telephone numbers of all Covered Employees.

(6)     The Court to approve the posting of the notice, along with the consent forms, in Defendants' places of business where Covered Employees are employed, by Plaintiff's counsel at any time during regular business hours.

(7)     The Court to approve equitable tolling of the FLSA statute of limitations between the dates of a February 16, 2021, and until such time that Plaintiff is able to send notice to potential opt-in plaintiffs.

## II.   DEFENDANT HANOVER'S EMPLOYEES ARE ALL SUBJECT TO THE SAME POLICY AND PROCEEDURES OF A CENTRALIZED MANAGEMENT TEAM

Defendant HANOVER owns and operates the French themed marketplace known as "Le District," which consists of the following restaurants, cafés, counters, and grocer, located at 225 Liberty Street, New York, NY 10080:

a. Restaurants: (1) Beaubourg aka Liberty Bistro, (2) Le Bar, (3) Bar a Vin, (4) L'Appart (collectively, the "Restaurants");

b. Cafés: (1) Coffee Bar, (2) Cafés Gourmand (collectively, the "Cafés");

c. Counters: (1) Poissonnerie, (2) Rotisserie, (3) Bar A Frites, (4) Delices Du Chef, (5) Cheese & Characuterie, (6) Boulangerie, (7) Boucherie (collectively, the "Counters") ("Restaurants," "Cafes" and "Counters" collectively "Le District" or "the Departments"); and

d. Grocer/Wholesaler

The Restaurants, Cafés, and Counters at Le District are all located in the same location, and together comprise a marketplace intended to provide their customers and clients a wholly French experience.  Le District is a French market similar in concept and design to Eataly, which is an Italian style marketplace offering a variety of restaurants, food and beverage counters, bakery, retail items. The Restaurants, Cafés, and Counters, which comprise Le District serve as subsets, divisions, or departments of Le District, and are all directly owned and operated by Defendant HANOVER.  As all of the employees of Le District are managed by Defendant HANOVER, they are all subject to and victims of Defendant HANOVER's common policies and practices.

To determine whether such Departments operate in a similar fashion for purposes of granting a collective, courts consider three elements "(1) related activities, (2) common control

and (3) common business purpose. *See Brennan v. Arnheim & Neely*, 410 U.S. 512, 518 (1973); *Archie v. Grand Cent. P'ship, Inc*., 997 F. Supp. 504 (S.D.N.Y. 1998) (Sotomayor, J.)).

### A) Interrelation of Activities

Le District's Restaurants, Cafés, and Counters all engage in interrelated activities. Such activities include all "mutually supportive services to the substantial advantage of each entity." *Archie*, 997 F. Supp. at 525 (quoting 29 C.F.R. § 779.206(a)). Here, Defendant HANOVER (1) directly owns Le District, which includes all of its Restaurants, Cafés, and Counters, (2) uses a common website for Le District, (3) commonly advertises for Le District, (4) utilizes the space of all business of Le District for storage or private events, (5) appoints, shifts, and jointly utilizes the employees amongst the departments of Le District, (6) uses a common payroll system for all of Le District.

- Defendant HANOVER owns and operates all of Le District's Restaurants, Cafés, and Counters. This is seen through the Defendant HANOVER, application for NYC business licenses such as permits on behalf of Restaurants, Cafés, and Counters, and Le District's employee notices and acknowledgements, which list "HANOVER VENTURES MARKETPLACE LLC, d/b/a LE DISTRICT" as the corporate owner of Le District. **Exhibit B**, Defendant HANOVER's Permits with New York City.

- All of Le District's Restaurants, Cafés, and Counters share a common website at www.LeDistrict.com. **Exhibit C**, Le District's Website's Homepage.

- All of Le District's Restaurants, Cafés, and Counters jointly advertise. The Restaurants, Cafés, and Counters are all described on the common website and their menus, if applicable, are exhibited when the Website-visitor clicks on each of the departments' links. *See* **Exhibit D,** Descriptions and Menus Located on Le District's website.

- All of Le District's Restaurants, Cafés, and Counters share a common theme. In fact, Le District's common website states that the mission of the marketplace that comprises Le District "is to deliver delicious French-inspired fare in an environment where service and quality are paramount. Our market of bustling districts is comprised of culinary-specific stations, exciting restaurants, outdoor patio, and a fresh grocery curated by our talented taste-makers." *See* **Exhibit E**, Le District's Mission Statement.

- All the Restaurants, Cafés, and Counters of Le District shared a storage space in the basement. *See* Gonzalez Decl. ¶ 8.

- Employees are interchangeable among the Restaurants, Cafés, and Counters.  Plaintiff GONZALEZ worked for L'Appart and was interchanged and also spent time working for Beaubourg. *See* Gonzalez Decl. ¶ 12.  In fact, all employees would work for Le District generally to help set up for and service customers during catering events. *See* Gonzalez Decl. ¶ 6-8.

