UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DENNY GONZALEZ, *individually and on behalf of all others similarly situated*,

                Plaintiff,

– against –

HANOVER VENTURES MARKETPLACE LLC, *d/b/a Le District*, JOHN DOE COMPANY 1, *d/b/a HPH Hospitality*, PAUL LAMAS, PETER POULAKAKOS, NICOLAS ABELLO, and DAVID COUCKE,

                Defendants.

**OPINION & ORDER**

21 Civ. 1347 (ER)

RAMOS, D.J.:

    On February 16, 2021, Denny Gonzalez brought this putative class and collective action against Hanover Ventures Marketplace LLC, d/b/a Le District ("Hanover"), John Doe Company 1, d/b/a HPH Hospitality ("HPH"), Paul Lamas, Peter Poulakakos, Nicolas Abello, and David Coucke. Doc. 1. Gonzalez filed an amended complaint on June 29, 2021. Doc. 22. Gonzalez brings claims under the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), Title VII of the Civil Rights Act of 1964, New York Executive Law § 296 ("NYHRL"), New York City Administrative Code § 8-107 ("NYCHRL"), and New York common law. Gonzalez seeks unpaid wages, gratuity, and overtime as well as liquidated damages, statutory penalties, and attorneys' fees and costs under the FLSA and NYLL. Doc. 22 ¶¶ 1–2. Gonzalez also seeks damages and other relief under Title VII, NYHRL, NYCHRL, and New York common law for a hostile work environment of persistent sexual harassment.

    Before the Court is Gonzalez's motion for: (1) conditional certification of a FLSA collective action; (2) approval of Plaintiff's proposed notice and consent forms; (3) approval of distribution of the notice and consent forms to covered employees; (4) production by Defendants of contact information for all covered employees; (5) approval of the posting of the proposed

notice at Defendants' places of business; and (6) tolling of the FLSA statute of limitations until Plaintiff sends notice to potential opt-in plaintiffs. Doc. 25.

For the reasons set forth below, the motion for collective certification is GRANTED subject to the conditions set out below.

## I. BACKGROUND

Gonzalez worked as a server for Hanover from February 12, 2018 until December 2019. Doc. 26 at 14. Hanover is a Delaware limited-liability corporation with a principal place of business at 225 Liberty Street, New York, NY 10281. Doc. 22 ¶ 17. Gonzalez alleges that Hanover owns and operates the French-themed marketplace called "Le District" at 225 Liberty Street, which consists of several restaurants, cafés, counters, and grocers. Doc. 26 at 9. Gonzalez also alleges that the entities at Le District advertise jointly, serve a similar cuisine, and have similar décor and appearance with the common mission "to deliver delicious French-inspired fare in an environment where service and quality are paramount." Doc. 22 ¶¶ 13–14.

Hanover is owned and operated by HPH, a business entity of unknown citizenship, *id.* ¶ 18, which Gonzalez alleges owns and operates 17 hospitality venues throughout the city including Le District. *Id.* ¶ 15. Gonzalez alleges that these 17 venues are restaurants owned and operated by the individual defendants as a single integrated enterprise under the common control of all defendants. *Id.* ¶ 16. As proof of common ownership and business purpose, Gonzalez alleges that the websites are all listed on HPH's website as "Our Properties" with links to each, the restaurants use a central marketing department, websites and social media for each restaurant are designed by the same company, new restaurants require approval by the individual defendants and HPH prior to opening, the restaurants share a "common look and feel of a trendy New York City bar restaurant," the restaurants offer their venue for private parties and events on the same website, and the restaurants share and exchange non-exempt employees. *Id.* ¶ 16.

Individual defendants Peter Poulakakos and Paul Lamas are both owners and principals of the corporate defendants who exercise operational control over the employees in this action. *Id.* ¶ 20. Individual defendants Nicolas Abello and David Coucke were manager and supervisors at L'Appart, one of the restaurants at Le District, with the power to exercise operational control over the employees in this action. *Id.* ¶ 21.

