**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DENNY GONZALEZ, *on behalf of himself, and all*
*FLSA Collective Plaintiffs and the Class,*

                        Plaintiff,

              -against-

HANOVER VENTURES MARKETPLACE LLC,
      d/b/a LE DISTRICT,
JOHN DOE COMPANY 1,
      d/b/a HPH HOSPITALITY,
PAUL LAMAS, PETER A POULAKAKOS,
NICOLAS ABELLO, and DAVID COUCKE

                    Defendants.

**Case No.:** 21-cv-01347-ER

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S PARTIAL MOTION FOR**
**SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

C.K. Lee, Esq. (CL 4086)
Lee Litigation Group, PLLC
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs*
*and the Class*

## TABLE OF CONTENTS

EXHIBITS ..................................................................................................................................... ii

TABLE OF AUTHORITIES ......................................................................................................... iii

I.      STATEMENT OF FACTS ................................................................................................. 1

II.     ARGUMENTS .................................................................................................................... 1

   A.   SUMMARY JUDGMENT STANDARD ........................................................................... 1

   B.   PLAINTIFF GONZALEZ AND TIPPED SUBCLASS MEMBERS ARE ENTITLED TO
   SUMMARY JUDGMENT ON THEIR UNPAID MINIMUM WAGE CLAIMS DUE TO AN
   INVALID TIP CREDIT ..................................................................................................... 1

      1.   Defendants Paid Non-Exempt Tipped Employees at Hourly Rates Less Than the
      Prevailing Minimum Wage .......................................................................................... 2

      2.   Defendants Failed to Satisfy Statutory Notice Requirements for Claiming a Tip Credit
      Allowance under the NYLL .......................................................................................... 3

      3.   Defendants Failed to Satisfy the Notice Requirement for Claiming Tip Credit
      Allowance under the FLSA .......................................................................................... 8

      4.   Under Both the FLSA and NYLL Defendants Were Not Entitled to Claim a Tip Credit
      as Plaintiff and Tipped Subclass Members Did Not Receive All Tips ................................. 11

      5.   Defendants Were Not Entitled to Claim a Tip Credit as Plaintiff and Tipped Subclass
      Members Performed Excessive Non-Tipped Side Work ...................................................... 14

   C.   PLAINTIFF AND CLASS MEMBERS ARE ENTITELD TO SUMMARY JUDGMENT
   ON THEIR UNPAID MEAL BREAK CLAIMS .................................................................... 16

   D.   PLAINTIFF AND CLASS MEMBERS ARE ENTITLED TO SUMMARY JUDGMENT
   ON THEIR WTPA CLAIMS ............................................................................................ 18

      1.   Defendants Failed to Provide Proper Wage and Hour Notices under the WTPA .......... 18

      2.   Defendants Failed to Provide Proper Wage Statements under the WTPA .................... 19

   E.   PLAINTIFF AND CLASS MEMBERS ARE ENTITLED TO LIQUIDATED
   DAMAGES UNDER EITHER THE FLSA OR NYLL ........................................................... 22

   F.   DEFENDANTS ARE SUBJECT TO A THREE-YEAR STATUTE OF LIMITATIONS
   UNDER THE FLSA ......................................................................................................... 24

   G.   DEFENDANTS ARE JOINTLY AND SEVERALLY LIABLE AS EMPLOYERS
   UNDER THE FLSA AND NYLL ....................................................................................... 25

      1.   Individual Defendants PAUL LAMAS and PETER POULAKAKOS are Employers
      under the FLSA ........................................................................................................ 25

      2.   Defendants Are Employers under the NYLL ........................................................... 27

III.    CONCLUSION .............................................................................................................. 27

## EXHIBITS

**Exhibit A**    Transcript of May 21, 2022 Deposition of Defendant Paul Lamas

**Exhibit B**    Transcript of May 31, 2022 Deposition of Le District's Director of Operations, Sebastian Muller

**Exhibit C**    Defendants' Handbook

**Exhibit D**    Transcript of June 15, 2022 Deposition of Defendant David Couke

**Exhibit E**    Transcript of June 17, 2022 Deposition of Le District's Human Resources Director, Thomas Duffy

**Exhibit F**    Correspondence from Le District's Human Resources Department

**Exhibit G**    Defendants' Onboarding Document List, Webpage, and Social Media Postings

**Exhibit H**    Example Pre-2018 Class Wage and Tip Notices

**Exhibit I**    Example Post-2018 Blank Class Wage and Tip Notices

**Exhibit J**    Example Post-2018 Filled Class Wage and Tip Notices

**Exhibit K**    Example Wage Records of Plaintiff

**Exhibit L**    Example Class Pay Records Produced For Pre-2020 Work

**Exhibit M**    Example Class Pay Records Produced For Post-2020 Work

**Exhibit N**    Notice of Violation from the New York State Department of Labor

**Exhibit O**    Le District's Closing and Opening Check Lists for Front of House Employees

**Exhibit P**    Example Time Records Showing Automatic Deduction

**Exhibit Q**    Le District's Class List

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242 (1986) .................................................................. 1

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ........................................................ 1

*Balderman v. U.S. Veterans Admin.*, 870 F.2d 57 (2d Cir. 1989) ............................................... 1

*Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008) .................... 22

*Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446 (1948) ............................................................ 17

*Cabrera v. Canela*, 412 F. Supp. 3d 167 (E.D.N.Y. 2019) .......................................................... 11

*Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984)................................... 25, 26, 27

*Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345, 2013 U.S. Dist. LEXIS 135926 (S.D.N.Y. 2013) ...................................................................................................................................... 14

*Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220 (S.D.N.Y. 2002)........................... 8, 9, 11

*Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253 (S.D.N.Y. 2001) ................... passim

*Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473 (2d Cir. 2014) ................................... 10

*Cucu v. 861 Rest. Inc.*, No. 14 Civ. 1235, 2017 U.S. Dist. LEXIS 84196 (S.D.N.Y. June 1, 2017) ......................................................................................................................................... 9

*Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481 (S.D.N.Y. 2017) ....................................... 12

*Gamero v. Koodo Sushi Corp.*, 752 F. App'x 33 (2d Cir. 2018)................................................... 12

*Glatt v. Fox Searchlight Pictures, Inc.*, 293 F.R.D. 516 (S.D.N.Y. 2013) .................................. 27

*Gomez v. MLB Enters., Corp.*, 2018 U.S. Dist. LEXIS 96145 (S.D.N.Y. June 5, 2015) ............. 11

*Gonzalez v. Jane Roe Inc.*, No. 10 Civ. 1000, 2015 U.S. Dist. LEXIS 103370 (E.D.N.Y. July 15, 2015) ......................................................................................................................................... 4

*He v. Home on 8th Corp.*, No. 09 Civ. 5630, 2014 WL 3974670 (S.D.N.Y. Aug. 13, 2014)...... 10

*Heng Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. Feb. 1, 2007) ............................................................................................................................. 8

*Heng Chan v. Triple 8 Palace, Inc.*, 2006 U.S. Dist. LEXIS 15780 (S.D.N.Y. Mar. 30, 2006) .. 11

*Hengjin Sun v. China 1221, Inc.*, No. 12 Civ. 7135, 2016 U.S. Dist. LEXIS 52292 (S.D.N.Y. Apr. 19, 2016) ................................................................................................................................. 22

*Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999) .............................................. 24, 25

*Hristova v. 3321 Astoria Inc.*, No. 17 Civ. 1633, Dkt. No. 49 (E.D.N.Y. June 27, 2018) ........... 20

*Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490 (S.D.N.Y. 2015)............................. 3, 8, 9, 10

*Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013) .................................................................. 25

*Kim v. 511 E. 5th St., LLC*, No. 12 Civ. 8096, 2015 U.S. Dist. LEXIS 135337 (S.D.N.Y. Sep. 26, 2015) ....................................................................................................................................... 22

*Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706 (S.D.N.Y. 2007) ....................................... 11, 13

*Marin v. Apple-Metro, Inc.*, No. 12 Civ. 5274, 2017 U.S. Dist. LEXIS 165568 (E.D.N.Y. Oct. 4, 2017) ......................................................................................................................................... 4

