UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

DENNY GONZALEZ, on behalf of himself, and all          CASE NO.: 21-CV-01347 (ER)
FLSA Collective Plaintiffs and the Class,

          **Plaintiff,**

-against-

HANOVER VENTURES MARKETPLACE LLC,
d/b/a LE DISTRICT, JOHN DOE COMPANY 1,
d/b/a HPH HOSPITALITY, PAUL LAMAS,
PETER A POULAKAKOS, NICOLAS ABELLO,
and DAVID COUCKE,

          **Defendants**

-------------------------------------------------------------X

―――――――――――――――

## DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION FOR
## PARTIAL SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56

―――――――――――――――

**THE LAW OFFICES OF WAYNE KREGER**
Wayne S. Kreger, Esq.
Law Offices of Wayne Kreger
SDNY Bar No.: WK2868
305 Broadway, Suite 700
New York, New York 1007
Phone: (212) 500-3270
Fax:    (212) 500-3271
E-Mail: wayne@kregerlaw.com

# TABLE OF CONTENTS

TABLE OF CONTENTS………..…………………………………………………………………i

TABLE OF AUTHORITIES………………………………………………………………....…ii

PRELIMINARY STATEMENT……………………………………………………………….1

STATEMENT OF FACTS……………………………………………………………………..1

ARGUMENT…………………………………………………………………………………...1

     I. THE APPLICABLE STANDARDS…………………………………………………...1

     II. THE EVIDENCE FAILS TO ESTABLISH THAT PLAINTIFFS AND THE ALLEGED TIPPED SUBCLASS MEMBERS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR UNPAID MINIMUM WAGE CLAIMS BECAUSE DEFENDANTS PROPERLY FILLED OUT THE DEPARTMENT OF LABOR'S WAGE NOTICES THAT WERE IN EFFECT AT THE TIME………………………….2

     III. THE EVIDENCE IN THE RECORD FAILS TO ESTABLISH THAT PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR WTPA WAGE AND HOUR NOTICE AND WAGE STATEMENT CLAIMS. ………………….…………4

     IV. THE EVIDENCE IN THE RECORD FAILS TO ESTABLISH THAT PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR IMPROPER MEAL CREDIT DEDUCTIONS CLAIM…………………………………………………..6

     V. THE EVIDENCE IN THE RECORD FAILS TO ESTABLISH THAT PLAINTIFFS ARE ENTITLED TO LIQUIDATED DAMAGES UNDER EITHER THE FLSA OR NYLL...................................................................................................................9

     VI. THE EVIDENCE IN THE RECORD FAILS TO ESTABLISH THAT DEFENDANTS ARE SUBJECT TO A THREE-YEAR STATUTE OF LIMITATIONS UNDER THE FLSA…………………………………………………..………11

CONCLUSION………………………………………………………………………..12

## TABLE OF AUTHORITIES

Cases                                                                                           Pages

*Allen v. Coughlin*, 64 F.3d 77 (2d Cir. 1995)………………………………………………2

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)……………………………………..2

*Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008)………………………..9
*Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372 (E.D.N.Y. 2012)…...………11

*Draskovic v. Oneota Associates, LLC*, 2019 WL 783033 (E.D.N.Y. Feb. 21, 2019)…………....11

*Fay v. Oxford Health Plan*, 287 F.3d 96 (2d Cir. 2002)…………………………………………..1

*Guan Ming Lin v. Benihana Nat. Corp.*, 275 F.R.D. 165 (S.D.N.Y. 2011)…………...………9,11

*Hart v. Rick's Cabaret Intern., Inc.*, 967 F.Supp.2d 901 (S.D.N.Y. 2013)………………...…11

*Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132 (2d Cir. 1999)………………………………….9

*Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490 (S.D.N.Y. 2015)…………………………...10

*Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005)…………………………...………..2

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011)……………………………………11

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)…………………………………….…..11

*Marvel Characters, Inc. v. Simon*, 310 F.3d 280 (2d Cir. 2002)…………………………..……..2

*Matsushita Ele. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)…………………....2


Statutes, Rules and Regulations                                                                 Pages

29 U.S.C. § 203(m)…………………………………………………………………………..6
29 U.S.C. § 255(a)…………………………………………………………………………11
N.Y. Lab. Law § 195……………………………………………………………………….5
N.Y. Lab. Law § 198(1-a)…….…………………………………………………………10
N.Y. Lab. Law § 663(1)……………………………………………………………………10
Fed. R. Civ. P. 56(a)…………………………………………………...……………………1
Fed. R. Civ. P. 56(c)(1)……………………………………………………………………2
12 N.Y.C.R.R. § 146-1.9……………………………………………………………….…6
12 N.Y.C.R.R. § 146-3.7……………………………………………………………..……6