- Employees of Le District share a common payroll system and method.  Despite working at more than one location, and working for Le District itself, Defendants maintained Plaintiff's hours and pay on a single system. *See* **Exhibit F**, Defendants' Payroll Summary for Plaintiff.

- All the Restaurants, Cafés, and Counters offer their venues for private parties and events on one (1) common Website. See **Exhibit G**, Le District's Common Event Booking Page.

- All the Restaurants, Cafés, and Counters share the same social media accounts, using the same brand name and logo. See **Exhibit H**, Le District's Social Media Accounts.

- All the Restaurants' locations and hours of operation may be accessed from the joint website. See **Exhibit C**.

- All the Restaurants share a common "Contact Us" webpage on the Website, where all the Restaurants share one (1) common inquiry form, phone number, and email address through which questions can be submitted about any of the Restaurants. See **Exhibit I**, Le District's Common Contact Us Page.

Since the foregoing facts demonstrate "mutually supportive services," the first prong is satisfied.

**B) Common Control**

"Control" is the power to "direct, restrict, regulate, govern, or administer the performance" of the related activities, and "common control" exists "where the performance of the described activities are controlled by one person or by a number of persons, corporations, or other organizational units acting together." *Archie*, 997 F. Supp at 526 (quoting 29 C.F.R. § 770.221). Here, Defendant HANOVER (1) directly owns, without any intermediary corporate entities, all of Le District, (2) files all legal documents such as permits for Le District's Restaurants, Cafés, and Counters, (3) uses a single centralized Human Resource Department for all of Le District, (4) controls the hiring, position, appointment, and schedule of all employees, (5) provides all training and employment guides, and (6) appoints and controls all managers.

- As listed above, all employees are controlled by Defendant HANOVER, the corporate entity that operates and controls all the Restaurants, Cafés, and Counters comprising Le District.

- Defendant HANOVER has a centralized Human Resource Department who hire, onboard, assign positions, address complaints and/or pay issues, grant sick leave, and terminate all employees of Le District's:

- o Employment postings for positions for all the Restaurants are jointly listed, and all Restaurants, Cafés, and Counters, may be applied for through a single application. See **Exhibit J,** Indeed Posting of Le District.

- o Plaintiff GONZALEZ was given onboarding documents from Le District, which he was instructed to return to Le District's centralized HR Department.  See **Exhibit K,** Le District's Onboarding Documents.

- o When Plaintiff GONZALEZ's pay checks were found to be inaccurate Le District's centralized HR Department reimbursed him. **Exhibit L**, Correspondence from Le District's Common HR Department.

- o When Plaintiff GONZALEZ's sought sick leave or vacation leave, such approvals were granted through a common Human Resources Department. **Exhibit L**, Correspondence from Le District's Common HR Department.

- Le District holds itself out to be an employer of all the employees of the Restaurants, Cafés and Counters, and it establishes the training materials used by all employees through its common employee handbook. *See* **Exhibit E**.

Based on the common ownership of Defendants, and the collective management of their employees, Defendants satisfy this second prong of "common control."

**C) Common Business Purpose**

The common business purpose prong is satisfied because Corporate Defendants jointly managed all employees.

- As demonstrated above, Defendant HANOVER used a centralized management team to accept complaints at a single Human Resource Department, hire and appoint employees, intermingled employees amongst its departments, shared a centralized payroll system, and jointly managed all employees.

7

Based on the above, Defendants satisfy this second prong of "common business purpose."

The foregoing establishes that Defendants operate the Restaurants such that they are collectively (1) engage in related activities, (2) exercise common control, and (3) serve a common business purpose. Because Defendants operate its Departments in such a unified, centralized manner, all of its employees may be presumed to have been subject to the same policies and practices *See Machuca v. Villaggio Catering Corp.*, No. 14 Civ. 3508, Dkt. No. 43 (E.D.N.Y. Jan. 12, 2015) (granting plaintiffs' motion for FLSA collective certification for different stores based on common ownership, logo, menu and website on which defendants advertise all locations); *Juarez v. 449 Restaurant, Inc.*, No. 13 Civ. 6977, 2014 WL 3361765, at *4-5 (S.D.N.Y. July 2, 2014) (inferring that unlawful pay policies implemented at one store extended to other locations because all stores were run as an "integrated enterprise" with common ownership and same menu, décor and website).

### III.      PLAINTIFF'S FLSA COLLECTIVE ACTION CLAIMS

Plaintiff DENNY GONZALEZ was hired by Defendant HANOVER to work as a server on February 12, 2018 and continued working for Defendant HANOVER until December of 2019.  Plaintiff has brought suit seeking to resolve the wage and hour violations on behalf of himself and Covered Employees.

Plaintiff brings suit on behalf of Covered Employees to resolve two wrongul policies of Defendants.  First, Defendants instituted a tip credit, which was invalid in the following ways:

    (i)    by Defendant HANOVER providing an improper tip credit notice on all Covered Employees annual wage notices,

    (ii)    by Defendant HANOVER requiring that Covered Employees engage in excessive non-tipped work,

(iii)    by Defendant HANOVER's illegal retention of Covered Employees tips, through the allowance of mangers into Covered Employees tip-pool and a failure to pass along all tips acquired during catering events.