As relevant to the FLSA collective action, Gonzalez alleges that he and the other FLSA collective plaintiffs

> are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them (i) their proper wages due to application of invalid tip credit (ii) improper retention of FLSA Collective Plaintiffs['] tips, (iii) unpaid wages and overtime due to a policy of timeshaving.

*Id.* ¶ 24. Further, Gonzalez alleges that his claim is "essentially the same" as those of the other plaintiffs, and the identities of plaintiffs are readily ascertainable by Defendants. *Id.* ¶¶ 24–25.

Gonzalez specifically worked as a waiter at L'Appart, a Michelin Star restaurant in Le District. *Id.* ¶ 36. Gonzalez alleges that he engaged in non-tipped tasks more than 20% of his working time but was paid at the tip-credit minimum wage for New York City. *Id.* ¶¶ 37, 39, 44. Gonzalez alleges the typical work schedule for him and similarly situated plaintiffs was 9 hours per day, 5 days a week, with his schedule typically being 3:00 p.m. until 12:00 a.m. Tuesday through Saturday. *Id.* ¶ 40. Workers were deducted hours every day for a daily lunch break, but often had to work through the breaks. *Id.* ¶ 42. Further, Defendants would change workers' schedules at the last minute, *id.* ¶ 43, and failed to provide required wage notices and wage statements. *Id.* ¶ 45. Defendants also retained gratuities, as they implemented a tip pool policy that plaintiffs did not agree to and in which managers, including Coucke, participated. *Id.*

¶ 46.  Further, Defendants retained service and administrative fees from large events, without paying tipped staff gratuity.  *Id.* ¶ 47.

## II.     LEGAL STANDARD

Pursuant to the FLSA, an individual may file suit against an employer on behalf of himself and "other employees similarly situated" who give "consent in writing" to become party plaintiffs.  29 U.S.C. § 216(b) (2012).  "District courts have discretion to facilitate this collective action mechanism by authorizing that notice be sent to potential plaintiffs informing them of 'the pendency of the action and of their opportunity to opt-in as represented plaintiffs.'"  *Mark v. Gawker Media LLC*, No. 13 Civ. 4347 (AJN), 2014 WL 4058417, at *2 (S.D.N.Y. Aug. 15, 2014) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010)).

The Second Circuit has endorsed a two-step framework for determining whether a court should certify a case as a collective action under § 216(b).  *See Myers*, 624 F.3d at 554–55; *see also Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016).  This process entails an analysis of whether prospective plaintiffs are "similarly situated" at two different stages:  an early "notice stage," and again after discovery is largely complete.  *See McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (citing *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009)).  At stage one, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a[n] FLSA violation has occurred."  *Myers*, 624 F.3d at 555 (citations omitted).  At stage two, after additional plaintiffs have opted in, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named

plaintiffs." *Id.* If the court concludes that they are not similarly situated, the action may be "decertified," and the opt-in plaintiffs' claims "may be dismissed without prejudice." *Id.*

Here, Plaintiff seeks an initial determination of the propriety of notice to putative opt-in plaintiffs. "Because minimal evidence is available" at this early stage of the proceedings, and because the Court "retain[s] the ability to reevaluate whether the plaintiffs are similarly situated," Plaintiff faces a "'relatively lenient evidentiary standard.'" *McGlone*, 867 F. Supp. 2d at 442 (quoting *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) and *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007)). He must only make "a 'modest factual showing' that [he] and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). "The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,' but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.* (internal citations omitted). "Accordingly, in deciding whether to grant the [Plaintiff's] motion, the Court must merely find 'some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims' of a particular practice." *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 346 (E.D.N.Y. 2012) (quoting *Sbarro*, 982 F. Supp. at 261).