*Mendez v. Pizza on Stone, LLC*, No. 11 Civ. 6316, 2012 U.S. Dist. LEXIS 108605 (S.D.N.Y. Aug. 1, 2012) ...................................................................................................................... 3, 14

*Moon v. Kwon*, 248 F.Supp.2d 201 (S.D.N.Y. Sept. 9, 2002) ..................................................... 24

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010) ............ 1

*Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 309-10 (E.D.N.Y. 2009) ............................. 6, 7, 8, 20

*Reich v. So. New England Telecomm, Corp.*, 121 F.3d 58 (2d Cir. 1997) ................................... 17

*Reyes v. Sofia Fabulous Pizza Corp.*, 2014 U.S. Dist. LEXIS 188734 (S.D.N.Y. Apr. 7, 2014) ................................................................................................................................... 4, 10

*Reyes v. Sofia Fabulous Pizza Corp.*, No. 13 Civ. 7549, 2014 U.S. Dist. LEXIS 188734 (S.D.N.Y. Apr. 7, 2014) .................................................................................................................. 9

*Sethi v. Narod*, 974 F. Supp. 2d 162 (E.D.N.Y. 2013) .................................................... 27

*Shahriar v. Smith & Wollensky Rest. Group. Inc.*, 659 F.3d 234 (2d Cir. 2011) ........................ 12

*Velez v. 111 Atlas Rest. Corp.*, No. 14 Civ. 6956, 2016 U.S. Dist. LEXIS 107230 (E.D.N.Y. Aug. 11, 2016) ....................................................................................................... 3, 6, 7, 23

*Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240 (S.D.N.Y. 2008) ............................ 1, 2, 9, 22

*Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d Cir. 2003)............................................ 25

*Zubair v. EnTech Eng'g P.C.*, 900 F. Supp. 2d 355 (S.D.N.Y. 2012) ........................................ 23

## STATUTES

29 U.S.C. § 203......................................................................................................... 8, 9

29 U.S.C. § 203(d) ......................................................................................................... 25

29 U.S.C. § 206......................................................................................................... 1, 16

29 U.S.C. § 207......................................................................................................... 1, 17

29 U.S.C. § 216(b) ......................................................................................................... 22

29 U.S.C. § 255(a) ......................................................................................................... 24

29 U.S.C. § 260......................................................................................................... 22

N.Y. Lab. L. § 195-1 ...................................................................................................... 18

N.Y. Lab. L. § 195-2 ...................................................................................................... 18

N.Y. Lab. L. § 195-3 ................................................................................................ 19, 20

N.Y. Lab. L. § 196-a .................................................................................................. 2, 12

N.Y. Lab. L. § 196-d ...................................................................................................... 11

N.Y. Lab. L. § 198 ......................................................................................................... 22

N.Y. Lab. L. § 652 .................................................................................................... 1, 16

N.Y. Lab. L. § 663 ......................................................................................................... 22

## RULES

Fed. R. Civ. P. 56......................................................................................................... 1

Fed. R. Civ. P. 56(a) ...................................................................................................... 1

Fed. R. Civ. P. 56(c) ...................................................................................................... 1

Fed. R. Civ. P. 56.1........................................................................................................ 1

## REGULATIONS

12 N.Y.C.R.R. § 146-1.2 ................................................................................................ 3

12 N.Y.C.R.R. § 146-1.3 ............................................................................................. 3, 4

12 N.Y.C.R.R. § 146-1.4 ............................................................................................ 1, 17

12 N.Y.C.R.R. § 146-2.1 ................................................................................................ 8

12 N.Y.C.R.R. § 146-2.17 .............................................................................................. 13

12 N.Y.C.R.R. § 146-2.2 .......................................................................................... 4, 6, 18

12 N.Y.C.R.R. § 146-2.3 ............................................................................................ 6, 19

12 N.Y.C.R.R. § 146-2.9 ................................................................................................ 14

29 C.F.R. § 531.59(b) ................................................................................................ 9, 10

## I.    STATEMENT OF FACTS

The facts set forth in Plaintiff's Rule 56.1 Statement are fully incorporated by reference herein.

## II.    ARGUMENTS

### A.    SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56, a moving party is entitled to summary judgment on a claim where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the moving party's burden to show that no genuine issue of fact exists. *See Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 256 (1986); *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). Rule 56 provides that, in moving for summary judgment, "[a] party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . or other materials." Fed. R. Civ. P. 56(c)(1). Whether any disputed issue of material fact exists is for the Court to determine. *Balderman v. U.S. Veterans Admin.*, 870 F.2d 57, 60 (2d Cir. 1989).

### B.    PLAINTIFF GONZALEZ AND TIPPED SUBCLASS MEMBERS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR UNPAID MINIMUM WAGE CLAIMS DUE TO AN INVALID TIP CREDIT

Plaintiff GONZALEZ and Tipped Subclass Members suffered from Defendants' policy of failing to pay the proper minimum wage. *See* 29 U.S.C. § 206(a)(1); 29 U.S.C. § 207(a)(1); N.Y. Lab. L. § 652(1); 12 N.Y.C.R.R. § 146-1.4. "In determining whether the plaintiffs received the minimum wage and overtime, we start with the premise that the <u>employer</u> is obligated to maintain records of wages and hours." *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 254-55 (S.D.N.Y. 2008) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)) (emphasis added). "In the absence of documentation, the employee may rely on [their] own

1

recollection to meet [their] initial burden, in which case the employer must proffer evidence sufficient to rebut that recollection." *Id*. *See also* N.Y. Lab. L. § 196-a ("the employer in violation shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements").

Throughout discovery, Defendants have produced documents for a sampling of employees across all of Le District. As these records are produced by Defendants, there can be no factual dispute as to their legitimacy.

Furthermore, as Defendant LAMAS and Le District's Director of Operations, Sebastian Muller, testified in their deposition, all Le District departments and employees used the same punch card system, the same pay stubs, and the same time-keeping to track work schedules and clock-records.  *See* **Exhibit A**, Lamas Dep. at p. 28:10-19 (**Q:** Okay, and so do you know what the payroll company is that you use for Le District? **A:** Yes.); **Exhibit B**, Muller Dep. at p. 32:3-10 (**Q:** Okay, and so Le District would use the same payroll vendor for all of its employees, right? **A:** Yes. **Q:** So the pay stubs for all the employees at Le District would look the same, right? **A:** I don't know, but yes.); *see also* id. at p. 58:17-24 (**A:** The document you're showing me is a time sheet report. When you clock -- **Q:** Yes. **A:** -- in, clock out. **Q:** Yes. It's a time sheet, right? Are the same form of time sheets used for all employees at Le District? **A:** Yes.).

1. **Defendants Paid Non-Exempt Tipped Employees at Hourly Rates Less Than the Prevailing Minimum Wage**

Plaintiff GONZALEZ and Tipped Subclass Members suffered from Defendants' policy of failing to pay the proper minimum wage due to an invalid tip credit allowance. During their employment with Defendants, Plaintiff GONZALEZ and Tipped Subclass Members were paid at hourly rates that were at all times below the prevailing minimum wage.

Defendants' payroll records demonstrate that tipped employees, were paid beneath the New York City statutory minimum wage for the entirety of the relevant statutory period, which in New York City was the following: (i) $8.75 in 2015; (ii) $9.00 in 2016; (iii) $11.00 in 2017; (iv) $13.00 in 2018, and (v) $15.00 since 2019. *See* **Exhibit H**, Example of Tipped Employee Wage Notices Pre-2018; **Exhibit M**, Sample Tipped Employee Paystubs; *see also* 12 N.Y.C.R.R. § 146-1.2.

Therefore, it is not in dispute that Defendants compensated Plaintiff GONZALEZ and Tipped Subclass Members below the statutory minimum wage for New York. All that remains in dispute is whether Defendants were permitted to take a tip-credit to pay employees beneath the minimum wage. Plaintiff demonstrates below that Defendants failed to meet the FLSA's and NYLL's stringent tip-credit requirements.