## PRELIMINARY STATEMENT

Defendants HANOVER VENTURES MARKETPLACE LLC, d/b/a LE DISTRICT, JOHN DOE COMPANY 1, d/b/a HPH HOSPITALITY, PAUL LAMAS, PETER A POULAKAKOS, NICOLAS ABELLO and DAVID COUCKE ("Defendants") by and through their attorneys of record, THE LAW OFFICES OF WAYNE KREGER, respectfully submit this Memorandum of Law in Opposition to Plaintiff DENNY GONZALEZ'S and Opt-in Plaintiffs' ("Plaintiffs") Motion for Partial Summary Judgment. Because Plaintiffs have failed to make a showing sufficient to establish the existence of several elements essential to their case, and on which Plaintiffs bear the burden of proof at trial, the Court should deny Plaintiffs' Motion for Partial Summary Judgment in its entirety.

## STATEMENT OF FACTS

For the statement of facts, the Court is respectfully referred to Defendants' Responses to Plaintiffs' Local Rule 56.1 Statement of Material Facts, filed contemporaneously with this Memorandum of Law. See generally, Defendants' Responses to Plaintiffs' Local Rule 56.1 Statement of Material Facts.

## ARGUMENT

### I. THE APPLICABLE STANDARDS.

There are no issues in this case requiring this Court to apply any obscure principles of summary judgment. Summary judgment is appropriate only when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002). In other words, the viability of Plaintiffs' case depends upon their ability to demonstrate that there is no genuine issue of material facts supporting their claims that they can satisfy all elements of their each and every claim against Defendants. Fed. R. Civ. P. 56(a).

1

"A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents . . . affidavits or declarations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Ele. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Yet in considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995).

The court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

### II. THE EVIDENCE FAILS TO ESTABLISH THAT PLAINTIFFS AND THE ALLEGED TIPPED SUBCLASS MEMBERS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR UNPAID MINIMUM WAGE CLAIMS BECAUSE DEFENDANTS PROPERLY FILLED OUT THE DEPARTMENT OF LABOR'S WAGE NOTICES THAT WERE IN EFFECT AT THE TIME.

The Motion for Partial Summary Judgment is constructed like a dangerously unstable Jenga game in which a series of blocks are placed on top of each other, with the top blocks

2

relying on the integrity of the blocks at the bottom, lest the whole tower come crumbling down once the crucial bottom rung is destroyed. Here the critical disputed material facts at the base of the Motion, on which all of the other factual suppositions are based, are presented to the Court erroneously and wildly out of context, with no authority to support their conclusory allegations, meaning that the entire Motion cannot be supported and must be denied because there are disputed material facts, to wit:

Plaintiff and the Alleged Tipped Subclass argue that Defendants failed to pay them the appropriate minimum wage, but tellingly Plaintiffs do not actually assert that they failed to receive those minimum wages to which they were entitled, so instead they make the tortured argument that Defendants supposedly did not provide them with a proper wage notice, which then leads them to maintain that they were not given the proper tip-credit notice, which then results in the tortured conclusion that Defendants failed to pay Plaintiffs and the Alleged Tipped Subclass the proper minimum wage. [Memorandum of Law in Support of Plaintiff's Partial Motion for Summary Judgment [Dkt 124, Pages 8-9 "Memorandum of Law"]]. Since the wage notice allegations at the bottom of this chain of assumptions is false and in dispute, the entire claim of improper minimum wage fails, especially since Plaintiffs and the Alleged Tipped Subclass do not assert that they were not actually paid the minimum wage.

As is plainly evident from Plaintiffs' own Exhibits "H" and "I" [Exhibits in Support of Plaintiff's Partial Motion for Summary Judgment [Dkts 126-8 and 126-9 "Exhibits"]], the New York Department of Labor ("DOL") has used different wage notice forms over the years, and the contents of those notices have also evolved with changes in the law. Exhibit H contains the wage notices used by the DOL since March of 2011, which is clearly indicated in the footer on the bottom left of each form that says "LS 54 (3/11)". This form does not contain a box in which the tip credit information can be entered, although simply looking at the notices included in Exhibit

"H" shows that Defendants entered each employee's rate of pay "+tips." Since this is the actual form created by the DOL itself, Plaintiffs can't argue that Defendants should have done something different with only the benefit of hindsight as a guiding principle; Defendants were clearly in compliance by using Exhibit "H" at the time it was in force, and Plaintiffs have not included any authority to the contrary since there is no such source.