Second, Defendants time-shaved Plaintiff through by automatically deducting time for a meal-break that Plaintiff and fellow employees would have to work through.

Due to the above violations common violations, Defendants owe damages to all Covered Employees.

### A.    DEFENDANTS FAILED TO PROVIDE PROPER TIP CREDIT NOTICE TO TIPPED EMPLOYEES

Under the FLSA, an employer is required to pay its employees at an overtime rate that is 1.5 times an employee's regular wage. 29 U.S.C. § 206 (a)(1). However, because Defendant improperly deducted a tip credit allowance from Plaintiff and other Covered Employees, they failed to pay employees their proper overtime rate in violation of the FLSA and the NYLL.

Under the FLSA and NYLL, an employer may be permitted to pay an employee less than minimum wage in certain circumstances. With regard to tipped employees, "[a]n employer may take a credit towards the basic minimum hourly rate" only if certain preconditions are met. *See* 12 N.Y.C.R.R. § 146-1.3 (effective January 1, 2011). *See Gonzalez v. Jane Roe Inc.*, No. 10 Civ. 1000, 2015 U.S. Dist. LEXIS 103370, at *6 n.6 (E.D.N.Y. July 15, 2015) (holding that "employer may receive the benefit of the tip credit under the NYLL only if the employer gives proper notice"); s*ee also Reyes v. Sofia Fabulous Pizza Corp.*, No. 13 Civ. 7549, 2014 U.S. Dist. LEXIS 188734, at *23 (S.D.N.Y. Apr. 7, 2014) ("FLSA requires employers who wish to claim tip credits toward the wages of their tipped employees to 'inform[] its tipped employees in advance of the employer's use of the tip credit'") (citing 29 C.F.R. § 531.59 (b))

As a precondition to paying a tipped employee under minimum wage, the employer must provide its employees with written notice. The failure to provide proper notice is a statutory

violation, and invalidates the tip-credit. *See Reyes* 2014 U.S. Dist. LEXIS 188734, at \*23 (S.D.N.Y. Apr. 7, 2014) ("Failure to provide adequate tip credit notice under [Section] 146-2.2 invalidates any tip credit claimed by the employer"). For the notice to be proper, it must be provided "[p]rior to the start of employment" and "prior to any change in the employee's hourly rates of pay." 12 N.Y.C.R.R. § 146-2.2; *Reyes* 2014 U.S. Dist. LEXIS 188734 (S.D.N.Y. Apr. 7, 2014). Moreover, the notice must include the following: (i) regular hourly pay rate, (ii) overtime hourly pay rate, (iii) the hourly rate of tip credit allowance, (iv) the net regular payment and (iv) a notice that "extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate.". *Velez v. 111 Atlas Rest. Corp.*, No. 14 CV 6956 (MKB) (CLP), 2016 U.S. Dist. LEXIS 107230, at \*29 (E.D.N.Y. Aug. 11, 2016); 12 N.Y.C.R.R. § 146-2.2. These notice provisions are "strictly construed and normally requires that an employer take affirmative steps to inform affected employees of the employer's intent to claim the tip credit." *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015) (collecting cases).

Here, Le District's wage notice is inadequate on both NYLL and FLSA grounds. Le District's tip-notice fails to state both the employees base minimum wage rate, and fails to state how much of the NYC maximum tip credit is being deducted from an employee's minimum wage. *See* **Exhibit M**, Defendant HANOVER's Wage Notice. This wage notice is prepared and provided by Le District central Human Resources Department. *See Id.* As a single Human Resource department produces, prepares, and distributes the wage notice to all tipped employees working at Le District's Restaurants, Cafés, and Counters, the clear inadequate wage notice provided to Plaintiff would similarly be provided to all tipped employees.

Moreover, Plaintiff's observations and conversations with his co-workers reveal that no other Covered Employees ever received proper tip credit notice from Defendants. *See* Gonzalez Decl. ¶ 17. **Accordingly, Defendants were not entitled to claim tip credit allowance as part**

**of their minimum wage obligations and are liable for minimum wage and Overtime violations.** *See Padilla v. Manlapaz***, 643 F. Supp. 2d 302, 309-10 (E.D.N.Y. 2009);** *Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 WL 313483, at \*17 (S.D.N.Y. Feb. 1, 2007) (employer "may not take a tip credit unless it complies strictly with [the] statutory requirements."); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 287 (S.D.N.Y. 2011) ("notice requirement is a firm one . . . [because] Congress expressly required notice as a condition of the tip credit[.]").

As Defendant HANOVER provided invalid tip credit notices, Plaintiff and Covered employees have suffered similar minimum wage and overtime wage violations.