In considering Plaintiff's motion, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch v. United Servs. Auto. Ass'n.*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007). It merely "examines the pleadings and affidavits to determine whether the named plaintiffs and putative class members are similarly situated." *McGlone*, 867 F. Supp. 2d at 442 (citations omitted). If the Court finds

that they are, it will conditionally certify the collective action and order that notice be sent to potential opt-in plaintiffs. *Id.*

### III. DISCUSSION

Gonzalez asks the Court to conditionally certify a collective action on behalf of all current and former non-exempt employees, including but not limited to waiters, runners, bussers, bartenders, cooks, line cooks, dishwashers, and porter persons employed by Hanover at Le District on or after the date that is six years before the filing of the complaint. Doc. 26 at 7–8.

#### A. Le District as a Single Integrated Enterprise

As an initial matter, Gonzalez must show that Le District is a single integrated enterprise covered by the FLSA. "'[A]n employee, who is technically employed on the books of one entity, which is deemed to be part of a larger 'single-employer' entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer.'" *Spiciarich v. Mexican Radio Corp.*, No. 14 Civ. 9009 (SHS), 2015 WL 4191532, at *5 n.5 (S.D.N.Y. July 10, 2015) (quoting *Arculeo v. On–Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005)). "The Second Circuit has never endorsed this theory of liability in the FLSA context, and district courts in this Circuit are divided on its application to FLSA and NYLL cases." *Id.* "While the Second Circuit has yet to rule on whether the 'integrated enterprise/single employer doctrine' is applied in FLSA cases, the 'shared policy concerns underlying the . . . doctrine and the FLSA' urge the theory's application to FLSA claims." *Lopez v. Pio Pio NYC, Inc.*, No. 13 Civ. 4490 (HB), 2014 WL 1979930, at *3 (S.D.N.Y. May 15, 2014) (quoting *Chen v. TYT E. Corp.*, No. 10 Civ. 5288 (PAC), 2012 WL 5871617, at *3 (S.D.N.Y. Mar. 21, 2012)). "Absent a clear resolution of this issue, district courts have discretion to consider the theory because the Second Circuit 'has

treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances.'" *Id.* (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141–42 (2d Cir. 2008)).

To determine whether distinct entities operate as a single integrated enterprise, "courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014) (citation omitted).

Gonzalez argues that Le District's restaurants, cafes, and counters engage in interrelated activities including "mutually supportive services to the substantial advantage of each entity," *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 525 (S.D.N.Y. 1998), because Hanover (1) directly owns Le District, (2) uses a common website for Le District, (3) commonly advertises for Le District, (4) utilizes the space of each business for storage or private events, (5) jointly utilizes the employees amongst entities that operate in Le District, and (6) uses a common payroll system for all the entities. Doc. 26 at 10. In support, Gonzalez cites Hanover's applications for NYC business licenses which list Hanover d/b/a Le District as the applicant for the various licenses. Doc. 26-2. He also points to Le District's website, which lists and promotes each of the entities, Docs. 26-3, 26-4, and provides Le District's singular mission statement: "to deliver delicious French-inspired fare in an environment where service and quality are paramount. Our market of bustling districts is comprised of culinary-specific stations, exciting restaurants, outdoor patio, and a fresh grocery curated by our talented taste-makers." Doc. 26-5. The website is also used to book private parties and venues for all entities and lists each entity's location and hours of operation. Docs. 26-3; 26-7. Lastly, the website has a singular "Contact Us" webpage for all the restaurants. Doc. 26-9. Gonzalez also states in his

declaration that the entities shared storage space in the basement, Doc. 28 ¶ 8, and employees were interchangeable with common work goals, particularly during catering events, *id.* ¶¶ 6–8. Finally, Gonzalez notes that all Le District employees were paid through a common payroll system, Doc. 26-6, were hired and managed through a central HR Department with a common employee handbook, Doc. 26-11, and the entities shared a single social media account, Doc. 26-8.

Defendants' only response to these arguments is that they "have denied all such allegations in the FAC, including enterprise theories, and Plaintiff has offered no evidence other than the synergistic use of websites to rebut this fact[.]" Doc. 29 at 10.