### 2. Defendants Failed to Satisfy Statutory Notice Requirements for Claiming a Tip Credit Allowance under the NYLL

Under the NYLL, "[a]n employer may take a credit towards the basic minimum hourly rate" only if the employer satisfies the notice and recordkeeping requirements. 12 N.Y.C.R.R. § 146-1.3 (effective Jan. 1, 2011). *See Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 498 (S.D.N.Y. 2015); *Mendez v. Pizza on Stone, LLC*, No. 11 Civ. 6316, 2012 U.S. Dist. LEXIS 108605, at *11 (S.D.N.Y. Aug. 1, 2012) (noting the "strict prerequisites" to taking tip credits under the NYLL). "[T]he defendant [employer] has the burden of proving compliance with all of the . . . notice and record-keeping requirements." *Velez v. 111 Atlas Rest. Corp.*, No. 14 Civ. 6956, 2016 U.S. Dist. LEXIS 107230, at *29 (E.D.N.Y. Aug. 11, 2016). Here, Defendants were not entitled to claim a tip credit allowance because they failed to satisfy the statutory requirements of the NYLL.

*(i)  Defendants Failed to Satisfy the Written Notice Requirement*

To claim a valid tip credit under the NYLL, an employer must provide tipped employees with written notice "prior to the start of employment" detailing "the employee's regular hourly pay rate, overtime hourly pay rate, [and] the amount of tip credit, if any, to be taken from the basic minimum hourly rate" and informing the employee that "extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate." 12 N.Y.C.R.R. § 146-2.2. "Failure to provide adequate tip credit notice under [Section] 146-2.2 invalidates any tip credit claimed by the employer." *Reyes v. Sofia Fabulous Pizza Corp.*, 2014 U.S. Dist. LEXIS 188734, at *23 (S.D.N.Y. Apr. 7, 2014) (citing 12 N.Y.C.R.R. § 146-1.3). ("An employer may take a credit towards the basic minimum hourly rate . . . if the employee has been notified of the tip credit as required in section 146-2.2."). *See Marin v. Apple-Metro, Inc.*, No. 12 Civ. 5274, 2017 U.S. Dist. LEXIS 165568, at *110-123 (E.D.N.Y. Oct. 4, 2017) (<u>Court rejected the DOL's interpretation letter and held that ***written*** tip credit notice was required to claim a valid tip credit under the NYLL</u>); *Gonzalez v. Jane Roe Inc.*, No. 10 Civ. 1000, 2015 U.S. Dist. LEXIS 103370, at *6 n.6 (E.D.N.Y. July 15, 2015) (holding that "employer may receive the benefit of the tip credit under the NYLL only if the employer gives proper notice").

In this case it cannot be disputed that Defendants never provided the proper tip-credit notice to putative class members working prior to 2018.  In violation of NYLL, no notice was given that "extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate[,]" was included in any notice for these class members. *See* 12 N.Y.C.R.R. § 146-2.2; *see also* **Exhibit H**, Sample Notices to Tipped Employees Pre-2018.  Moreover, as to putative class members working after 2018, many class members like Plaintiff's GONZALEZ's notice is left blank, and he was never informed that any deduction from the minimum wage was being made. *See* **Exhibit I**, Plaintiff's Notice and Other Sampled Tipped Employees Showing Blank Tip

4

Notice. Defendants' documents demonstrate that a full tip-credit notice was never provided to tipped workers, working pre-2018. Further, for those working after 2018, whose tip-credit notification is left blank, no notice of the deduction was provided. *See* id.

The lack of knowledge from Defendants' tipped employees as to the tip credit being taken is understandable as Defendants' management had no understanding of the tip-credit either. *See* **Exhibit D**, Coucke Dep. at p. 58:3-7 (**Q.** Do you know what a tip credit is? **A.** No. **Q.** Do you know what the requirements are in order to claim a tip credit? **A.** No.). Defendant Coucke's failure to understand the tip-credit is particularly relevant as he was not just a manager for Le District. Prior to being a manager, he was also a waiter who worked at two of Le District's restaurants, L'Appart and Beaubourg. *See* id. at 14:10-12 (**Q:** How long were you a server at L'Appart? **A:** Couple months.). Defendant Coucke himself confesses that he did not understand the tip-credit when he was a waiter, he did not understand it as a manager, and he still did not understand it as of the date of his deposition. *See* id.

There is no dispute. Plaintiff, Defendant Coucke, and the following 10 declarants, all tipped employees who worked at multiple departments of Le District, attest to not being informed by Defendant of what a tip-credit was or that it would be taken: (i) Decl. of Martin Perez at ¶ 7, (ii) Decl. of Amber Johnson at ¶ IX, (iii) Decl. of Mark Bermudez at ¶ 7, (iv) Decl. of Katherine Batista at ¶ VIII, (v) Decl. of Jesse Doherty at ¶ 5, (vi) Decl. of Clavijo Fajardo at ¶ 7, (vii) Decl. of Burnett at ¶ 8, (viii) Decl. of Yan Carlos Batista at ¶ 6, (ix) Decl. of Nally Camillo Cruz at ¶ 5, and (x) Decl. of Diana Marie O'Kane at ¶ 6.

Defendants have failed to satisfy their burden of demonstrating that they provided Plaintiff GONZALEZ or Tipped Subclass Members with valid tip credit notice under New York

regulations. Therefore, Defendants are ineligible to claim a tip credit allowance as part of the minimum wage and overtime under the NYLL.

*(ii) Defendants Failed to Satisfy the Wage Statement Requirement*

"[E]mployers who failed to provide their employees with itemized tip credit amounts on their paystubs could not claim a tip credit under the NYLL." *Velez*, 2016 U.S. Dist. LEXIS 107230, at \*31. Throughout Plaintiff's employment, Defendants failed to "provide to each employee a statement, commonly referred to as a pay stub, with every payment of wages," listing tip credit claimed as part of the minimum wage. 12 N.Y.C.R.R. § 146-2.3. Failure to itemize the tip credit on wage statements *violates* the tip credit notice. *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 309-10 (E.D.N.Y. 2009) (requiring an employer claiming a tip credit against an employee's wages to "furnish each employee a statement with every payment of wages listing . . . allowances . . . claimed as part of the minimum wage . . ." and the "employer must 'maintain and preserve for not less than six years weekly payroll records which shall show for each employee . . . allowances . . . claimed as part of the minimum wage.'")(internal citations omitted). A correct tip credit must be shown to "be taken from the basic minimum hourly rate." 12 N.Y.C.R.R. § 146-2.2(a); *see also Copantitla*, 788 F. Supp. 2d at 290 (granting summary judgment to plaintiffs on the issue of defendants' violation of minimum wage laws because Defendants' wage statements "[did] not record that any of the tip income was claimed as part of the minimum wage. Accordingly, defendants have failed to meet this requirement of claiming a 'tip allowance' under New York law").

Plaintiff GONZALEZ and Tipped Subclass Members were <u>never</u> provided wage statements that informed them of the exact amount of tip credit allowance being claimed as a deduction by Defendants for each pay period. Defendants have failed to produce <u>any</u> paystubs for tipped employees prior to 2019. *See* Decl. of CK Lee at ¶ 20; *see also,* **Exhibit L**, Example Pre-

6

2020 Payroll Record.  After January 1, 2020, the paystubs which were produced failed to state the exact amount being deducted by the tip-credit. *See* **Exhibit M**, Sample Post-2020 Paystubs.

Paystubs after 2020 randomly contain the following language, or language that is substantially similar: "→ 'NY MIN WAGE IS 15. $5 TIP CREDIT TAKEN.'" *See* **Exhibit M**, Example Post-2020 Paystubs.  The random inclusion of the prior language was not a proper notice of the amount of tip-credit being deducted from employees' hours.  The random inclusion of this language does not provide the exact amount being deducted from each employee's weekly pay and, therefore, fails to satisfy the notification requirements of NYLL.  As Defendant LAMAS and Le District's General Manager, Sebastian Muller, state, all Le District use the same payroll system and all the pay stubs look alike. *See* **Exhibit A**, Lamas Dep. at p. 28:10-19 (**Q:** Okay, and so do you know what the payroll company is that you use for Le District? **A:** Yes.); **Exhibit B**, Muller Dep. at p. 32:3-10 (**Q:** Okay, and so Le District would use the same payroll vendor for all of its employees, right? **A:** Yes. **Q:** So the pay stubs for all the employees at Le District would look the same, right? **A:** I don't know, but yes.).