In 2017 the DOL introduced "LS 48 (1/17)" which Plaintiffs have been good enough to attach at Exhibit "I". On this form, where again the version can be found in the footer on the lower left of the page, there is a pre-printed notation which states as follows:

> If you do not receive enough tips over the course of a week to bring you up to the minimum hourly rates for the first 40 hours and 1 ½ times that amount per hour for hours over 40, you will be paid additional wages that week to make up the difference. See page 2 for the minimum hourly wage amounts.

Contrary to the statements on Pages 8-9 of the Memorandum of Law, Plaintiff did in fact receive this notice and the statement above as evidenced in Exhibit "I", and the Alleged Tipped Subclass received the exact notice proscribed the DOL prior to the new form's introduction in 2017. At the very least, whether Defendants complied with the NYLL through the use of the DOL's official forms is a question of fact for the jury which cannot be decided on summary judgment. All of the facts leading to the conclusory allegation that Plaintiffs were not paid the appropriate minimum wage are seriously in dispute and must be resolved by a trier of fact.

**III. THE EVIDENCE IN THE RECORD FAILS TO ESTABLISH THAT PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR WTPA WAGE AND HOUR NOTICE AND WAGE STATEMENT CLAIMS.**

The Wage Theft Prevention Act ("WTPA") became law on April 9, 2011 and addresses issues such as record keeping; increases penalties for wage theft and record keeping violations, instituting criminal penalties including imprisonment for failure to pay minimum wage; increases the amount of wages to 100% that can be recovered as damages over and above the lost wages themselves; increases protection for employees who have been retaliated against when they ask

for past due wages; and provides the Department of Labor with new powers for investigation and prosecution of wage theft. Wage theft includes underpayment as well as nonpayment of wages. Wage theft includes failure to pay minimum wage, failure to pay overtime, requiring off-the-clock work, stealing of tips and misclassification of workers. In the original wage notice produced by the DOL and attached as Exhibit "H", employers had to provide all employees with the following information: rate of pay, the regular payday, overtime rate of pay if applicable, basis of wage payment (hourly, weekly, shift, etc), intent to claim (tip and/or meal) allowances, the employer's main address and phone number and the employer's name including any doing business as titles. The notice had to be furnished in English or in the primary language that an employee designated, and all new workers must be provided with this information upon hiring. The employer had to keep a signed and dated acknowledgement confirming receipt for six years. NY Labor Law, Article 6, Section 195.

Plaintiffs have failed to demonstrate that any of the wage notices they received from Defendants violated any of these provisions, and they have admitted that the 2017 notices attached as Exhibit "I" contained the very tip credit notice on which they based their entire claim for failure to pay minimum wages. Most importantly, Plaintiffs' contention that the information contained in Plaintiffs' wage statements is inaccurate in and of itself creates issues of material facts as to the adequacy and accuracy of the wage statements, and the contents thereof, produced in this matter. If it is Plaintiffs' position that the produced wage statements are inaccurate, then it is a factual dispute, and such dispute must be resolved by a jury. As such, Plaintiffs are not entitled to summary judgment since the wage notices are at the heart of all of their claims.

Accordingly, the Court should deny the Plaintiffs' Motion for Partial Summary Judgment.

**IV. THE EVIDENCE IN THE RECORD FAILS TO ESTABLISH THAT PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR IMPROPER MEAL CREDIT DEDUCTIONS CLAIM.**

Under the FLSA, an employee's wage "includes the reasonable cost . . . to the employer of furnishing such employee with board . . . if such board . . . [is] customarily furnished by such employer to his employees. 29 U.S.C. § 203(m). In New York, meals provided by an employer to an employee may be considered part of the wages paid to the employee but shall be valued at no more than the per meal amount listed in the statute. 12 N.Y.C.R.R. § 146-1.9. Specifically, large employers of 11 or more employees may take per meal credit up to $2.85 on and after December 31, 2016, $3.25 on and after December 31, 2017, and $3.60 on and after December 31, 2018. *Id*. To qualify as a meal, the employer must provide adequate portions of a variety of wholesome, nutritious foods and shall include at least one of the types of food from all four of the following groups: (1) fruits or vegetables; (2) grains or potatoes; (3) eggs, meat, fish, poultry, dairy, or legumes; and (4) tea, coffee, milk or juice. 12 N.Y.C.R.R. § 146-3.7; see also, *Guan Ming Lin v. Benihana Nat. Corp.*, 275 F.R.D. 165, 171 (S.D.N.Y. 2011).