### B.  PLAINTIFF AND COVERED EMPLOYEES WERE ROUTINELY REQUIRED TO PERFORM NON-TIPPED DUTIES FOR MORE THAN 20 PERCENT OF THEIR SHIFTS

Defendant was also not permitted to take tip credit from Plaintiff and Covered Employees because Defendant required Plaintiff and Covered Employees to perform non-tipped work for a substantial portion of each workday. *See* Gonzalez Decl. ¶ 7-12. "Under the FLSA, tipped employees who spend a substantial amount of time…engaged in related but non-tip-producing work must be paid the full minimum wage for the time spent performing the non-tipped work." *Mendez v. Int'l Food House Inc.*, 13 Civ. 2651, 2014 U.S. Dist. LEXIS 121158, 2014 WL 4276418, at \*3 (S.D.N.Y. Aug. 28, 2014) (internal quotation marks and citation omitted). **Under the NYLL, "if a tipped employee performs non-tipped work for (a) two hours or more, or (b) for more than 20 percent of his or her shift, whichever is less, the wages of the employee shall be subject to no tip credit for that day." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.9;** *see also* 12 CRR-NY 146-3.3 ("an employee may not be classified as a service employee on any day in which she or he has been assigned to work at an occupation in which tips are not

customarily received for two hours or more or for more than 20 percent of her or his shift, whichever is less"); 29 C.F.R. 10.28(b)(2)(i).

Here, Defendant routinely required Plaintiff and Covered Employees to perform substantial non-tipped activities **for two (2) to three (3) hours each day**, well over twenty (20) percent of their regular shifts. *See* Gonzalez Decl. ¶ 7-12. As part of Plaintiff's duties, Plaintiff had to (1) accept deliveries coming into the restaurant, (2) organize them, (3) stock them in storage, (4) prepare some of the food, like cutting the bread, (5) wash dishes, (6) polish the silver/glassware, (7) clean the restaurant including bathrooms and the patio, (8) clean and set the oven, (9) iron and wash table cloths, (10) iron and set napkins, and (11) Plaintiff even had to perform the work of the baristas. *See* Gonzalez Decl. ¶ 6-12.  In accordance with FLSA and NYLL, the extent of non-tipped work, and the clear substance of the work, which is clearly not in advance of Plaintiff's tipped employment, invalidates the tip credit.

The requirement and expectation of tipped employees engaging in extensive non-tipped work existed at all of Le District's Departments. *See* Gonzalez Decl. ¶ 8, 10-12, 14.  As delineated in Plaintiff's affidavit, he spoke with multiple all of whom worked for more than one of Defendants' Departments and the policy existed everywhere. *See Id.*

More than conversations, Plaintiff's declaration states that he himself worked for more than one of Defendants' Restaurants, and he experienced this extensive non-tipped work regardless of the particular Department in which he worked. *See* Gonzalez Decl. ¶ 12. In fact, Le District hosted catering events, which allowed private individuals and companies to rent out part or all Le District. *See* Gonzalez Decl. ¶ 8.  While Plaintiff worked these events, he worked directly alongside of all Le District's tipped employees. *See Id.*  As Plaintiff recounts, during the Christmas Holidays of 2018, the entirety of the Marketplace was rented.  During this event, Plaintiff observed and experienced how tipped employees of all Defendants' departments were

required to clean Le District and physically move Le District's furniture to the marketplaces' basement. *See Id.*

Due to the excessive non-tipped work required by Defendant FLSA and NYLL requirements for taking tip credit were not satisfied, and Defendant HANOVER was not permitted to take tip credit from Plaintiff and Covered Employees. *See Padilla v. Manlapaz,* 643 F. Supp. 2d 302, 309-10 *(E.D.N.Y. 2009)*.  As such, a tip-credit was invalid, Plaintiff and Covered Employees experienced regular and overtime wage violations.

### C.  PLAINTIFF AND COVERED EMPLOYEES DID NOT RECEIVE ALL REQUIRED TIPS FROM DEFENDANTS

Under the FLSA an Employer may not allow "managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."  29 U.S.C. 203(m)(2)(B); *see also Chu Chung v. The New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002); *Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 893- 894 (D. Md. 2011); *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir. 2011).

Specifically, the case law is clear that "an employer loses its entitlement to the tip credit where it requires tipped employees to share tips with (1) employees who do not provide direct customer service or (2) managers." *Paguay v. Buona Fortuna, Inc.*, 2013 U.S. Dist. LEXIS 107561, *7-8, 2013 WL 3941088 (S.D.N.Y. July 31, 2013); *see also Shahriar v. Smith & Wollensky Rest. Group. Inc.*, 659 F.3d 234, 240 (2d Cir. 2011); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 287 (S.D.N.Y. 2011); *see also, Argudo v. Parea Grp. LLC*, 2019 U.S. Dist. LEXIS 163249, *10, 2019 WL 4640058 (S.D.N.Y. Sep. 24, 2019).  New York law mirrors the federal law in prohibiting the allowance of a tip-credit when managers are found in their employees' tip-pool. *See* N.Y. Lab. Law § 652(4); *see also Azkour v. Little Rest Twelve, Inc.*, No. 10 Civ. 4132(RJS)(KNF), 2012 U.S. Dist. LEXIS 16039, at *18 (S.D.N.Y Feb. 7, 2012)

(prohibiting employers from requiring tipped employees to share tips with those who do not perform direct customer service or are managers of the employer).