Plaintiff has adequately alleged at this stage that Le District is a single integrated enterprise for purposes of potential FLSA liability. *See Juarez*, 29 F. Supp. 3d at 368 (finding sufficient factual allegations of (i) "interrelated operations" based on shared "website, décor, menus, and uniforms," (ii) common management, ownership and financial control based on single common owner, and (iii) "centralized control of labor relations" based on "core allegations of unlawful pay practices," employees working across multiple locations, and owner's chain-wide role in hiring and payment practices); *see also Bravo v. Established Burger One, LLC*, No. 12 Civ. 9044 (CM), 2013 WL 5549495, at *8–9 (S.D.N.Y. Oct. 8, 2013) (finding single integrated enterprise based on joint advertisement on single website, unified marketing, same menus, shared employees and food among locations, and common management and payroll methods); *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 559 (S.D.N.Y. 2015) (finding single integrated enterprise based on common ownership and supervision, shared website, and intermingled payroll, among other factors). The Court will now determine whether a conditional class should be certified.

### B. Conditional Certification

"The threshold issue in deciding whether to authorize . . . notice in an FLSA action is whether plaintiffs have demonstrated" that they are "similarly situated" to other members of the collective. *Realite v. Ark Rest. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998) (citing 29 U.S.C. § 216(b)). Where plaintiffs bring claims against multiple defendants, they must demonstrate a common policy by all defendants. *Moses v. Griffin Indus., LLC*, No. 18 Civ. 1200 (ALC) (OTW), 2020 WL 5813737, at *3 (S.D.N.Y. Sept. 30, 2020) (citing *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 3d 545, 557–59 (S.D.N.Y. 2013)).

The Court finds that, at this stage, Gonzalez has met his modest burden for conditional collective certification.

#### 1. *Similarly Situated*

Plaintiffs' burden at this stage is low because "the purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist." *Hernandez v. NHR Hum. Res., LLC*, No. 20 Civ. 3109 (PGG) (DF), 2021 WL 2535534, at *5 (S.D.N.Y. June 18, 2021) (citing *Myers*, 624 F.3d at 555). "[T]o be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." *Scott v. Chipotle Mexican Grill*, 954 F.3d 502, 516 (2d Cir. 2020) (citation omitted). Plaintiffs "are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims," and as long as "named plaintiffs and party plaintiffs share legal or factual similarities material to the disposition of their claims, dissimilarities in other respects should not defeat collective treatment." *Id.* (citation omitted).

Moreover, in evaluating the sufficiency of evidence proffered as to the existence of a collective, "courts in this circuit have routinely granted conditional collective certification based

9

solely on the personal observations of one plaintiff's affidavit." *Hernandez v. Bare Burger Dio Inc.*, No. 12 Civ. 7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (collecting cases); *see also Ramos v. Platt*, No. 13 Civ. 8957 (GHW), 2014 WL 3639194, at *2 (S.D.N.Y. July 23, 2014). "However, conclusory allegations and 'unsupported assertions' are not sufficient to support a motion for conditional collective action certification." *Hickmon v. Fun & Fit LLC*, No. 20 Civ. 10270 (RA) (JLC), 2021 WL 3578296, at *5 (S.D.N.Y. Aug. 13, 2021) (citing *Myers*, 624 F.3d at 555). Plaintiffs "must offer something of evidentiary value to demonstrate that similarly situated employees exist and, where plaintiffs fail to meet this minimal requirement, their motion for conditional collective action certification will be denied." *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 481 (S.D.N.Y. 2016) (internal quotation marks and citations omitted). Thus, courts have denied collective certification where "plaintiffs fail[ed] to provide sufficient details about other potentially similarly situated employees, such as the names of other employees, when any conversations with those employees took place, and information regarding the hours those employees worked or how they were paid," *Hickmon*, 2021 WL 3578296, at *6, or where a plaintiff's submission "'does not . . . provide *any* detail as to a *single* . . . observation or conversation' informing his decision to bring a collective action." *Mata v. Foodbridge LLC*, No. 14 Civ. 8754 (ER), 2015 WL 3457293, at *4 (S.D.N.Y. June 1, 2015) (quoting *Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014)); *see also Ikikhueme v. CulinArt, Inc.*, No. 13 Civ. 293 (JMF), 2013 WL 2395020, at *2–3 (S.D.N.Y. June 3, 2013) (denying conditional certification motion premised only on a plaintiff's personal declaration containing "unsupported assertions" regarding other employees). However, a plaintiff need not "offer[] direct quotations from the other identified [proposed members of the collective], or pinpoint the specific calendar days on which