As Defendants have produced <u>zero</u> wage statements for the period before January 1, 2020, and the statements after January 1, 2020, fail to clearly delineate the amount of tip credit claimed as part of the minimum wage, Defendants have failed to satisfy the burden required by the NYLL. As a result of Defendants' failure to produce any proper wage statements and Defendants' tip credit must be invalidated for Plaintiff GONZALEZ and Tipped Subclass Members.  Plaintiff and Tipped Subclass Members must be entitled to unpaid wages for Defendants' invalid tip credit deduction. *See Copantitla*, 788 F. Supp. 2d at 290; *Padilla*, 643 F. Supp. 2d at 309-10; *Velez*, 2016 U.S. Dist. LEXIS 107230, at *31.

7

*(iii) Defendants Failed to Satisfy the Recordkeeping Requirement*

New York regulations also impose a recordkeeping burden, by requiring that an employer "maintain and preserve for at least six years weekly payroll records which shall show for each employee . . . tip credits, if any, claimed as part of the minimum wage . . . ." 12 N.Y.C.R.R. § 146-2.1(a)(9). *See Inclan*, 95 F. Supp. 3d at 498. *See also Padilla*, 643 F. Supp. 2d at 10. Defendants fail to satisfy the recordkeeping requirement because they have failed to produce <u>any</u> pay stubs showing the tip credit allowance was claimed as part of the minimum wage. This is particularly evident for the period prior to January 1, 2020. *See* **Exhibit L** Example Pre-2020 Payroll Record. *Copantitla*, 788 F. Supp. 2d at 290.   Accordingly, Defendants have failed to meet the recordkeeping requirement for tip credit allowance under the NYLL.

### 3. Defendants Failed to Satisfy the Notice Requirement for Claiming Tip Credit Allowance under the FLSA

Under the FLSA, which significantly mirrors NYLL, an employer is allowed to pay tipped employees at an hourly rate below the minimum wage if the employee's wages and tips, added together, meet or exceed the minimum wage. *See* 29 U.S.C. § 203(m). To be eligible for the tip credit set forth in Section 203(m), however, the employer must satisfy two conditions: "(1) inform the employee of the tip credit provision of the FLSA, and (2) permit the employee to retain all of the tips the employee receives." *Copantitla v. Fiskardo Estiatorio, Inc*., 788 F. Supp. 2d 253, 287 (S.D.N.Y. 2011) (citing *Chung v. New Silver Palace Rest*., 246 F. Supp. 2d 220, 228-29 (S.D.N.Y. 2002)). Unless both requirements are satisfied, the tip credit is invalid and employers are liable for unpaid minimum wage under the FLSA. *See Heng Chan v. Sung Yue Tung Corp*., No. 03 Civ. 6048, 2007 U.S. Dist. LEXIS 7770, at *47 (S.D.N.Y. Feb. 1, 2007) (an employer "may not take a tip credit unless it complies strictly with both statutory requirements.").

8

The first requirement, which is also referred to as the notice requirement, "requires employers who wish to claim tip credits toward the wages of their tipped employees to 'inform[] its tipped employees in advance of the employer's use of the tip credit' by providing the employee with notice of the base cash wage and amount of tip credit increase, as well as notice 'that all tips received by the tipped employee must be retained by the employee . . . .'" *Reyes v. Sofia Fabulous Pizza Corp.*, No. 13 Civ. 7549, 2014 U.S. Dist. LEXIS 188734, at \*23 (S.D.N.Y. Apr. 7, 2014) (citing 29 C.F.R. § 531.59(b)). *See also Yu G. Ke*, 595 F. Supp. 2d at 254 ("the employer must first notify the employees of . . . the employer's intention to take the tip credit"). Additionally, "the employer must inform employees that the tip credit may not exceed 'the value of the tips actually received by an employee.'" *Id.* (citing 29 U.S.C. § 203(m)). "This notice provision is strictly construed and normally requires that an employer take affirmative steps to inform affected employees of the employer's intent to claim the tip credit." *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015) (collecting cases). *See* 29 C.F.R. § 531.59(b) ("tip credit shall not apply to any employee who has not been informed of these requirements")); *Copantitla*, 788 F. Supp. 2d at 287 (the "notice requirement is a firm one . . . [because] Congress expressly required notice as a condition of the tip credit[.]"). "Even if the employee receives tips at least equivalent to the minimum wage," the notice provision must be satisfied. *Cucu v. 861 Rest. Inc.*, No. 14 Civ. 1235, 2017 U.S. Dist. LEXIS 84196, at \*7 (S.D.N.Y. June 1, 2017) (citing *Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. Sept. 13, 2002)).

The employer "bear[s] the burden of showing that [it] satisfied the FLSA's notice requirement by, for example, providing employees with a copy of § 203(m) and informing them that their tips will be used as a credit against the minimum wage as permitted by law." *Inclan,* 95 F. Supp. 3d at 497 (citing *He v. Home on 8th Corp.*, No. 09 Civ. 5630, 2014 WL 3974670, at \*5

9

(S.D.N.Y. Aug. 13, 2014)). *See Copantitla*, 788 F. Supp. 2d at 288 (holding that defendants failed to satisfy the statutory tip credit notice requirement because "nowhere [did the defendants testify that the defendant corporation] told its employees that it intended to use tips to satisfy its minimum wage obligations."). "If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage . . . ." *Inclan,* 95 F. Supp. 3d at 497 (internal quotation omitted). Further, "where the nonmoving party will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by pointing to an absence of evidence to support an essential element of the nonmoving party's case." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).

As described above, Defendants are unable to satisfy this burden for Plaintiff GONZALEZ and other tipped class members, whose tip-credit amount is left blank on their notice. *See* **Exhibit H** Sample Notices to Tipped Employees Pre-2018; **Exhibit I**, Plaintiff's Notice and Other Sampled Tipped Employees Showing Blank Tip Notice.  Consequently, Defendants have failed to produce any evidence that they provided proper tip credit notice to Plaintiff. *See Copantitla*, 788 F. Supp. 2d at 289. Thus, pursuant to *Inclan,* Defendants have already failed to satisfy the burden required by the FLSA's notice requirement.

Based on the foregoing, Defendants have failed to satisfy the  FLSA requirements for claiming a tip credit. Therefore, Defendants claimed an invalid tip credit allowance and Plaintiff and Tipped Subclass Members are entitled to summary judgment with respect to their minimum wage and overtime claims under the FLSA. *See Reyes*, 2014 U.S. Dist. LEXIS 188734, at *28 (citing 29 C.F.R. § 531.59(b)) (holding that defendants' failure to provide notice that tipped employees are entitled to keep all tips "may be a small omission, it is not trivial" under the FLSA).

10

**4. Under Both the FLSA and NYLL Defendants Were Not Entitled to Claim a Tip Credit as Plaintiff and Tipped Subclass Members Did Not Receive All Tips**

As stated above, under the FLSA, for an employer to be eligible to pay tipped employees at an hourly rate below the minimum wage the employer must satisfy certain conditions, including the following two: "(1) inform the employee of the tip credit provision of the FLSA, and (2) permit the employee to retain all of the tips the employee receives." *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 287 (S.D.N.Y. 2011) (citing *Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220, 228-29 (S.D.N.Y. 2002)).

In addition to the above notice violations, Defendants' tip-credit is invalidated as Defendants failed to remit all earned tips to tipped employees.