Here, Plaintiffs conveniently omitted the uncontroverted deposition testimony of Defendants' General Manager Sebastien Muller in which it is clear that not only were meal breaks provided but that Defendants were quite aware of the rules and implemented them fairly and properly (notwithstanding Plaintiffs' counsel C.K. Lee's unvarnished attempts to get Mr. Muller to say otherwise:

> Page 57
> MR. C.K. LEE: Q. All right. Let's move on. For meal breaks, do employees eat meals at Le District?
> A. Yes.
> Q. How long is the meal break?
> MR. KREGER: Object to form.
> A. At least 30 minutes.
> Q. Okay, and I believe it's automatically deducted from employees' working hours, right?

6

A. I don't know.
Q. Okay.
MR. C.K. LEE: Go to page 14, section 2.19.
Q. You'll see here the meal period is

Page 58
30 minutes. Do you see that?
A. Yes.
Q. Okay. Do employees at Le District clock out for their meal break?
A. I don't know.
MR. C.K. LEE: Simon, can you go to Bates stamp 373 in this document.
Q. Do you know what this document is, sir?
A. Yes.
MR. C.K. LEE: I'm showing the witness what's Bates stamped 373 off of Exhibit 12.
Q. Is this a punch in/punch out record for employees?
A. The document you're showing me is a time sheet report. When you clock --
Q. Yes.
A. -- in, clock out.
Q. Yes. It's a time sheet, right? Are the same form of time sheets used for all employees at Le District?
A. Yes.
Q. The information that's kept in the

Page 59
time sheets are the same for all employees, right?
A. Yes.
Q. Okay, so, for example, they have a clock in, right?
A. Yes.
Q. On this page the clock in time was 3 o'clock. Do you see that?
A. Yes.
Q. Okay, and the clock out time was, I guess 12 a.m.?
A. Yes.
Q. Okay, and then you see the column that says Deducted Time? Do you see that?
A. Yes.

7

Q. For every day that the person is working, they automatically deduct half an hour, right?

MR. KREGER: Object to form. That's not what it says.

MR. C.K. LEE: Hey, Wayne, now you're testifying for the witness. That's completely inappropriate, and I'm going to ask for sanctions against you.

Page 60

MR. KREGER: Go ahead.

Q. So, Sebastien, do you see the column Deducted Time?

A. Yes.

Q. It says minus 0.50?

A. Yes.

Q. Okay. Does that mean minus 30 minutes?

A. Yes.

Q. Okay, and so for every day that this person was working, they are deducting 30 minutes of pay, right?

MR. KREGER: Object to form.

A. From what I see on the document and you're showing me, yes. And if I can add something, it's because by law, we need to provide 30 minutes break if you're scheduled to work more than six hours on the same day.

Q. Sure. So you've got to automatically deduct 30 minutes from everybody's punch in and punch out records to allot for their meal time, right?

MR. KREGER: Object to form.

A. No. What we see on this document is

Page 61

like the time of 0.5, as you say, but that's reflecting the 30 minutes break that they take when they are scheduled more than six hours on the same day for meal.

Q. I understand, yes. I think we're saying the same thing. They are entitled to a meal break, right, of 30 minutes, right? So the company deducts 30 minutes from their time because they are taking a meal during that time, right?

A. This is not --

8

MR. KREGER: Object to form.
A. This is not automatic. It's like if I take those breaks, there will be deduction time. If I don't take the break, but usually -- it's not even usually. If you're scheduled for more than six hours, you must take your break. It's mandatory. So we make sure that the staff member take the break of 30 minute if they're scheduled more than six hours on the same day.

Notwithstanding Plaintiffs' contentions, based on their rather fantastical self-serving declarations, Plaintiffs were allowed to, and did in fact, take all of their meal breaks. Therefore the evidence in the record provides sufficient grounds for raising a factual question as to whether the meal credit deducted from Plaintiffs' wages was reasonable under the FLSA and whether the meal breaks actually provided to Plaintiffs renders the contention moot under the NYLL. As such, the existence of issues of material fact in this record precludes summary judgment on Plaintiffs' improper meal credit claim.

Accordingly, the Court should deny the branch of Plaintiffs' motion seeking summary judgment on their improper meal credit claim.

**V. THE EVIDENCE IN THE RECORD FAILS TO ESTABLISH THAT PLAINTIFFS ARE ENTITLED TO LIQUIDATED DAMAGES UNDER EITHER THE FLSA OR NYLL.**

Under the FLSA, a District Court is generally permitted to award a plaintiff "liquidated damages equal in amount to actual damages" for violations of the FLSA's minimum wage and overtime provisions unless the employer shows that, despite its failure to pay appropriate wages, it acted in subjective good faith with objectively reasonable grounds for believing that its act or omission did not violate the FLSA. *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008). To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them. *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999). Similar to the FLSA, the NYLL provides for liquidated damages

9

under some circumstances unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law. See N.Y. Lab. Law §§ 198(1-a), 663(1). Although this text "is not identical to that of the FLSA . . ., courts have not substantively distinguished the federal standard from the current state standard of good faith." *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015). For the reasons set forth above and below, liquidated damages should not even be a consideration in this case and certainly cannot be adjudicated in this Motion.