Here, Plaintiff's declaration reveals that Le District had a scheme wherein they would hide their managers as maître d's, to give their managers extra pay. *See* Gonzalez Decl. ¶ 12-14. Plaintiff GONZALEZ experienced this personally at Le District's eateries of L'Appart and Beaubourg.  Specifically, in L'Appart David Coucke was often be added into the tip-pool.  This is despite the fact, the fact that David Couke was Plaintiff's manager, as may be seen in Plaitniff GONZALEZ's new hire paperwork. *See* **Exhibit N**, David Coucke Listed as Manager in Plaintiff's New Hire Packet and listed as both Maitre D' and Manager in Emails.  That all Departments had this same policy is confirmed both by Plaintiff's experiences and by Plaintiff's conversations with his co-workers, all of whom worked for multiple establishments within the marketplace of Le District. *See* Gonzalez Decl. ¶ 12-14. Moreover, all tipped employees would be similarly effected by this invalid tip-pool arrangement during large private events, when individuals and corporations rented out the entirety of Le District. *See* Gonzalez Decl. ¶ 8-12.

Additionally, Plaintiff discovered that Defendants were not remitting all tips from these large events.  Plaintiff and his co-workers all compared tips and all agreed that Defendants kept most of the tips and service fees from private events. *See* Gonzalez Decl. ¶ 6-8 When reviewing tips from Le District's catering events, Plaitniff and his co-workers discovered that his tips from all events always ended up being $200-$300, regardless of the event's size. *See Id*.  During these big Buy-Out events Plaintiff and his coworkers from all of Le District worked together, and experienced this same tip violation. *See Id*.   Defendants' documentation demonstrates that Defendants wrongfully withheld a portion of the "service charge" for private events, for themselves and to supplement kitchen staff's wages. *See* **Exhibit O**, Defendants' Policy

14

Regarding Service Charge Split; *see also Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 81 (2008) (holding that charges reasonably purpoting to be a gratuity for employees may not be retained by employers).

As Defendants failed to properly remit all tips to Plaintiff and Covered Employees, they lost their entitlement to take a tip-credit and have violated the rights of Plaintiff and Covered Employees.

### D.  DEFENDANTS INSTITUTUED AN IMPROPER AUTOMATIC MEAL BREAK DEDUCTION

Plaintiff's Declaration confirms that Defendants engaged in a policy of timeshaving. Plaintiff and his fellow co-workers would be required to work through their lunch breaks, but would only rarely receive uninterrupted meal time.  Despite workers' frequently working through lunch breaks, Defendants' would automatically deduct a half-hour from all employees time.  This resulted in substantial off the clock uncompensated work.  Gonzalez Decl. ¶¶ 15-16.

This scheme of improperly deducting a half hour from employees compensated time is seen through Defendants' documents. *See* **Exhibit P**, Plaintiff's Punch-in and out Records. Defendants documents reveal a fraudulent time keeping system. *See Id.*  The documents purpot to show that Plaintiff and his fellow employees would clock out for **<u>exactly</u>** thirty minutes for lunch each day. *See Id.*  A closer examination reveals that employees did not clock in or out for lunch.  Instead, the employees clock in and out time was automatically generated.  The time where employees automatically clock-out occurs in the **<u>exact four hours</u>** to the minute of whenever Plaintiff's clocked in for work.  Morever, the time before Plaintiff supposedly clocks back in is **<u>exactly</u>** thirty minutes for ever day Plaintiff worked. *See Id.*  For example, Plaintiff clocked in for work at 3:22 PM on November 26, 2019. *See Id.*  Exactly 4 hours later, at 7:22 PM, his time records indicates that he clocked out until 7:52 PM, exactly 30 minutes later.

Defendants' system improperly records that Plaintiff and his co-workers are clocking out lunch despite the fact that they worked through lunch on most days. *See Id; see also* Gonzalez Decl. ¶¶ 15-16.

Defendants' time shaving policy resulted in a weekly failure to compensate the overtime wages for all hours worked. Based on Plaintiff's experiences, observations and conversations with co-workers, the hours of all other workers employed at Le District were similarly time shaved on a daily basis, and they were similarly not paid any wages for this off the clock work. Gonzalez Decl. ¶¶ 15-16. In his declarations, Plaintiff lists the names of co-workers with whom he spoke or observed suffering from Defendants' time shaving policy. Gonzalez Decl. ¶¶ 3.