he and they spoke with management[.]" *NHR Hum. Res.*, 2021 WL 2535534, at *9 (S.D.N.Y. June 18, 2021).

      Here, Gonzalez has submitted a declaration in support of the motion for collective certification in which he affirms that "other employees did work that was the same or similar to the work [he] did and were compensated in a similar manner . . . ." Doc. 28 ¶ 1. He states that he and his coworkers worked interchangeably between Le District's restaurants and worked for Le District as a whole during large events. *Id.* ¶¶ 4, 6. Gonzalez names six Le District coworkers, including their position and the entity they worked for, that he spoke with to determine that they were subject to the same wage and hour policies in which they experienced nontipped work, did not receive adequate tips from large events, were deducted 30 minutes each work day regardless of whether they were able to take a lunch break, and had their tips reduced through a scheme where managers were titled as maître d's so they could share in the tip pool. *Id.* ¶¶ 5–16. Gonzalez also determined through these conversations and personal observations that no employee received proper wage notices. *Id.* ¶ 18.

      Defendants dispute the declaration, claiming in a conclusory fashion that Gonzalez has no relationship whatsoever with Le District's other restaurants, and claiming that each entity has separate staff and payroll. Doc. 29 at 12. These issues, however, go to the merits of the underlying FLSA action. "At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations. Indeed, a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (internal citations omitted). Therefore, Defendants' arguments "do not present a basis to deny certification." *Santiago v. Tequila Gastropub LLC*,

No. 16 Civ. 7499 (JMF), 2017 WL 1283890, at *1 (S.D.N.Y. Apr. 5, 2017). Of course, if, after discovery, it becomes clear that certain opt-in plaintiffs are not similarly situated, "defendants may move for decertification at that time." *Sanchez v. Gansevoort Mgmt. Grp., Inc.*, No. 12 Civ. 75 (KBF), 2013 WL 208909, at *2 (S.D.N.Y. Jan. 10, 2013).

Defendants also argue that Gonzalez has irremediable conflicts with the putative collective because he also alleged individual claims for damages for discrimination and was terminated for disciplinary reasons. Doc. 29 at 14. Defendants do not cite any cases to support this argument. The Court does not agree that Gonzalez's individual claims make him dissimilar from the proposed collective. All that is required at this stage is a showing that Gonzalez shares with the proposed collective a similar issue of law or fact material to the disposition of their FLSA claims. *Scott*, 954 F.3d at 516. Gonzalez's individual claims are simply irrelevant to the conditional certification motion.

The Court finds that Gonzalez's declaration, bolstered by the exhibits submitted in support of his motion, is sufficient to meet the modest burden of showing that the Le District employees at issue here are similarly situated. *See Hernandez*, 2013 WL 3199292, at *8 (finding that a plaintiff's declaration of personal observations is sufficient to satisfy this burden); *Ballast v. Workforce7 Inc.*, No. 20 Civ. 3812 (ER), 2021 WL 5999202, at *6 (S.D.N.Y. Dec. 20, 2021) (finding sufficient similarity where declarations identified other similarly situated employees, including some by name, and describing the conversations they had).