Both the FLSA and NYLL agree that to be permitted to take a tip-credit, an employer must not retain any of the tips earned by its employees. *See Gomez v. MLB Enters., Corp.*, 2018 U.S. Dist. LEXIS 96145, *19 (S.D.N.Y. June 5, 2015) ("an employer loses its entitlement to the NYLL's tip credit if it improperly retains an employee's tips"); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 290 (S.D.N.Y. 2001) ("defendants' violation of N.Y. Lab. Law § 196-d itself constitutes an independent and sufficient reason to find that defendants are not entitled to a tip credit"); *Cabrera v. Canela*, 412 F. Supp. 3d 167, 182 (E.D.N.Y. 2019) ("a violation of N.Y. Lab. Law § 196-d, which prohibits an employer from retaining tips or gratuities received by employees, renders an employer ineligible to receive a tip credit under the NYLL"); *Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706, 711 (S.D.N.Y. 2007) ("this separate violation of § 196-d would render Jing Fong ineligible to receive a tip credit under New York law"); *Heng Chan v. Triple 8 Palace, Inc.*, 2006 U.S. Dist. LEXIS 15780, at *14 (S.D.N.Y. Mar. 30, 2006) ("[E]mployers are not merely barred from taking the tip credit if they share in the tip pool, but they are barred from taking the tip credit if any person who does not 'customarily and regularly receive

11

tips' shares in the tip pool."); *Shahriar v. Smith & Wollensky Rest. Group. Inc.*, 659 F.3d 234, 240 (2d Cir. 2011) ("an employer loses its entitlement to the tip credit where it requires tipped employees to share tips with (1) employees who do not provide direct customer service or (2) managers").

Here, Defendants' failure to produce <u>any</u> daily tip logs or <u>any</u> contravening evidence of the retention of tips.  This failure stands in the face of (i) a prior finding by the New York State Department of Labor that Defendants failed distribute all tips to employees, and (ii) the affidavits of 10 former tipped employees stating that they failed to receive all tips.

Defendants' failure to maintain daily tip logs is significant in any case as the failure to maintain proper records triggers a burden-shifting from the employee to the employer.  When an employer fails to maintain adequate records, "[c]ourts use the same burden-shifting framework to determine liability for unpaid [wages] under the NYLL and the FLSA." *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017) (brackets omitted), *aff'd*, *Gamero v. Koodo Sushi Corp.*, 752 F. App'x 33 (2d Cir. 2018).  "But under the NYLL, an employer who fails to keep accurate records shoulders a more stringent burden of proof." *Id.* "NYLL § 196-a provides that where an employer fails to 'keep adequate records or provide statements of wages to employees as required' by the statute, the employer 'shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Id.*

In this case, the failure is particularly significant as the NYS Department of Labor previously found that Defendants included non-tipped personnel in the tip-pool. *See* **Exhibit N**, Notice for the New York State Department of Labor.  Moreover, Defendant COUCKE, who worked as a manager for Le District's restaurants Beaubourg then later L'Appart acknowledged

12

they instituted similar tip-pools in both of Le District's restaurants. *See* **Exhibit D**, Coucke Dep. at p. 38:14-21.

Violations of N.Y. Labor Law § 196-d have been found to render an employer ineligible to receive a tip credit under New York Law and as discussed above, remittance of all tips is a requirement under the FLSA. *See Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706, 711 (S.D.N.Y. 2007); *Copantitla v. Fiskardo Estiatorio, Inc*., 788 F. Supp. 2d 253, 287 (S.D.N.Y. 2011).

Moreover, in this matter, Defendants refused to provide or do not possess "tip-sheets" or a daily log of the tips collected by each employee.  The failure to maintain these records violates 12 N.Y.C.R.R. § 146-2.17, which states that "(a) Employers who operate a tip sharing or tip pooling system must establish, maintain, and preserve for at least six years records which include: (1) A daily log of the tips collected by each employee on each shift, whether in cash or by credit card…" 12 N.Y.C.R.R. § 146-2.17 also guarantees an employee's right to view and contest Defendants' tip calculations. *See* id. ("(b) Such records must be regularly made available for participants in the tip sharing or tip pooling systems to review.").

Here, more than a mere record keeping violation, Plaintiff and 10 putative class members have come forward and affirmed that Defendants improperly retained tips. *See* Plaintiff Decl. at ¶ 6; Decl. of Martin Perez at ¶ 5; Decl. of Amber Johnson at ¶ IX; Decl. of Mark Bermudez at ¶ 5; Decl. of Katherine Batista at ¶ VII; Decl. of Jesse Doherty at ¶ 3; Decl. of Clavijo Fajardo at ¶ 4; Decl. of Michele Burnett at ¶ 5; Decl. of Yan Carlos Batista at ¶ 5; Decl. of Nally Camillo Cruz at ¶ 3; Decl. of Diana Marie O'Kane at ¶ 4.  These employees worked across all Le District including: Beaubourg, L'Appart, Frites Bar, and Le Bar.

At least four of the above declarants were denied a review of the tip-sheets by Defendants. *See* Decl. of Clavijo Fajardo at ¶ 4 ("I know this was policy, however managers never allowed

13

anyone to look at the tip-sheets."); Decl. of Michele Burnett at ¶ 5 ("I clearly did not receive all my tips on multiple occasions, but it was impossible to dispute what we received because Defendants never let anyone review the tip sheets."); Decl. of Diana Marie O'Kane at ¶ 4 ("We were never permitted to [see] any tip records, and I don't think they kept any."); Decl. of Jesse Doherty at ¶ 5 ("Also, I can confirm that Defendants never shared tip sheets with the staff.").

Under both the FLSA and NYLL, an employer may not take a tip credit unless it complies strictly with all statutory requirements. *See Mendez v. Pizza on Stone, LLC*, 2012 U.S. Dist. LEXIS 108605, at *11 (S.D.N.Y. Aug. 1, 2012) (finding "strict prerequisites" for tip credits). Based on Defendants' lack of documents and testimony of its former employees, Defendants indisputably failed to maintain records (or failed to produce records during this litigation) and were not entitled to deduct a tip credit allowance with respect to the Tipped Class Members.

### 5. Defendants Were Not Entitled to Claim a Tip Credit as Plaintiff and Tipped Subclass Members Performed Excessive Non-Tipped Side Work

Under the FLSA and NYLL, when tipped employees are engaged in non-tipped side work for more than two (2) hours or twenty percent of their shift, whichever is less, the tip credit is invalidated. 12 N.Y.C.R.R. § 146-2.9; *Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345, 2013 U.S. Dist. LEXIS 135926, at *11 (S.D.N.Y. 2013).

Here, Defendants' deposition testimony, Plaintiff's declaration, and the declaration of 10 putative class members all agree that "side work" is conducted by front of house employees for at least 2.5 hours a day.

First, the deposition testimony of Defendants' former manager admits that front of house employees engage in extensive morning side-work:

> *Q: You mentioned before that the working hours of front of the house staff is typically between 3:00 p.m. on through midnight; is that right?*
> *A: As I recall, yes. Maybe later.*
> *Q: Okay. But typically your service starts at 6 o'clock; right?*

14

*A: Yes.*
*Q: Okay. And so from between 3 to 6 o'clock your front of the house staff are doing side work, I assume; right?*
*A: Not entirely, no.*
*Q: What are they doing for three hours?*
*A: So they come in. They start doing the side work. We take food break for 30 to 45 minutes where we all eat together. After, they go back for the side work, and we will have the staff meeting around 5:15, maximum. So, you know, it will happen that the side work is done prior. I mean after – before the staff meeting they will go and change, as we work in suits, and we are doing the staff meeting. Then we open the door.*

*See* **Exhibit D**, Coucke Dep. at p. 39:10-16.

Based on Defendant Coucke's deposition testimony, tipped employees arrive to Le District 3 hours before service starts and are engaged in continuous non-tipped work, with the exception of a short meal break. Crediting Mr. Coucke's testimony as true, Tipped Subclass Members were required to perform a substantial amount of non-tipped side work each opening. Tipped employees had to set up the dining room, including the tables, (**Ex. D** at p. 80:18-22), prepare table clothes, silverware, and dishes, and (**Ex. D** at p. 39:4-9), and attend a pre-opening meeting (**Ex. D** at p. 42:14-18).   This work according to Defendant Coucke occurred from 3:00 pm, when tipped employees arrived, to around 6:00 pm, the start of dinner service.  Accounting for a short meal break, the morning side-work alone testified to by Defendant Coucke accounts for over 2 hours of a tipped employee's day.