Here, Plaintiffs have failed to prove specific violation of the FLSA and NYLL provisions in requesting liquidated damages; rather, Plaintiffs incautiously argue that they are entitled to liquidated damages under the FLSA and NYLL. Since Plaintiffs' basic claims in this Motion are for the failure to pay minimum wage based on the so-called failure to inform Plaintiffs of the tip-credit deduction, based on alleged improper wage notices, Defendants have raised several genuine questions of fact as to said claims as explained above.

As Plaintiffs have failed to establish that they are entitled to summary judgment on said claims, Plaintiffs cannot, and should not, be entitled to any liquidated damages related to said claims. Additionally, Plaintiffs have failed to establish that Defendants did not act in subjective good faith with objectively reasonable grounds for believing that the wage notices provided to them by the New York Department of Labor did not violate the FLSA and NYLL. If employers in New York cannot rely on their own Department of Labor, who can they have confidence in? Plaintiffs have advanced no arguments in contravention of the principle that their use of the forms provided by the DOL satisfied their obligations under the FLSA and NYLL.

Likewise, the alleged meal break violations do not create any liquidated damages liability since Defendants' General Manager Sebastien Muller was obviously quite aware of the rules and implemented them fairly and properly despite Plaintiffs' counsel's efforts to elicit different

testimony from Mr. Muller by repeatedly asking him the same questions; Mr. Lee was obviously not happy with the answer he was getting.

Accordingly, the Court should deny the branch of Plaintiffs' motion seeking summary judgment on their liquidated damages claim.

### VI. THE EVIDENCE IN THE RECORD FAILS TO ESTABLISH THAT DEFENDANTS ARE SUBJECT TO A THREE-YEAR STATUTE OF LIMITATIONS UNDER THE FLSA.

A plaintiff's "recovery under the FLSA is limited to his underpayment, if any, during the two years preceding the filing of the complaint, unless the plaintiff[ ] can show that the defendant[ ]'[s] violation was willful, extending recovery to a three-year period. *Draskovic v. Oneota Associates*, LLC, 2019 WL 783033, at *12 (E.D.N.Y. Feb. 21, 2019); see also, *RSR Sec. Services*, 172 F.3d at 141 (quoting 29 U.S.C. § 255(a)) ("[t]he FLSA generally provides for a two-year statute of limitations . . . but allows a three-year limitations period for 'a cause of action arising out of a willful violation.'"). "The accepted standard for determining willful behavior, for which plaintiff bears the burden of proof, [is] … 'that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *RSR Sec. Services*, 172 F.3d at 141 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 [1988]). "Although willfulness can sometimes be determined at the summary judgment stage, the standard for proving willfulness is high." *Hart v. Rick's Cabaret Intern., Inc.*, 967 F.Supp.2d 901, 937 (S.D.N.Y. 2013). Plaintiff must prove more than that the defendant violated the law and knew or should have known it was violating the law. See *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011). As such, "[c]ourts within this Circuit have [often] left the question of willfulness to the trier of fact." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 391 (E.D.N.Y. 2012). Here, as discussed above, Plaintiffs have failed to establish willfulness in Defendants' alleged violation of labor law, if any. Defendants genuinely believed

11

that they were in compliance with the FLSA and NYLL. Indeed, Plaintiffs have failed to establish any violation of the FLSA and NYLL as a matter of law viewing the facts in the light most favorable to Defendants. Therefore, Plaintiffs have failed to prove Defendants' willfulness. At a minimum, it is a question of fact that must be resolved by a jury. Accordingly, Plaintiffs are not entitled to recover for a three-year statutory period under the FLSA.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court deny Plaintiffs' Motion for Partial Summary Judgment in its entirety.

Dated: October 13, 2023                    **THE LAW OFFICES OF WAYNE KREGER**

By:_/S/__*Wayne S. Kreger*_____
Wayne S. Kreger, Esq.
Law Offices of Wayne Kreger
SDNY Bar No.: WK2868
305 Broadway, Suite 700
New York, New York 1007
Phone: (212) 500-3270
Fax:    (212) 500-3271
E-Mail: wayne@kregerlaw.com

12