## IV.      PLAINTIFF IS SIMILARLY SITUATED AS COVERED EMPLOYEES

To protect putative collective action members' rights and interests, and to promote judicial economy and effective case management, the Court should approve notice to be distributed to all Covered Employees. Notice is appropriate because the initial pleadings and preliminary evidence show that all Covered Employees are similarly situated. Based on the Complaint and Plaintiff's declaration in support of this motion, all Covered Employees worked as non-exempt employees and Defendants (i) failed to receive proper wage statements, (ii) failed to receive proper wage notices, and (iii) failed to pay proper minimum wage (iv) failed to pay proper minimum wage to tipped employees, (v) wrongfully retained gratuities. Thus, they "together were victims of a common policy or plan that violated the law." *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 633 (S.D.N.Y. 2007) (internal quotation omitted).

### A.   *EARLY NOTICE TO 'SIMILARLY SITUATED' EMPLOYEES IS APPROPRIATE AND NECESSARY*

The FLSA contemplates the maintenance of collective actions by similarly situated employees for an employer's violation of the provisions requiring payment of the minimum

wage and overtime premium. 29 U.S.C. § 216(b). Such collective actions are favored under the law because they benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact" and provide employees with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Braunstein v E. Photographic Labs.*, 600 F.2d 335, 336 (2d Cir. 1978); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007). The alternative, a multitude of virtually identical individual suits, would burden courts unnecessarily and risk inconsistent judgments arising from the same events and brought under the same laws.

i.     **Sending Expedited Notice to "Similarly Situated" Employees Fulfills the FLSA's Broad Remedial Purposes**

Expedited notice is critical in FLSA actions. Unlike absent class members in a Rule 23 class action, potential class members in an FLSA collective action must affirmatively consent (or "opt in") to be covered by the suit. 29 U.S.C. § 216(b). The statute of limitations continues to run on each individual's claim until he or she files a written consent form with the Court. 29 U.S.C. §§ 255, 256(b). To ensure that the rights protected by the FLSA do not grow stale through lack of knowledge, the Supreme Court has held that courts have broad authority to facilitate early notice of the existence of the lawsuit to potential opt in plaintiffs. *Hoffmann-La Roche*, 493 U.S. at 170.  Notice to putative class members should be given as soon as possible because, due to the statute of limitations, "potential plaintiffs may be eliminated as each day goes by." *Foster v. Food Emporium*, No. 99 Civ, 3860, 2000 U.S. Dist. LEXIS 6053, at *5 (S.D.N.Y. Apr. 26, 2000); *see also Cook v. United States*, 109 F.R.D. 81, 83 (E.D.N.Y. 1985) ("Certainly, it is unlikely that Congress, having created a procedure for representative action, would have wanted to prevent the class representative from notifying other members of the class that they had a

champion.") (internal quotation marks and citation omitted). Thus, early distribution of a notice of pendency is crucial in an FLSA collective action.

The Court need not and should not delay the sending of notice until the completion of discovery. *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *8 (S.D.N.Y. Sept. 28. 2007) (ordering notice under 29 U.S.C. § 216(b) where only limited discovery had taken place); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007) ("The court is not obliged to wait for the conclusion of discovery before it certifies the collective action and authorizes notice."); *Patton v. Thomson Corp.*, 264 F. Supp. 2d 263, 267-68 (E.D.N.Y. 2005) (ordering notice before full discovery in order to "facilitate[] the [FLSA]'s broad remedial purpose . . . promot[e] efficient case management . . . [and] preserve and effectuate the rights of potential plaintiffs whose claims might otherwise become time-barred during the discovery phase of the case") (internal citations omitted); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) (ruling that the Court need not "wait for defendant to complete its discovery before authorizing class notice. To the contrary, courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management"). In lieu of discovery, courts rely upon allegations in a complaint and employee declarations to determine whether plaintiffs and potential opt in collective members are similarly situated. *E.g.*, *Gjurovich v. Emmanuel's Marketplace*, 282 F. Supp. 2d 91, 104 (S.D.N.Y. 2003).

### B. THE COURT SHOULD CERTIFY THE COLLECTIVE ACTION AND ORDER NOTICE

#### i.   The Standard for Conditional Certification and Notice Is Lenient

"Courts generally determine the appropriateness of class certification at two stages: first, on the initial motion for conditional class certification, and second, after discovery." *Fasanelli*,

516 F. Supp. 2d at 321. At the first stage, "courts utilize a lenient evidentiary standard in assessing whether the Plaintiffs have presented sufficient evidence to demonstrate that a prospective class of member plaintiffs is similarly situated to the named Plaintiff." *Anglada v. Linens n' Things, Inc.*, No. 06 Civ. 12901, 2007 U.S. Dist. LEXIS 39105, at *11 (S.D.N.Y. Apr. 26, 2007); *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007). Under this lenient standard, a court will certify a class as a collective action and order notice to potential class members where "the plaintiff satisfies the minimal burden of showing that the similarly situated requirement is met" based on the pleadings and declarations. *Iglesias-Mendoza*, 239 F.R.D. at 367 (internal quotation omitted). Upon certification, "[p]otential class members are then notified and provided with the opportunity to opt in to the action." *Id.*