### 2. *Common Policy or Plan*

While Gonzalez may ultimately be unable to prove that Le District is a joint employer at the second state of certification, for the same reasons as stated above, he has, at this juncture, sufficiently alleged the existence of a common policy regarding failure to distribute proper wage

12

statements and notices, failure to pay proper minimum wage, and wrongfully retained gratuities. *See Ballast*, 2021 WL 5999202, at *6–7; *see also Uraga v. Amici 519 LLC*, No. 17 Civ. 3547 (ALC), 2018 WL 3579850, at *4 (S.D.N.Y. July 25, 2018) ("Whether or not Defendants operated as a single enterprise is a complicated and fact-specific inquiry, which is not properly determined at the collective action certification stage." (internal quotation marks and citation omitted)).

### C. Scope of Notice and Notice Period

Gonzalez seeks to certify the collective of relevant employees employed by Hanover at Le District on or after the date that is six years before the filing of the complaint. Doc. 26 at 7–8. Defendants do not contest the temporal scope of the collective. The FLSA, however, has a two-year statute of limitations, or three years in the case of willful violations. 29 U.S.C. § 255(a). Given the fact that Gonzalez has not yet moved for certification of the NYLL claim, which has a six-year statute of limitations, the Court finds that a three-year notice period is appropriate. *See Garcia v. Chipotle Mexican Grill, Inc.*, No. 16 Civ. 601 (ER), 2016 WL 6561302, at *9 (S.D.N.Y. Nov. 4, 2016); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013) (both approving three-year notice periods instead of the requested six where the plaintiffs had not yet moved to certify the NYLL claim).

Although notice is normally provided to those employed within three years of the date of the notice, "courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date." *Id.* (internal quotation marks omitted). Accordingly, the Court finds it appropriate in this case to send notice of this action to all collective class members employed within the three years prior to the filing of the complaint.

### D. Form and Method of Plaintiffs' Proposed Notice

"Upon authorizing the distribution of notice to potential opt-in plaintiffs, the district court maintains broad discretion over the form and content of the notice." *Contrera v. Langer*, 278 F. Supp. 3d 702, 721 (S.D.N.Y. 2017) (internal quotation marks and citations omitted); *see also Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202 (S.D.N.Y. 2006) ("[T]he Supreme Court has noted that the 'details' of notice should be left to the broad discretion of the trial court."). "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide 'accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate.'" *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)).

Gonzalez has submitted a proposed notice form. Doc. 26-1. The form is captioned "Notice of Pendency of Lawsuit Regarding Wages" and asks the recipient to "[p]lease read this notice if you are a former or current employee . . . employed by Le District at any time between February 16, 2015 and the present." *Id.* The notice then explains the lawsuit's claims and damages sought, advising recipients of their "right to participate in the lawsuit under the FLSA," making clear that it does not apply to the class action claim brought under the NYLL. *Id.* The notice also states that Defendants have denied that the claims have merit and explains that the Court has not yet decided the merits. *Id.* The notice then states the recipients' legal rights to participate or not participate, as well as notice that retaliation by Defendants is illegal. *Id.* Further, the notice states that participants will be required to provide certain information and potentially testify, and the results of the case will be binding. The notice then lists the steps to take to join the lawsuit, states the relevant statutes of limitations, and discusses recipients'

options for attorney representation. *Id.* Lastly, the notice lists counsel for Plaintiffs' contact information and states that recipients can obtain more information about the lawsuit by contacting them. *Id.* The notice includes a blank consent to sue form and asks that it be returned to counsel for Plaintiff within 90 days of notice. *Id.* Defendants have not objected to the content of the notice.