In addition to this work, Defendants' own employee guide demands that tipped employees engage in even greater side-work than testified to by Defendant Coucke. *See* **Exhibit O**, Closing and Opening Check Lists for Front of House Employees.  In addition to the opening side work described by Defendant Coucke, Defendants also mandated closing side-work, which necessitated additional non-tipped work time for each class member. *See* id.  Such work included the following: emptying out the garbage, bringing napkins down to storage, shining the windows and glass

surfaces, wiping down all workstations, placing and running pitches in dish washer, stocking the fridge, and cleaning the fridge. *See* id.

As this is Defendants' testimony regarding the side-work in this matter there can be no serious dispute as to its validity.

Defendants' production and testimony regarding the excessive side-work also aligns with Plaintiff's declaration and the declaration of 10 putative Tipped Subclass members. According to the eleven sworn statements of Defendants' former employees, tipped workers engaged in over 2 hours or 20% of their day on non-tipped work, which included all the above-described work, as well as, sweeping the floors, mopping, and even cleaning Le District's restrooms. *See* Plaintiff Decl. at ¶ 8; Decl. of Martin Perez at ¶ 6; Decl. of Amber Johnson at ¶ VIII; Decl. of Mark Bermudez at ¶ 6; Decl. of Katherine Batista at ¶ VI; Decl. of Jesse Doherty at ¶ 4; Decl. of Clavijo Fajardo at ¶ 5; Decl. of Michele Burnett at ¶ 6; Decl. of Yan Carlos Batista at ¶ 8; Decl. of Nally Camillo Cruz at ¶ 4; Decl. of Diana Marie O'Kane at ¶ 5. While all the declarants attest to spending over 2 hours or 20% of their day on this side-work, declarant Katherine Batista testifies that this side-work would "often go up to 6 hours [in a day]." Decl. of Katherine Batista at ¶ VI.

Such a policy invalidates the tip credit for Plaintiff GONZALEZ and Tipped Subclass Members, and they are entitled to summary judgment on their unpaid wages due to an invalid tip credit deduction.

### C.   PLAINTIFF AND CLASS MEMBERS ARE ENTITELD TO SUMMARY JUDGMENT ON THEIR UNPAID MEAL BREAK CLAIMS

The FLSA and the NYLL both require that an employer pay their employees for "all hours" worked. *See* 29 U.S.C. § 206; N.Y. Lab. L. § 652 ("Every employer shall pay to each of its employees for *each hour* worked"). In the instant case, Defendants failed to compensate Plaintiff GONZALEZ and Class Members for all hours worked due to their routine time-shaving practice.

Plaintiff GONZALEZ and Class Members suffered from Defendants' policy of failing to pay all wages, including overtime wages. Both the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") require an employer to compensate their employee for any hours worked in excess of forty (40) hours per week at an overtime rate that is not less than one and one-half times the regular rate at which the employee is employed. 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 146-1.4; *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446 (1948); *Reich v. So. New England Telecomm, Corp.*, 121 F.3d 58, 63 (2d Cir. 1997).

Here, Defendants failed to pay all wages due to an improper automatic meal-break, which was implemented across Le District's Departments and Employees. *See* **Exhibit P**.  As acknowledged, Defendants did not keep records regarding the length of the meal break, and even stated that when employees were instructed to clock-out for all breaks, employees' clock records revealed they were not taking any breaks. *See* **Exhibit D**, Coucke Dep. at p. 26-27:17-6 (**Q:** Okay. And it didn't occur to you to instruct your employees to clock in or out for meal breaks; right? **A:** I believe we tried to put it in place, but the employee was lacking when it comes to clock in and out, so we went back to automatic deduction, automatic break.).

Supporting the assertion that that Le District employees worked through lunch despite the automatic 30-minute meal-break deduction are the declarations of Plaintiff and 20 putative class members. *See* Decl. of Plaintiff ¶ 15; Decl. of Amber Johnson at ¶ X-XIII; Decl. of Melissa Lewis at ¶ 4-7; *see* Decl. Martin Perez at ¶ 3-4 (testifying that he was not paid for all hours worked generally); Decl. of Mark Bermudez at ¶ 8-10; Decl. of Malika Heron at ¶ 6-7; Decl. of Katherine Batista at ¶ IX-XI; Decl. of Jesse Doherty at ¶ 6-9; Decl. of Jaylien Lugo at ¶ 6, 8-10; Decl. of Maria Alvarado at ¶ 4-5; Decl. of Saxon Baird at ¶ 6-7; Decl. of Sabrina Rivera at ¶ 2; Decl. of Octavio David Clavijo Fajardo at ¶ 8-11; Decl. of Michele Burnett at ¶ 7-12; Decl. of Yan Carlos

17

Batista at ¶ 10; Decl. of Precious Lebanks at p. 1; Decl. of Nally Camillo Cruz at ¶ 6; Decl. of Marie O'Kane at ¶ 7; Decl. of Asia Hunter at ¶ 5-6; Decl. of Diary Mendez at ¶ 6.

Defendants provide no contravening testimony to dispute the assertions of Plaintiff GONZALEZ and the putative class. Further, any self-serving testimony produced now will fall far short of rebutting the strong showing made by 20 former employees' sworn statements.

Based on the foregoing, there is no genuine dispute of material fact that Plaintiff and Class Members were not paid for all hours, including overtime compensation for hours worked over forty (40) per workweek. Therefore, Plaintiff and Class Members are entitled to summary judgment with respect to their unpaid wages claims under NYLL and unpaid overtime under both the FLSA and NYLL.

## D.   PLAINTIFF AND CLASS MEMBERS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR WTPA CLAIMS

### 1.   Defendants Failed to Provide Proper Wage and Hour Notices under the WTPA

New York's Wage Theft Prevention Act ("WTPA") requires an employer to provide its employees with <u>written</u> notice in English and the employee's primary language at the time of hiring, and prior to any changes in the information on the notice, detailing, *inter alia*, the regular hourly pay rate; overtime hourly pay rate; the amount of tip credit claimed as part of the minimum wage; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business; the mailing address if different; and the telephone number of the employer. *See* N.Y. Lab. L. §§ 195-1,2; 12 N.Y.C.R.R. § 146-2.2. The employer must also obtain from the employee a signed and dated written acknowledgement of receipt of such notice, which the employer must keep for six years. *See* 12 N.Y.C.R.R. § 146-2.2. Under the NYLL, the "<u>employer</u> has the burden of proving compliance" with this requirement. *Id.* (emphasis added).

18

Defendants failed to provide Plaintiff GONZALEZ and Class Members with proper wage and hour notices as required under the WTPA. As described above, Plaintiff GONZALEZ and Tipped Subclass Members did not receive proper tip-credit notices and, therefore, did not receive proper wage notices. As stated above, Plaintiff, Defendant Coucke, and the following 10 declarants, all tipped employees who worked at multiple departments of Le District, attest to not being informed by Defendants of what a tip-credit was or that it would be taken: (i) Decl. of Martin Perez at ¶ 7, (ii) Decl. of Amber Johnson at ¶ IX, (iii) Decl. of Mark Bermudez at ¶ 7, (iv) Decl. of Katherine Batista at ¶ VIII, (v) Decl. of Jesse Doherty at ¶ 5, (vi) Decl. of Clavijo Fajardo at ¶ 7, (vii) Decl. of Burnett at ¶ 8, (viii) Decl. of Yan Carlos Batista at ¶ 6, (ix) Decl. of Nally Camillo Cruz at ¶ 5, (x) Decl. of Diana Marie O'Kane at ¶ 6. The failure to provide clear notice resulted in Tipped Subclass Members being unaware of the deductions being taken from the minimum wage.

Defendants failed to provide Plaintiff GONZALEZ or Tipped Subclass Members with legally sufficient wage and hour notices, which clearly resulted in employees working for less than the minimum wage without full understanding or knowledge. The harm from this failure is clear. Therefore, Plaintiff GONZALEZ and Class Members are entitled to summary judgment on their wage and hour notice claims under the WTPA.