To prevail on a motion for conditional certification, plaintiffs need only make a "modest factual showing" that they "are similarly situated with respect to their allegations that the law has *been violated.*" *Hallissey v. Amer. Online, Inc.*, No. 99 Civ. 3785, 2008 U.S. Dist. LEXIS 18387, at *6 (S.D.N.Y. Feb. 19, 2008) (internal quotation omitted; emphasis in original). Plaintiff must demonstrate that there is a "factual nexus between the [named plaintiff's] situation and the situation of other current and former [employees]." *Toure*, 2007 U.S. Dist. LEXIS 74056, at *6 (internal quotation omitted; alterations in original); *see also Mentor*, 246 F.R.D. at 181; *Fasanelli*, 516 F. Supp. 2d at 321. Plaintiffs meet their burden where putative collective members "together were victims of a common policy or plan that violated the law[.]" *Lee v. ABC Carper & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) (internal quotation omitted), such as when they are all "employees of the same restaurant enterprise and allege the same types of FLSA violations." *Fasanelli*, 516 F. Supp. 2d at 322; *see also Toure*, 2007 U.S. Dist., LEXIS 74056, at *6 (stating that a plaintiff need only make a "modest factual showing" of similarity to satisfy the "relatively lenient evidentiary standard"); *Cuzco*, 477 F. Supp. 241 at 632-33 (plaintiff

satisfied "minimal burden" by making "modest factual showing"); *Iglesias-Mendoza*, 239 F.R.D. at 367-68 ("[Plaintiffs can satisfy the 'similarly situated' requirement by making a modest factual showing . . . that they and potential plaintiffs together were victims of a common policy or plan that violated the law.") (quoting *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)); *Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194, 2005 U.S. Dist. LEXIS 30321, at *15 (S.D.N.Y. Nov. 29, 2005) (plaintiffs face only a very limited burden); *Hoffmann*, 982 F. Supp. at 261 ("The burden on plaintiffs is not a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs are "similarly situated.").

Allegations in the pleadings and declarations are sufficient to make this modest factual showing. *See, e.g.*, *Khalil v. Original Homestead Rest., Inc.*, No. 07 Civ. 695, 2007 U.S. Dist. LEXIS 70372, at *3 (S.D.N.Y. Aug. 9, 2007) (certifying collective action based upon complaint and one affidavit); *Lixin Zhao v. Benihana, Inc.*, No. 01 Civ. 1297, 2001 U.S. Dist. LEXIS 10678, at *2 (S.D.N.Y. May 7, 2001) (certifying based upon one affidavit founded on plaintiff's "best knowledge").

Unlike a Rule 23 class action, a §216(b) collective action requires no "showing of numerosity, typicality, commonality and representativeness . . . as a pre-requisite to approval." *Mazur*, 2005 U.S. Dist. LEXIS 30321, at *12 (internal quotation omitted); *see also Masson v. Ecolab, Inc.*, No. 04 Civ. 4488 2005 U.S. Dist. LEXIS 18022, at *37 (S.D.N.Y. Aug. 17, 2005). The lenient standard for certification and notice under §216(b) is justified because "[t]he ultimate determination regarding the merits of the case, and whether the class is properly situated – which requires a more 'stringent' inquiry – is made later in the litigation process, after more thorough discovery." *Gjurovich*, 282 F. Supp. 2d at 105; *see also Dumitrescu v. Mr. Chow Enters., Ltd.*, No. 07 Civ. 3601, 2008 U.S. Dist. LEXIS 49881, at *11 (S.D.N.Y. June 30, 2008) (noting that

after discovery a court "review[s] the collective action certification more rigorously"). Plaintiff in this case has easily met the lenient standard for certification and notice.

> ### ii.   The Underlying Merits of the Case are Immaterial to the Determination of Conditional Certification and Notice

Although Plaintiff is confident that he will successfully establish that Defendants failed to properly compensate the Covered Employees under the FLSA, a discussion of the underlying merits is unnecessary and inappropriate at this time: "[T]he standard in this circuit is clear; the merits of plaintiffs' claim are not at issue in a motion for conditional certification." *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 354 (E.D.N.Y. 2008); *see also, e.g.*, *Mentor*, 246 F.R.D. at 181 (stating that "the merits of a plaintiffs claims need not be evaluated and discovery need not be completed to approve and disseminate a § 216(b) notice"); *Fasanelli*, 516 F. Supp. 2d at 322 ("To the extent that Defendants['] opposition relies on a detailed factual dispute about whether the Defendants maintained an 'illega1 off-the-clock' policy, 'illegal tip retention' policy, or fail to pay the minimum wage, that inquiry is misplaced as those issues go to the merits of the case."); *Toure*, 2007 U.S. Dist. LEXIS 74056, at *6 (stating that at the conditional certification stage "the merits of a plaintiff's claims need not be evaluated"); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."); *Young v. Cooper Cameron Corp.*. 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (finding that "[t]he focus . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated'"); *Hoffmann*, 982 F, Supp. at 262 ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine that, a definable group of 'similarly situated' plaintiffs can exist here."). Any merits-based argument "is an improper ground on which to base a denial of a motion to certify conditionally an FLSA

collective action[.]" *Anglada*, 2007 U.S. Dial. LEXIS 39105, at \*20. Rather, the proper inquiry is merely "whether the putative class alleged by Plaintiff is similarly situated based on the pleadings and any affidavits," *Fasaneili*, 516 F. Supp. 2d at 321.