The Court finds the proposed notice and opt-in forms to be, on the whole, fair and accurate. Gonzalez has included the relevant information that courts generally deem appropriate for inclusion in a notice of collective action. *See Slamna v. API Rest. Corp.*, No. 12 Civ. 757 (RWS), 2013 WL 3340290, at *5 (S.D.N.Y. July 2, 2013) (citations omitted); *see also Moses*, 2020 WL 5813737, at *4. The forms clearly indicate opt-in plaintiffs' right to separate counsel, *see Islam v. LX Ave. Bagels, Inc.*, No. 18 Civ. 04895 (RA) (RWL), 2019 WL 5198667, at *10 (S.D.N.Y. Sept. 30, 2019), and the majority approach of courts in this district is to direct opt-in plaintiffs to mail consent forms to plaintiffs' counsel. *Martin v. Sprint/united Mgmt. Co.*, No. 15 Civ. 5237 (PAE), 2016 WL 30334, at *18 (S.D.N.Y. Jan. 4, 2016) (collecting cases). An opt-in period of 90 days is also reasonable. *See Vecchio v. Quest Diagnostics Inc.*, No. 16 Civ. 05165 (ER), 2018 WL 2021615, at *8 (S.D.N.Y. Apr. 30, 2018). As per the Court's decision regarding the temporal scope of the collective, however, Gonzalez is directed to change the notice to reflect its applicability to only those employed within three years prior to the filing of the complaint.

Gonzalez seeks to distribute notice to potential opt-in plaintiffs by posting the notice and consent forms in Defendants' places of business where covered employees are employed during regular business hours. Doc. 26 at 8. Defendants have not objected to this method of distribution, and the Court finds this appropriate, as "[c]ourts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members

will also be notified by mail." *Whitehorn*, 767 F. Supp. 2d at 449 (citations omitted); *see also Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *9 (S.D.N.Y. Sept. 16, 2013).

### E. Contact Information for Potential Plaintiffs

Gonzalez requests that the Court order Defendants to, within 10 days of the Court's order, produce in Excel format the names, social security numbers, titles, compensation rates, dates of employment, last known mailing addresses, email addresses, and all known telephone numbers of all covered employees. Doc. 26 at 8. Defendants have not objected to this request. However, the Court will not require disclosure of social security numbers at this time. "[I]n light of privacy concerns, courts in this District typically decline to compel production of Social Security numbers." *Martin*, 2016 WL 30334, at *20 (internal citations and brackets omitted). Without a demonstration of the necessity of such sensitive information, production is not warranted. *See Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 489 (S.D.N.Y. 2016). Defendants are therefore directed to turn over only the approved relevant contact information in their possession. The parties are directed to meet and confer as to a schedule for Defendants to produce such contact information.

### F. Equitable Tolling

Gonzalez seeks equitable tolling of the FLSA statute of limitations until such time as they are able to send notice to potential opt-in plaintiffs. Doc. 26 at 29. Defendants have not objected. Equitable tolling is only appropriate "in rare and exceptional circumstances, where a plaintiff has been prevented in some extraordinary way from exercising his rights." *Garcia*, 2016 WL 6561302, at *10 (quoting *Vasto v. Credico (USA) LLC*, No. 15 Civ. 9298 (PAE), 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016)). However, "[t]he delay required to decide a

motion may warrant equitable tolling." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014). "While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings." *McGlone*, 867 F. Supp. 2d at, 445.

Gonzalez moved for conditional certification shortly after Defendants answered the complaint and court-ordered mediation was unsuccessful. The motion has been fully briefed for over four months. "Absent tolling of the limitations period, a substantial number of class members may now be time-barred through no fault of counsel or the class representative." *Jackson*, 298 F.R.D. at 170. Accordingly, the statute of limitations will be tolled as of the date of the filing of Gonzalez's motion.

## IV. CONCLUSION

For the reasons set forth above, Gonzalez's motion for conditional certification is GRANTED for a collective action on behalf of all current and former non-exempt employees, including but not limited to waiters, runners, bussers, bartenders, cooks, line cooks, dishwashers, and porter persons employed by Hanover at Le District on or after the date that is three years before the filing of the complaint. The proposed notice and consent forms, subject to the change described above, may be distributed by posting at Defendants' places of business. Lastly, the Court approves equitable tolling of the FLSA statute of limitations until such time that Gonzalez is able to send notice to potential opt-in plaintiffs.

The Clerk of Court is respectfully requested to terminate the motion, Doc. 25.

It is SO ORDERED.

Dated:  January 21, 2022
        New York, New York

_____
Edgardo Ramos, U.S.D.J.