### 2. Defendants Failed to Provide Proper Wage Statements under the WTPA

The WTPA requires employers to furnish each employee with wage statements, commonly known as paystubs, listing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; regular hourly pay rate; overtime hourly pay rate; hours worked; gross wages; amount of tip credit claimed as part of the minimum wage; and net wages. *See* N.Y. Lab. L. § 195-3; 12 N.Y.C.R.R. § 146-2.3.

Courts have found employers liable pursuant to N.Y. Lab. L. § 195-3 when wage statements fail to include the requisite information required by law, including where the employer

19

failed to itemize the tip-credit allowance for the period. *See e.g., Padilla*, 643 F. Supp. 2d 302; *see also Hristova v. 3321 Astoria Inc.*, No. 17 Civ. 1633, Dkt. No. 49 at *14 (E.D.N.Y. June 27, 2018) (finding defendants liable on summary judgment for failing to provide proper wage statements). In *Hristova*, wage statements listing only the tip credit minimum wage rate, and not the prevailing full minimum wage rate with a separate tip credit allowance, were found to violate the WTPA. *Id.*

The pay stubs that Defendants have provided are clearly deficient wage statements as they fail to provide: the employer's phone number, basis of payment, dates covered by the payment list, and for tipped employees, Defendants failed to separately itemize the tip-credit allowance.

Plaintiff and Class members did not receive proper wage and hour notices as required under New York Labor Law. Instead, Defendants provided paystubs which they knew to contain false hours.  NYLL § 195-3 requires employers to provide employees with wage statements with the following information: dates of work covered by that payment of wages, name of employee, name of employer, address and phone number of employer, rate of pay, whether paid by the hour, gross wages, deductions, allowances claimed as part of the minimum wage and net wages. Plaintiff's and Class Members' wage statements did not include Defendants' deductions, proper gross wages, or employees' actual hours of work as is required by NYLL.

That management understood they were forcing employees to work through lunch is made clear from the 20 declarations submitted in support of this motion.  The submitted supporting declarations identify the following mangers as having given the instruction to work through lunch: (i) Mark [LNU], (ii) Derek [LNU], (iii) Bryce [LNU], (iv) J.V. [LNU], (v) Khalid [LNU], (vi) Benatia [LNU], (vii) David [LNU], (viii) Alvin [LNU], (ix) Sarah [LNU], (x) Richard [LNU], (xi) Anthony [LNU], (xii) Gustav [LNU], (xiii) General Manager Jacob Dougherty, and (xiv) General Manager Sebastian Muller. *See* Decl. of Amber Johnson at ¶ X-XIII; Decl. of Melissa Lewis at ¶

20

4-7; Decl. Martin Perez at ¶ 3-4 (testifying that he was not paid for all hours worked generally); Decl. of Mark Bermudez at ¶ 8-10; Decl. of Malika Heron at ¶ 6-7; Decl. of Katherine Batista at ¶ IX-XI; Decl. of Jesse Doherty at ¶ 6-9; Decl. of Jaylien Lugo at ¶ 6, 8-10; Decl. of Maria Alvarado at ¶ 4-5; Decl. of Saxon Baird at ¶ 6-7; Decl. of Sabrina Rivera at ¶ 2; Decl. of Octavio David Clavijo Fajardo at ¶ 8-11; Decl. of Michele Burnett at ¶ 7-12; Decl. of Yan Carlos Batista at ¶ 10; Decl. of Precious Lebanks at p. 1; Decl. of Nally Camillo Cruz at ¶ 6; Decl. of Marie O'Kane at ¶ 7; Decl. of Asia Hunter at ¶ 5-6.

Even the testimony of David Coucke appears to acknowledge that when Defendants attempted to track meal-breaks, the clock records showed no clock-outs for lunch, so Defendants reverted to an automatic deduction. *See* **Exhibit D**, Coucke Dep. at p. 26-27:17-6.

Defendants' refusal to track real lunch breaks has resulted in a perversion of the law to each Class member's detriment. With the full knowledge that not all meal breaks were being taken, Defendants refused to track when an employee was or was not working, and then demand the employee prove their actual work hours. By refusing to provide accurate wage statements, Defendants have injured the putative class. First, Defendants' original underpayments would not have been possible, but for the false statements in their pay records. Second, the failure forces employees to track their own hours worked for compensation and contest Defendants' inaccurate documentary evidence, an inversion of the law requiring employers to track actual work time.

Based on the foregoing, Defendants have failed to provide legally sufficient wage statements, and Plaintiff GONZALEZ and Class Members are entitled to summary judgment on their wage statement claims under the WTPA.

21

### E.    PLAINTIFF AND CLASS MEMBERS ARE ENTITLED TO LIQUIDATED DAMAGES UNDER EITHER THE FLSA OR NYLL

"Under the FLSA, a district court is generally <u>required</u> to award a plaintiff liquidated damages equal in amount to actual damages." *Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 140 (2d Cir. 2008). *See Kim v. 511 E. 5th St., LLC*, No. 12 Civ. 8096, 2015 U.S. Dist. LEXIS 135337, at *28 (S.D.N.Y. Sep. 26, 2015) (citing 29 U.S.C. §§ 216(b), 260) ("liquidated damages in an amount equal to compensatory damages are <u>mandatory</u>, unless an employer demonstrates that it has acted in good faith and did not willfully violate the statute.") (emphasis added). District courts are afforded "discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Barfield*, 537 F.3d at 140 (citing 29 U.S.C. § 260); *see Yu G. Ke*, 595 F. Supp. 2d at 261. "<u>The employer bears the burden</u> of proving good faith and reasonableness by 'show[ing] that it took active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them.'" *Kim*, 2015 U.S. Dist. LEXIS 135337, at *28-29 (emphasis added). The employer's burden is "a difficult one," and "double damages are the norm and single damages the exception." *Barfield*, 537 F.3d at 150.

Like the FLSA, an employee is entitled to liquidated damages under the NYLL unless the <u>employer</u> proves "a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. L. §§ 198-1(a), 663(1). *See Kim*, 2015 U.S. Dist. LEXIS 135337, at *29. An amendment to the NYLL, effective November 24, 2009, "incorporated the federal standard" and shifted the burden of proving good faith to the employer. *Hengjin Sun v. China 1221, Inc.*, No. 12 Civ. 7135, 2016 U.S. Dist. LEXIS 52292, at *8 (S.D.N.Y. Apr. 19, 2016). Therefore, "[a]n affirmative showing of willfulness is no longer required under the [NYLL];

22

instead, liquidated damages are presumed unless defendants can show subjective good faith." *Zubair v. EnTech Eng'g P.C.*, 900 F. Supp. 2d 355, 360 n. 3 (S.D.N.Y. 2012) (emphasis added). *See Velez*, 2016 U.S. Dist. LEXIS 107230, at *51 ("The employer [ ] bears the burden of proving good faith and reasonableness.").

Defendants did not act in subjective good faith with objectively reasonable grounds for believing that they did not violate the FLSA and NYLL. Defendants have been previously fined for similar conduct alleged in this complaint by the New York State Department of Labor. Moreover, Defendants' refusal to keep and/or provide tip-sheets and daily tip-logs despite a previous finding that non-tipped employees took part in the tip-pool, occurring in 2018, demonstrates a disregard for the law and bad faith.

Moreover, management understood they were forcing employees to work through lunch without pay.  This is made clear from the 20 declarations submitted in support of this motion.  The submitted supporting declarations identify the following mangers as having given the instruction to work through lunch: (i) Mark [LNU], (ii) Derek [LNU], (iii) Bryce [LNU], (iv) J.V. [LNU], (v) Khalid [LNU], (vi) Benatia [LNU], (vii) David [LNU], (viii) Alvin [LNU], (ix) Sarah [LNU], (x) Richard [LNU], (xi) Anthony [LNU], (xii) Gustav [LNU], (xiii) General Manager Jacob Dougherty, and (xiv) General Manager Sebastian Muller. *See* Decl. of Amber Johnson at ¶ X-XIII; Decl. of Melissa Lewis at ¶ 4-7; Decl. Martin Perez at ¶ 3-4 (testifying that he was not paid for all hours worked generally); Decl. of Mark Bermudez at ¶ 8-10; Decl. of Malika Heron at ¶ 6-7; Decl. of Katherine Batista at ¶ IX-XI; Decl. of Jesse Doherty at ¶ 6-9; Decl. of Jaylien Lugo at ¶ 6, 8-10; Decl. of Maria Alvarado at ¶ 4-5; Decl. of Saxon Baird at ¶ 6-7; Decl. of Sabrina Rivera at ¶ 2; Decl. of Octavio David Clavijo Fajardo at ¶ 8-11; Decl. of Michele Burnett at ¶ 7-12; Decl. of

23

Yan Carlos Batista at ¶ 10; Decl. of Precious Lebanks at p. 1; Decl. of Nally Camillo Cruz at ¶ 6; Decl. of Marie O'Kane at ¶ 7; Decl. of Asia Hunter at ¶ 5-6.