### iii.   Plaintiff Has Made the Modest Factual Showing Required for Conditional Certification

Here, Plaintiff has made far more than a modest factual showing that he and Covered Employees are similarly situated. Plaintiff's detailed allegations in the Complaint and declaration show that all Covered Employees were subject to the same compensation scheme. If proven, these allegations establish that Defendants maintain illegal policies and practices that similarly affect all Covered Employees employed by Defendants.

### C.  DISCOVERY OF NAMES, ADDRESSES AND TELEPHONE NUMBERS IS PROPER AND NECESSARY UNDER § 216(b)

It is appropriate for courts in collective actions to order the discovery of names and contact information of potential collective members. *E.g., Lee*, 236 F.R.D. at 202; *Fasanelli*, 516 F. Supp. 2d at 323-24; *Cuzco*, 477 F Supp. 2d at 637; *Sherrill v. Sutherland Global Servs., Inc.*, 487 F. Supp. 2d 344, 350 (W.D.N.Y. 2007); *Patton*, 364 F. Supp. 2d at 268. "Courts within this Circuit routinely grant plaintiff's motion to compel production of the names and addresses of potentially similarly situated employees who may wish to 'opt-in' to a collective action." *Anglada*, 2007 U.S. Dist. LEXIS 39105, at \*22.

Plaintiff therefore requests that, in addition to entering an order granting conditional certification and approving Plaintiff's proposed notice, the Court order Defendants to produce within ten days of its Order a list of all Covered Employees in Excel format who were employed by Defendants at any point in the six years prior to the entry of the Order with the following information: names, Social Security numbers, titles, compensation rates, last known mailing addresses, email addresses, all known telephone numbers and dates of employment.

Plaintiff seeks the Social Security numbers of Covered Employees so that Plaintiff's counsel can perform a skip trace for all notices returned as undeliverable because of a change of address. Based on Plaintiff's counsel's belief, a large percentage of consent forms are typically returned as undeliverable, and the only way to locate these employees is to perform a search by Social Security number. Plaintiffs are willing to execute a stipulation of confidentiality regarding the numbers. *See Patton*, 364 F. Supp. 2d at 268 (requiring defendant to produce Social Security numbers of putative collective members subject to entry of a confidentiality agreement).

### D.  THE PROPOSED NOTICE IS FAIR AND ADEQUATE

Attached as **EXHIBIT A** hereto is Plaintiff's proposed collective notice. The proposed notice provides clear instructions on how to opt in and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action. The Supreme Court specifically left the "content details of a proposed notice under § 216(b) . . . to the broad discretion of the court." *Lee*, 236 F.R.D. at 202; *see also Gjurovich*, 282 F. Supp. 2d at 106. "When exercising its broad discretion to craft appropriate notices in individual cases, District Courts consider the overarching policies of the collective suit provisions" and ensure that putative plaintiffs receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Fasanelli*, 516 F. Supp. 2d at 323. The proposed notice achieves the goal of providing potential opt ins with accurate and timely notice concerning the pendency of the collective action and should be adopted.

### E.  EQUITABLE TOLLING

Should the Court grant the instant motion, Plaintiff respectfully requests that, to avoid inequitable circumstances, the FLSA statute of limitations be tolled until such time that they are able to send notice to potential opt-in plaintiffs. District courts in this and other Circuits have increasingly granted requests for equitable tolling to avoid the prejudice to actual or potential

opt-in plaintiffs that can arise from the unique procedural posture of such cases. *See, e.g.*, *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170-71 (S.D.N.Y. 2014) (tolling the statute of limitations as of the date of the filing of the plaintiff's motion); *Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784, 2013 WL 4834428, at *2 (S.D.N.Y. Aug. 26, 2013) (tolling statute of limitations as of the date the plaintiff was originally scheduled to file her motion for conditional certification); *Kemper v. Westbury Operating Corp.*, No. 12 Civ. 895, 2012 WL 4976122, at *3 (E.D.N.Y. Oct. 17, 2012) ("[P]laintiffs' request to notify individuals who were employed three years from the date plaintiff filed this motion, rather than from the date of the mailing of the notice, is granted."); *McGlone v. Contract Callers*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (tolling statute of limitations while conditional certification motion was being decided).

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court conditionally certify their FLSA claims as a collective action and approve this motion in its entirety.

Dated: New York, New York

July 16, 2021

Respectfully submitted,

LEE LITIGATION GROUP, PLLC

By:   */s/ C.K. Lee*

C.K. Lee, Esq. (CL 4086)
Lee Litigation Group, PLLC
148 West 24th Street, 8th Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*