Given the extent of Defendants' illegal policies and Defendants' refusal to correct such policies even after fine by the New York State Department of Labor makes it abundantly clear that Defendants have failed, and continue to fail, to show a good faith basis for believing that their underpayment of wages was in compliance with the law.  Therefore, Plaintiff GONZALEZ and Class Members are entitled to liquidated damages under the FLSA and NYLL.

**F.    DEFENDANTS ARE SUBJECT TO A THREE-YEAR STATUTE OF LIMITATIONS UNDER THE FLSA**

As a general matter, the FLSA provides for a two-year statute of limitations on actions to enforce its provisions. *See* 29 U.S.C. § 255(a). However, when the "cause of action aris[es] out of a willful violations," the limitations period is extended to three years. *Id; see also Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999); *Moon v. Kwon*, 248 F.Supp.2d 201, 231 (S.D.N.Y. Sept. 9, 2002). In order to determine that a defendant's violations of the FLSA were willful, the court must find that a defendant either knew or showed reckless disregard for whether the conduct was unlawful under the FLSA. *Id.*

Defendants' violation of the FLSA was willful. As mentioned above, this is not Defendants' first offense.  This is not Defendants' first-time addressing claims asserting similar common violations.  Considering the extent of Defendants' illegal policies and Defendants' refusal to correct such policies even after a prior fine, it is abundantly clear that Defendants have violated the FLSA willfully. Furthermore, despite having been involved in another wage-and-hour grievance asserting similar violations, Defendants' records are still not in proper wage and hour compliance and Defendants' managers, who employees turn to when they have questions about their pay, were unaware of the law, and forced employees to work off the clock.

24

In light of the foregoing evidence, Plaintiff GONZALEZ and Class Members are entitled to recover for a three-year statutory period under the FLSA because defendants acted willfully.

### G. DEFENDANTS ARE JOINTLY AND SEVERALLY LIABLE AS EMPLOYERS UNDER THE FLSA AND NYLL

#### 1. Individual Defendants PAUL LAMAS and PETER POULAKAKOS are Employers under the FLSA

To be held liable under the FLSA, a person must be an "employer," which the FLSA defines as including "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d) (2012). In deciding whether an individual is an employer, "the overarching concern is whether the alleged employer possessed the power to control the workers in question . . . ." *Herman*, 172 F.3d at 139. To determine whether an individual defendant is also an employer under the FLSA, the "economic reality" test inquiries into four factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984). The factors are not exclusive and the district court is "free to consider any other factors it deems relevant to its assessment of the economic realities." *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71-72 (2d Cir. 2003). Extensive personal involvement in the management of the employees or in the violations of labor laws is not required, nor is continuous exercise of authority. *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013).

As to the first *Carter* factor, Defendants LAMAS and POULAKAKOS have the authority to hire or fire employee all top level employees of Le District, who in turn hire and fire lower level employees. *See* **Exhibit A**, LAMAS Dep. at p. 8:3-11 (**A:** The only staff I'd be involved in hiring and firing is the director of operations. **Q:** That's my good friend Sebastien Muller, right? **A:** I'm

25

sorry? **Q:** That's my good friend Sebastien Muller, right? **A:** That is. He is the director of operations, yes.).

As to the second *Carter* factor, Defendants LAMAS and POULAKAKOS have the authority to determine the work schedules, created the employee handbook, which set employee policies to be implemented, set vacation days, and directs operations through Le District's director of operations. *See* **Exhibit A**, LAMAS Dep. at p. 19:18-21 (**Q:** I assume the set vacation policy was set by you and Peter, right? **A:** Probably me, Peter and Sebastien in discussion, yes. **Q:** Okay, and so the policies that are in the employee manual, I assume those are dictated by yourself and Peter? **A:** Well, I mean we have an HR department that really is responsible for drafting that. **Q:** Okay, but you and Peter will provide the ultimate approval for whatever policies are implemented in the employee manual, right? **A:** I guess technically that's correct.); id. at 16:8-12 (**Q:** Okay, but both yourself and Peter, you guys can direct Sebastien in terms of certain policies you would want to implement, would that be accurate? **A:** Yes.); *See* **Exhibit B**, Muller Dep. at p. 22-23:22-9 (**Q:** Do you talk about the business operations with [Defendant Lamas]? **A:** Yes. **Q:** Do you report about how the business is operating? **A:** Yes. **Q:** Okay, and will he give you suggestions or give you directions about what to do? **A:** Yes.).

As to the third *Carter* factor, Defendants LAMAS and POULAKAKOS set payroll policy of employees at Le District. *See* **Exhibit B**, Muller Dep. at p. 9:17-25 (**Q:** Do you have responsibilities regarding implementing the payroll policies at Le District? **A:** The policies has been established at the opening of the place by the ownership, but after that, on site on the daily basis we have a human resources manager who is in charge of all those paperwork, all like meetings we ever need to meet the associates.); id. at p. 24:17-24 (**Q:** So they determine your pay,

26

right? **A:** Yes. **Q:** If they wanted to give you more vacation days, they could do that, right? **A:** Yes. **Q:** Okay, and if they wanted to fire you, they could do that, right? **A:** Yes.).

As to the final *Carter* factor, Defendants LAMAS and POULAKAKOS have access to and maintains employee records of Le District. *See* **Exhibit B**, Muller Dep. at p. 24-25:25-12 (**Q:** Okay, and Peter and Paul, they can also have access to the employee records if they wanted to review them, right? **A:** I don't know. **Q:** You don't know if they have access to employee records? **A:** I don't know. **Q:** Well, they have access to your records, right? **A:** Yes.).

Based on deposition testimony, Defendants LAMAS and POULAKAKOS are employers under the definition of the FLSA. As such, the *Carter* factors are present, and Defendants LAMAS and POULAKAKOS must be held liable as an employer under the FLSA. *See Carter*, 735 F.2d at 12.

### 2. Defendants Are Employers under the NYLL

The definition of "employer" under the NYLL is similar to the definition under the FLSA. *See, e.g.*, *Sethi v. Narod*, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013) ("District courts in this Circuit have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA."); *Glatt v. Fox Searchlight Pictures, Inc.*, 293 F.R.D. 516, 526 (S.D.N.Y. 2013) ("The NYLL's definitions are nearly identical to the FLSA's."). As such, Corporate Defendants are employers under the NYLL.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff GONZALEZ respectfully request that Plaintiff GONZALEZ's motion for partial summary judgment be granted in its entirety. In the event the Court grants Plaintiff GONZALEZ's motion for summary judgment, Plaintiff GONZALEZ would seek leave for supplemental briefing on the amount of damages owed to Plaintiff GONZALEZ and the Class, of which there would not be any disputes to material facts.

27

Dated: New York, New York                Respectfully submitted,

      July 28, 2023                           LEE LITIGATION GROUP, PLLC

                                    By: _____*/s/ C.K. Lee*_____
                                      C.K. Lee, Esq. (CL 4086)
                                      Lee Litigation Group, PLLC
                                      148 West 24th Street, Eighth Floor
                                      New York, NY 10012
                                      Tel: (212) 465-1188
                                      Fax: (212) 465-1181

                                    *Attorneys for Plaintiff, FLSA Collective*
                                    *Plaintiffs and the Class*