UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DENNY GONZALEZ, *individually and on behalf of all others similarly situated*,

                              Plaintiff,

– *against* –

HANOVER VENTURES
MARKETPLACE LLC, *d/b/a Le District*, JOHN DOE CO. 1, *d/b/a HPH Hospitality*, PAUL LAMAS, PETER POULAKAKOS, NICOLAS ABELLO, *and* DAVID COUCKE,

                              Defendants.

**OPINION & ORDER**

21-cv-1347 (ER)

RAMOS, D.J.:

        Denny Gonzalez brought this putative class and collective action against Hanover Ventures Marketplace LLC, d/b/a Le District ("Hanover"), John Doe Company 1, d/b/a HPH Hospitality ("HPH"), Paul Lamas, Peter Poulakakos, Nicolas Abello, and David Coucke (collectively, "Defendants") on February 16, 2021.  Doc. 1.  Gonzalez brings claims under the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), Title VII of the Civil Rights Act of 1964, New York Human Rights Law § 296 ("NYHRL"), New York City Human Rights Law § 8-107 ("NYCHRL"), and New York common law.  He seeks unpaid wages, gratuities, and overtime as well as liquidated damages, statutory penalties, and attorneys' fees and costs under the FLSA and NYLL.  Gonzalez also seeks damages and other relief under Title VII, NYHRL, NYCHRL, and New York common law for a hostile work environment of persistent sexual harassment.

        Following an unsuccessful mediation on June 16, 2021 (Doc. 20), Gonzalez filed an amended complaint on June 29, 2021 (Doc 22) and moved for conditional certification of a FLSA collective action on July 16, 2021 (Doc. 25), which the Court granted on January 21, 2022 (Doc. 52).  Discovery closed on May 31, 2023.  *See* Doc. 112.

Now before the Court are Gonzalez's motions for class certification and partial summary judgment.  Docs. 121, 123.  For the reasons set forth below, the motion to certify is GRANTED, and the motion for summary judgment is GRANTED in part and DENIED in part.

## I.   THE MOTION FOR CLASS CERTIFICATION IS GRANTED
### A.  Background

Hanover is a Delaware limited-liability corporation with a principal place of business at 225 Liberty Street, New York, NY 10281.  Doc. 22 ¶ 17.  It owns and operates the French-themed marketplace called "Le District" at 225 Liberty Street, which consists of four restaurants, two cafés, seven counters, a grocer, and a wholesaler.  *Id.* ¶ 9.  The entities at Le District advertise jointly, serve a similar cuisine, and have similar décor and appearance with the common mission "to deliver delicious French-inspired fare in an environment where service and quality are paramount."  *Id.* ¶¶ 13–14.

Hanover is owned and operated by HPH, a business entity of unknown citizenship (*id.* ¶ 18), which owns and operates 17 hospitality venues throughout the city including Le District (*id.* ¶ 15).  These 17 venues are restaurants owned and operated by the individual defendants as a single integrated enterprise under the common control of all defendants.  *Id.* ¶ 16.  As proof of common ownership and business purpose, Gonzalez alleges that the websites are all listed on HPH's website as "Our Properties" with links to each, the restaurants use a central marketing department, websites and social media for each restaurant are designed by the same company, new restaurants require approval by the individual defendants and HPH prior to opening, the restaurants share a "common look and feel of a trendy New York City bar restaurant," the restaurants offer their venue for private parties and events on the same website, and the restaurants share and exchange non-exempt employees.  *Id.* ¶ 16.

Individual defendants Peter Poulakakos and Paul Lamas are both owners and principals of the corporate defendants who exercise operational control over the

employees in this action.  *Id.* ¶ 20.  Individual defendants Nicolas Abello and David Coucke were managers and supervisors at L'Appart, one of the restaurants at Le District, with the power to exercise operational control over the employees in this action.  *Id.* ¶ 21.

Gonzalez worked as a waiter at L'Appart, a Michelin Star restaurant in Le District.  *Id.* ¶¶ 36–37.  He alleges that he engaged in non-tipped tasks more than 20% of his working time but was paid at the tip-credit minimum wage for New York City.  *Id.* ¶¶ 37, 39, 44.  His typical work schedule and that of other putative class members was 9 hours per day, 5 days a week, with his schedule typically being 3:00 p.m. until 12:00 a.m. Tuesday through Saturday.  *Id.* ¶ 40.  Workers were deducted a half hour every day for a daily lunch break but often had to work through the break.  *Id.* ¶ 42.  Further, Defendants would change workers' schedules at the last minute (*id.* ¶ 43) and failed to provide required wage notices and wage statements (*id.* ¶ 45).  Defendants also implemented a tip pool policy that plaintiffs did not agree to and in which managers, including Coucke, participated.  *Id.* ¶ 46.  Further, Defendants retained service and administrative fees from large events, without paying tipped staff any gratuity.  *Id.* ¶ 47.

Gonzalez seeks to bring NYLL claims on behalf of "all non-exempt employees (including, but not limited to, waiters, runners, bussers, bartenders, cooks, line cooks, dishwashers, and porter persons, among others) employed by Defendants at 'Le District' on or after Feb 12, 2015 to the present"[1] ("the Class").  Doc. 121-1 (Proposed Certification Order) ¶ 1.  He also proposes a "Tipped Subclass" consisting of "all tipped employees employed by Defendants at [ ] 'Le District' on or after Feb 12, 2015 to the present."  *Id.* ¶ 2.

---

[1] In his memorandum of law in support of class certification, however, Gonzalez describes the relevant employment period for class eligibility as employees "employed by Defendants any time during the six (6) year period prior to the filing of the [c]omplaint."  Doc. 122 at 30.  Gonzalez also proposed the same time frame in his complaint.  Doc. 22 ¶ 26.  "[T]he six (6) year period prior to the filing of the [c]omplaint" would be from February 16, 2015 to February 16, 2021, not February 12, 2015 to today in 2024 as listed in the proposed order.  The Court will use the definition listed in the proposed order.

As relevant to his NYLL class allegations, Gonzalez alleges that "Defendants'
company-wide policies and practices affected all [c]lass [m]embers similarly, and
Defendants benefited from the same type of unfair and/or wrongful acts as to each [c]lass
member." Doc. 22 ¶ 31.  Specifically, Defendants did not provide employees proper
wage notices or statements, as required by the NYLL, and Defendants automatically
deducted time for a meal break, even though class members did not always receive time
off for a meal.  *Id.* ¶ 29.  Additionally, he and the other putative plaintiffs in the Tipped
Subclass were not paid proper minimum wage and overtime because Defendants failed to
meet the statutory requirements under the NYLL.  *Id.* ¶ 30.  Gonzalez alleges:

> Plaintiff and the Tipped Subclass suffered from Defendants' failure
> to pay minimum wage and their proper overtime due to Defendants'
> invalid tip credit allowance because Defendants (i) failed to
> properly provide tip credit notice at hiring and annually thereafter,
> (ii) claimed tip credit for all hours worked despite having caused
> tipped employees to engage in nontipped duties for hours exceeding
> 20% of the total hours worked each workweek, (iii) failed to provide
> proper wage statements clearly indicating tip credit allowance for
> each payment period, (iv) failed to accurately keep track of daily tips
> earned and maintain records thereof (v) instituted a improper tip
> pooling scheme, improperly including "back-office employees,"
> such as dishwashers, dish polishers, expediters, and (vi) using the
> tips of their employees to supplement the income of managers, and
> (vii) improperly retaining gratuities from large parties.

*Id.*  He therefore seeks to bring a claim for NYLL violations on behalf of the Class for
failure to provide proper wage statements and notices and failure to pay proper wages.
*Id.* ¶¶ 29, 75, 77–80.  On behalf of the Tipped Subclass, Gonzalez also alleges a NYLL
violation for failing to pay the proper minimum wage and overtime because Defendants
were not entitled to a tip credit due to their failure to provide appropriate notices and
maintain records, along with their improper retention and distribution of tips.  *Id.* ¶¶ 30,
76.

### B.  Legal Standard

A class action may proceed pursuant to Rule 23 when:  (1) the class is so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).  The four requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims."  *Id.* (citation and internal quotation marks omitted).  The putative class must also satisfy at least one of the three requirements listed in Rule 23(b).  As relevant here, class certification under Rule 23(b)(3) requires the plaintiffs to demonstrate, in addition to the prerequisites of Rule 23(a), that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action would be superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"A party seeking class certification must affirmatively demonstrate its compliance with Rule 23."  *Wal-Mart,* 564 U.S. at 350.  In other words, the Rule "does not set forth a mere pleading standard."  *Id.*  A district court must undertake a "rigorous analysis" to determine whether the requirements have been met.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation omitted).  But, on a Rule 23 motion, "the ultimate question is not whether the plaintiffs . . . will prevail on the merits but rather whether they have met the requirements of Rule 23."  *Gortat v. Capala Bros.*, 257 F.R.D. 353, 362 (E.D.N.Y. 2009).  Accordingly, the Court "should not assess any aspect of the merits unrelated to a Rule 23 requirement," *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011) (quoting *In re IPO Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)), though the Court's analysis will inevitably "entail some overlap with the merits of the plaintiff's underlying

5

claim," *Wal-Mart*, 564 U.S. at 351.  Although the Court must resolve factual disputes relevant to satisfying each Rule 23 requirement, "any factual determinations made at the certification stage are not binding on a subsequent fact-finder, even the certifying court." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012) (citing *In re IPO Sec. Litig.*, 471 F.3d at 41).

Generally, in the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification.  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (citation omitted); *see also In re MF Global Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 235 (S.D.N.Y. 2015) (noting that the Second Circuit has instructed district courts "to adopt a liberal interpretation of Rule 23 in order to maximize the benefits to both private parties and to the public provided by class actions"). Accordingly, "if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require."  *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968); *accord In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 340 (S.D.N.Y. 2015).

"[N]umerous courts have found that wage claims are especially suited to class litigation—perhaps 'the most perfect questions for class treatment'—despite differences in hours worked, wages paid, and wages due."  *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 128 (S.D.N.Y. 2011) (collecting cases).  Specifically, failure to pay proper minimum wages, time-shaving, improper tip pooling, and failure to provide proper wage statements or wage and hour notices "are about the most perfect questions for class treatments." *Martinez v. Ayken, Inc.*, No. 13-cv-7411 (LDW) (AKT), 2016 U.S. Dist. LEXIS 25556, at *39 (E.D.N.Y. Feb. 29, 2016) (citation omitted) (collecting cases), *R&R adopted* 2016 U.S. Dist. LEXIS 92596 (July 14, 2016).

### C.  Discussion

*1.  Numerosity*

Rule 23 provides that a class may be certified where it "is so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  In the Second Circuit, "numerosity is presumed where a putative class has forty or more members."  *Shahriar*, 659 F.3d at 252 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).  Here, the Class consists of approximately 1,354 members, and the Tipped Subclass has approximately 644 members.  Doc. 122 at 32; *see also* Doc. 126-17 (Class List).

Defendants challenge that the numerosity requirement is not met here because "[a]though [ ] numerosity can be presumed when a class is comprised of 40 or more members, whether joinder is practicable does not depend on hard numbers," and, here, "joinder is impracticable because [Gonzalez] has not even attempted (and he cannot) refute that . . . among the different sections inside Le District there are very different types of cuisines, some coffee bars, steak frites, cheeses[,] and several restaurants."  Doc. 135 at 7.

That argument misses the mark in two key respects.  First, the impracticability of joinder weighs in *favor* of certification, not against.  *See* Fed. R. Civ. P. 23(a)(1).  Second, numerosity is, fundamentally, an exercise in counting.  Indeed, that is why numerosity is most often conceded.  As even Defendants' cited authority explains, the analysis is whether the number of putative class members would make it impracticable to join each of them to the action as named plaintiffs, rather than as unnamed, absent members of a class action.  *See Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 410–11 (S.D.N.Y. 1998).  The language in Defendants' cited authority to the practicability of joinder not "depend[ing] on hard numbers" refers to when other factors can render joinder of even relatively small classes, sometimes with less than 40 members, nonetheless impracticable and thereby warrant certification.  *See id.*  But it does not mean that classes with over a

thousand members do not satisfy the numerosity requirement.  And Defendants cite no authority for their argument that differences between class members' employment situations have any bearing on the satisfaction of the *numerosity* requirement (as opposed to other Rule 23(a) factors).  Accordingly, the numerosity requirement is satisfied here.

       2.  *Commonality and Typicality*

Commonality and typicality both serve as "guidepost[s] for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falberg v. Goldman Sachs Grp.*, No. 19-cv-9910 (ER), 2022 U.S. Dist. LEXIS 34012, at *22 (S.D.N.Y. Feb. 14, 2022) (alteration in original) (citation omitted).  Because these "similar considerations animate analysis of" both commonality and typicality, the "requirements tend to merge into one another."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *see also Elisa W. v. City of N.Y.*, 82 F.4th 115, 128 (2d Cir. 2023) (similar).

Commonality is satisfied where "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "A question of law or fact is common to the class if the question is 'capable of classwide resolution—which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15-cv-9936 (LGS), 2017 WL 3868803, at *4 (S.D.N.Y. Sept. 5, 2017) (quoting *Johnson v. Nextel Comms. Inc.*, 780 F.3d 128, 137 (2d Cir. 2015)); *see also Wal-Mart*, 564 U.S. at 349–50.  "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."  *Nextel Comms.*, 780 F.3d at 137.

"The typicality requirement is satisfied when the class members' claims 'arise [ ] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Peters v. Jinkosolar Holding Co.*, No. 11-cv-7133 (JPO), 2012 WL 946875, at *11 (S.D.N.Y. Mar. 19, 2012) (quoting *In re Drexel Burnham*

*Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).  The typicality requirement is "not demanding."  *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. at 236 (quoting *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 208 (S.D.N.Y. 2012)).  It "does not require factual identity between the named plaintiffs and the class members, only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class."  *Id.* (quoting *Pennsylvania Ave. Funds v. Inyx Inc.*, No. 08-cv-6857 (PKC), 2011 WL 2732544, at *4 (S.D.N.Y. July 5, 2011)).  Nor does typicality "require that damages be identical among class members."  *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 157 (S.D.N.Y. 2017) (citing *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 337 (E.D.N.Y. 2013)).

Here, Gonzalez argues that deposition testimony, affidavits, and ample other evidence demonstrate that all Le District employees were subject to common wage policies.  Doc. 122 at 33.  As a result, all members of the Class received the same notices, including wage notices and tip notices, as well as the same paystubs and wage and hour statements.  *Id.* at 11.  Additionally, all Class members were also subject to the same policy by which Defendants automatically deducted a thirty-minute meal break, even though employees were made to work through that break.  *Id.* at 24–25.  Consequently, all of the wage statements and notices suffered from the same alleged deficiency—a failure to track the hours employees actually worked.  *Id.* at 26–27.

Defendants respond that none of Gonzalez's four alleged NYLL violations— improper deductions of time for meal breaks, failure to pay minimum wage, failure to provide proper wage and hour notices, and failure to provide proper wage statements— can be adjudicated class-wide because they each require individualized, employee- specific inquiries.  Doc. 135 at 10.  Specifically, Defendants argue that, first, as to the time-shaving claim, no law requires that bona fide meal breaks be paid, and Gonzalez has failed to sufficiently establish that each member of the Class "was not completely

relieved from duty during his or her meal break." *Id.* at 11.  Second, commonality is not satisfied as to the minimum wage claim because the wage and hour notices that Defendants provided were legally sufficient, meaning that Defendants were properly entitled to the tip credit and thus did pay their employees appropriately.[2]  *Id.* at 11–13. Finally, Defendants also argue that other notices provided to the Class were not legally deficient either.  *Id.*

Defendants do not appear to dispute that all employees were given the same notices and statements, or that thirty minutes were automatically deducted from every employee's hours for a meal break.  *Id.* at 10–13.  Rather, they dispute only the legal sufficiency of those notices and statements and whether Gonzalez can prove that all employees, without exception, were made to work through their meal break.  *Id.*  But those inquiries would not defeat class certification.  As to the first, whether or not Defendants' wage notices, tip notices, and wage and hour statements satisfy the NYLL is a merits question not properly before the Court on certification.  *Shahriar*, 659 F.3d at 251; *Gortat*, 257 F.R.D. at 362.  As to the second, Gonzalez has submitted deposition testimony from Coucke, a manager and supervisor, that Le District maintained a policy of automatic deduction, along with declarations from 18 employees in varied roles at varied Le District entities, all affirming that they were made to work through lunch every day. Doc. 126-4 (Coucke Dep.) at 27:3–6; Doc. 127 (Compiled Employee Decls.).  Moreover, even if the Court were to accept Defendants' contention that *some* employees were able to take their meal breaks without working, "it is axiomatic that [t]he commonality requirement may be met when individual circumstances of class members differ, as long

---

[2] Defendants also contend:  "At the very least, whether Defendants complied with the NYLL through the use of the [Department of Labor ("DOL")] official forms is a question of fact for the jury which cannot be decided on summary judgment.  All of the facts leading to the conclusory allegation that [Class members] were not paid the appropriate minimum wage are seriously in dispute and must be resolved by a trier of fact."  *Id.* at 13.  This argument fails in two critical respects.  First, the instant motion is for class certification, not summary judgment.  Whether questions ultimately make it before a trier of fact is not therefore at issue here.  Second, whether Defendants' forms satisfied the NYLL is a question of law, not a question of fact—meaning it is indeed for the Court, and not a jury, to decide.

as class members' injuries derive from a unitary course of conduct.  Thus, . . . the [commonality] requirement is satisfied where employees claim that they were denied minimum wage or overtime compensation as a result of a corporate employment policy." *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 364 (S.D.N.Y. 2014) (internal quotation marks omitted) (collecting cases); *see also Espinoza*, 280 F.R.D. at 127 ("Defendants' argument that plaintiffs' 'off-the-clock' claims would require this Court to determine liability on an individualized basis confuses liability with damages.  The critical inquiry is whether the common questions are at the 'core' of the cause of action alleged." (internal quotation marks omitted)).  Accordingly, commonality and typicality are satisfied here.

### 3. Adequacy

Under Rule 23(a)(4), "[a]dequacy is twofold:  the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members."  *Falberg*, 2022 U.S. Dist. LEXIS 34012, at *23 (alteration in original) (citations omitted).  Additionally, class counsel must be "qualified, experienced, and generally able to conduct the litigation." *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 278 (S.D.N.Y. 2015) (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007)).

Defendants make no arguments as to adequacy, and thus concede it.  Doc. 135. No evidence in the record suggests that Gonzalez has any conflict of interest with the Class.  And Gonzalez's counsel, C.K. Lee, represents that he has been approved as class counsel in over 100 class actions.  Doc. 122 at 38; *see also, e.g., Alvarez v. Schnipper Rests. LLC*, No. 16-cv-5779 (ER), 2019 U.S. Dist. LEXIS 190572, at *17 (S.D.N.Y. Nov. 1, 2019) (approving C.K. Lee as adequate class counsel in similar employment class action); *Chang v. Philips Bryant Park LLC*, No. 17-cv-8816 (LTS) (SLC), 2019 U.S. Dist. LEXIS 185297, at *29 (S.D.N.Y. Oct. 23, 2019) (same), *R&R adopted by* 2020 U.S. Dist. LEXIS 4147 (Jan. 9, 2020).  Accordingly, the adequacy requirement is satisfied.

11

### 4.  Predominance and Superiority

"Together, the predominance and superiority requirements were designed to cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *Lawrence v. NYC Med. Prac., P.C.*, No. 18-cv-8649 (GHW), 2024 U.S. Dist. LEXIS 14339, at *24 (S.D.N.Y. Jan. 26, 2024) (internal quotation marks and citation omitted).

The requirement of superiority is satisfied where plaintiffs show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  In analyzing this requirement, the Court must consider:  "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*  "The manageability of a class action is the most important of these factors." *In re Aphria, Inc. Sec. Litig.*, 342 F.R.D. 199, 207 (S.D.N.Y. 2022).

"The predominance requirement of Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (citation omitted).  Plaintiffs must demonstrate that "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [that] these particular issues are more substantial than the issues subject only to individualized proof." *Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of N.Y.*, No. 19-cv-06004 (ALC), 2022 WL 986071, at *4 (S.D.N.Y. Mar. 31, 2022) (citation omitted).  "Where plaintiffs' claims arise from a common policy and rely on a common legal theory, the predominance requirement is satisfied . . . ." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 75 (S.D.N.Y. 2018).

Here, Gonzalez argues that both requirements are met because, as in many other labor and wage cases, "common questions regarding the legality of Defendants' compensation policies and practices predominate over any individual inquiries that may arise." Doc. 122 at 36. Additionally, courts in this Circuit have routinely held that class actions are superior method for adjudicating NYLL claims because large numbers of employees are injured by common policies, but the damages suffered are small relative to the burden of individual litigation, meaning class treatment may be the only mechanism for those employees to obtain relief. *Id.* at 37 (collecting cases).

Defendants respond as follows:

> [Gonzalez] cannot meet [his] burden on [a] more demanding predominance test just by stating that 'common questions regarding the legality of Defendants' compensation policies and practice predominate over any individual inquiries that may rise.' . . . Considering that the instant action is comprised of claims that must be individually assessed, the adjudication of this action by representation has no viable advantage to individual action. Furthermore, [an] individual member of the [ ] Class has little to no financial burden and cost of individual litigation because such litigation would not cost a dime for the member as explained above. Finally, since the [ ] Class performed vastly different job duties at different sections of Le District to varying degrees and in different ways, [the Class'] claims and any determinations of damages thereof are too highly individualized to form the basis for a class action. *See [Wal-Mart]*, 131 S. Ct. at 2541 (certification of Rule 23 class action was improper where broad disparities between employees' job settings would require resolution of the claims by means of a series of mini-trials rather than a single action).

Doc. 135 at 14.

First, Gonzales did not merely state that common questions predominate, as Defendants argue, he also cited ample case law (which the Court finds persuasive) that explicitly holds that NYLL claims like those here are paradigmatic cases of predominance that should be subject to treatment as a class. *Compare* Doc. 122 at 37, *with* Doc. 135 at 14. And Defendants make no effort to address those cases. Doc. 135 at 14. Second, Defendants' argument that Class members' claims "must" be individually

assessed by means of a series of mini-trials assumes the conclusion. *See id.* The exact inquiry is whether the claims may be adjudicated in a single action, so arguing that they must be tried separately because they must be tried separately, without any further explanation or rationale, does not move the needle. Third, it is not clear what Defendants are referring to when they assert that litigating their claims individually "would not cost a dime for the [class] member as explained above." Nowhere else in their papers do Defendants argue, let alone explain, why individual litigation would be, not merely less expensive and burdensome for class members, but "would not cost a dime." In any event, the Court does not believe that requiring members to bring individual suits would be more advantageous to them than class treatment. Fourth, Defendants do not explain how differences in employees' job duties or stations in any way impact class certification for NYLL claims for failure to provide wage statements and wage and hour notices, time-shaving, or failure to pay minimum wage based on failure to satisfy the NYLL requirements for entitlement to tip credit. Each of these are claims based on Defendants' class-wide policies and do not depend on an individual employee's circumstances. At most, different duties or positions could affect calculations of damages, but courts in this district have consistently "found that the types of individual questions that exist in wage-and-hour cases, such as the hours worked or the exact damages to which each [p]laintiff might be entitled, do not defeat the predominance requirement." *Vargas v. Howard*, 324 F.R.D. 319, 329 (S.D.N.Y. 2018) (collecting cases). Finally, fifth, Defendants' reliance on *Wal-Mart* is misplaced, in that *Wal-Mart* concerned claims for sex discrimination, and the plaintiffs were unable to demonstrate a common policy of discrimination by which to demonstrate that class treatment was appropriate. 564 U.S. at 353–55. Further, "the weight of authority [in this Circuit] rejects the argument that [*Wal-Mart*] bars certification in wage and hour cases." *Martinez*, 2016 U.S. Dist. LEXIS 25556, at *24 (quoting *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (collecting

cases)).  Accordingly, predominance and superiority are satisfied here.  Further, because all of the requirements for Rule 23(a) and (b)(3) are met, class certification is granted.

       *5. Class Notice*

In Gonzalez's proposed order for class certification, Gonzalez also asks the Court to approve the proposed class notice, which he purports is attached as an exhibit.  Doc. 121-1 ¶ 4.  But no exhibit is attached.  The Court therefore directs Gonzalez to submit, by no later than March 26, 2024, a proposed class notice form, as well as a proposal for the dissemination of class notice and a schedule for notice, opt-out, and other relevant certification deadlines.

## II.  THE MOTION FOR PARTIAL SUMMARY JUDGMENT IS GRANTED IN PART AND DENIED IN PART

### A.  Background

The following facts are drawn from the parties' Rule 56.1 statements and the record, and are undisputed except where otherwise noted.

Hanover is a Delaware limited-liability corporation with a principal place of business at 225 Liberty Street, New York, N.Y. 10281, where it operates Le District, which consists of four restaurants, two cafes, seven food counters, and a grocer/wholesaler.  Doc. 134 ¶¶ 1–2, 34–35.  The Class asserts that its members could be assigned to work for other entities of Le District "on an as needed basis, such as when there [we]re private 'buy-out' events when the entirety of the marketplace is reserved." *Id.* ¶ 11.  Defendants argue that buy-outs were the only instance in which employees could be re-assigned thusly.  *Id.*

Poulakakos and Lamas were each one of the five owners of Le District.  *Id.* ¶¶ 4–5.  Lamas also oversaw operations.  *Id.*  ¶ 6.  Sebastien Muller served as Le District's Director of Operations and reported to Poulakakos and Lamas, who set the payroll and other policies that Muller then implemented.  *Id.* ¶¶ 7, 9.  Gonzalez also asserts that Poulakakos and Lamas had authority to hire and fire Muller, but not other employees

(Doc. 126-1 (Lamas Dep. Tr.) at 7:25–8:11), and had access to at least Muller's employee records (Doc. 126-2 (Muller Dep. Tr.) at 24:25–25:12).

Gonzalez worked as a waiter at Le District from February 12, 2018 to December 2019, and he earned the "tipped credit minimum wage." *Id.* ¶¶ 31, 33.

Wage notices for the Class and all other Le District employees listed Hanover as the employer. *Id.* ¶ 3. The Class was also subject to the same handbook, onboarding documents, payroll and paystubs, and wage and hour policies. *Id.* ¶¶ 12–13, 17–18. They also had the same human resources department, director of operations, and general manager. *Id.* ¶¶ 15–16. Gonzalez also asserts that the Class was uniformly subject to the same notices, including wage notices and tip notices.[3] *Id.* ¶ 14.

Defendants automatically deducted a meal break from all employees with workdays longer than six hours. *Id.* ¶¶ 29–30. The parties dispute whether those meal breaks were in fact provided to employees, or whether employees were made to work through the breaks. *Id.*

Members of the Tipped Subclass "were regularly required to perform non-tipped side work of either more than two (2) hours or 20% of their workday." *Id.* ¶ 28.[4] Additionally, relying on employee declarations, Gonzalez alleges that management required the Tipped Subclass to participate in a tip pool, and not all tips were provided to employees; Defendants argue that the "self-serving" declarations contain no firsthand knowledge of whether managers provided all earned tips to employees, but Defendants

---

[3] Defendants dispute that Gonzalez sufficiently proved uniformity of notices because Coucke testified only that he was not aware of a reason that Gonzalez would have received a different form from any other employee. *Id.* ¶ 14. Defendants do not produce, however, any examples of a non-uniform wage or tip notice.

[4] In their response to Gonzalez's assertion in his Rule 56.1 statement that tipped workers were required to do non-tipped work, Defendants respond: "Disputed." *Id.* They provide no further explanation or details. But, the local rules of the Southern and Eastern Districts of New York require that every statement controverting any statement of material fact must be supported by a citation to admissible evidence, and failure to do so will result in the moving party's statement "be[ing] deemed admitted for purposes of the motion." R. 56.1(c)–(d). Defendants failed to cite to any evidence, and Gonzalez's assertion is therefore deemed admitted.

submit no evidence contradicting the subclass' assertions (*e.g.*, testimony from the managers that they did not retain any money from the tip pool). *Id.* ¶ 21.  Defendants concede, however, that in June 2018, the New York State Department of Labor found that stockers were improperly included as part of the tip-pool at one of Le District's restaurants, Beaubourg, and L'Appart maintained a tip-pool like that of Beaubourg at all relevant times. *Id.* ¶¶ 22–23.

Defendants used the DOL's template wage notice forms, the contents of which have changed over the years. *Id.* ¶¶ 25–26.  Gonzalez submitted samples of the forms Defendants used before 2018 (Doc. 126-8 (DOL Form Revised March 2011)) and after 2018 (Doc. 126-9 (DOL Form Revised Jan. 2017)).  Gonzalez argues that both forms are deficient.  The pre-2018 forms Defendants used did not provide "notice that the tip credit taken by Defendants may not exceed the value of tips that they actually received," and the post-2018 forms "failed to state that any tip-credit was being taken."  Doc. 134 ¶¶ 25–26.  Defendants do not address either contention, nor do they present any pre-2018 forms with notice that tip credits may not exceed actual tips or post-2018 forms with the amount of tip credit listed.[5]  *See id.*  Further, Defendants state that the pre-2018 forms contained no place to fill in tip credit information, but Gonzalez's own exhibit shows that Defendants entered each employee's rate of pay on the notices as the rate "+tips."  *Id*.  The sample pre-2018 forms in the exhibit, however, *do* have a separate line for the amount of tip credit to be taken, and, in fact, several (but not all) of the forms demonstrate that Defendants in fact completed that information.  *Compare* Doc. 126-8 at 2 (stating that the employee would be paid at a rate of $5.00/hr with a $3.75/hr allowance taken for tips), *with id.* at 7 (stating that the employee would be paid at a rate of $7.5+tips

---

[5] Defendants instead reiterate legal arguments from their motion papers in several of their responses in their Rule 56.1 statement. *See, e.g.,* Doc. 134 ¶¶ 19–20, 25–27.  Specifically, they argue that the use of DOL template forms alone should be legally sufficient, and "Plaintiffs can't argue that Defendants should have done something different with only the benefit of hindsight as a guiding principle."  *Id.* ¶¶ 25–26.  As noted above, legal arguments are insufficient to controvert a moving party's assertions in a Rule 56.1 Statement. *See R.* 56.1(c)–(d).

per hour" but failing to fill in the blank for the amount of tip allowance to be taken per hour).  The post-2018 forms do use the "+tips" notation, stating for example that an employee's regular rate of pay would be "$8.65 +tips" and leaving blank the line where the employer was to fill in the amount of tip credit to be taken per hour.  *See, e.g.*, Doc. 126-9 at 2.  Defendants do not dispute that the sample forms submitted by Gonzalez are representative of the forms provided to the Class writ large.

The sample earning statements Gonzalez has submitted show that Defendants failed to state the amount being deducted pursuant to the tip-credit.  Doc. 126-13 (Sample Earning Statements).  The statements included a notation at the bottom, in varied language, that a $5 tip credit was taken from the minimum hourly wage without calculating the total amount of tip credit taken for that pay period.  *Id.*

### B.  Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free School Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might "affect the outcome of the litigation under the governing law."  *Id.* (quoting *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008)).  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Medical Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

### C. Discussion

#### 1. *Summary Judgment is Denied as to the Unpaid Meal Break Claim*

Gonzalez alleges that Defendants automatically deducted thirty minutes for a meal break from every employee's hours, even though Defendants made employees work through the meal break, resulting in Defendants underpaying the Class.  Doc. 124 at 21–23.  If true, such time-shaving practices would violate the NYLL and FLSA, both of which require that employers pay employees for every hour worked.  *See Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 472 (S.D.N.Y. 2015).  The statutes specifically provide that "[a]ll of the time worked during a continuous work day is compensable, save for bona fide meal [breaks,]" which are defined as periods when the employee is "completely relieved from duty for the purposes of eating meals."  *Id.* (citations omitted).

To establish liability on a claim for underpayment of wages under either the NYLL or FLSA, "a plaintiff must prove that he performed work for which he was not

properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011); *see also Salinas*, 123 F. Supp. 3d at 472. Where an employer fails to maintain adequate or accurate records of its employees' hours, the employee need only "produce[] sufficient evidence to show the amount and extent of [the uncompensated] work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). This burden is "not high." *Kuebel*, 643 F.3d at 362. "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687–88. If the employer fails to do so, "the court may then award damages to the employee, even though the result be only approximate." *Id*. at 688.

In support of the Class' claim, Gonzalez submitted deposition testimony from Coucke, a manager at L'Appart, that Defendants did not instruct employees to clock in or out for meal breaks—and thus did not specifically track that time—and instead automatically deducted the time. Doc. 126-4 at 26:17–27:6. Additionally, Gonzalez submitted declarations from 18 employees in varied roles at varied Le District entities, all affirming that they were made to work through lunch every day. Doc. 127. In opposition, Defendants point to deposition testimony from Muller, Le District's Director of Operations, objecting to the characterization of the thirty-minute deduction as "automatic" and insisting that meal breaks were mandatory for employees. Doc. 126-2 at 61:14–21 ("This is not automatic. It's like if I take those breaks, there will be deduction time. If I don't take the break, but usually—it's not even usually. If you're scheduled for more than six hours, you must take your break. It's mandatory. So we make sure that the staff member[s] take the break of 30 minute[s] if they're scheduled more than six hours on the same day."). Based on Muller's testimony, Defendants argue that there is a factual question as to whether meal breaks were actually provided to employees. Doc. 133 at 12.

Defendants do not dispute that they did not ask employees to clock in or out for meal breaks and instead maintained a policy of deducting thirty minutes from employees' hours for wage calculations, nor do they dispute that it would violate the NYLL and FLSA if those thirty-minute deductions did not reflect actual meal breaks taken because employees were made to work through the break. *See id.* at 10–12.

Thus, the key question is whether Defendants gave members of the Class thirty minutes of uninterrupted time for a meal break, as they assert, or whether employees were made to work throughout the break, as Gonzalez asserts. Gonzalez has met his burden to present evidence to raise the reasonable inference of uncompensated work, given Defendants failed to direct employees to clock in and out for meal breaks, which calls into question the accuracy of Defendants' records; but Defendants have also presented some evidence to attempt to satisfy their burden to "negative the reasonableness of the inference." *See Anderson*, 328 U.S. at 687–88. Because this concerns, at bottom, a question of material fact, the Court cannot grant summary judgment. *See Wright v. Brae Burn Country Club, Inc.*, No. 08-cv-3172 (DC), 2009 U.S. Dist. LEXIS 26492, at *9 (S.D.N.Y. Mar. 20, 2009).

### 2. Summary Judgment is Granted as to the Claims for Unpaid Minimum Wage Under the FLSA and NYLL Based on an Invalid Tip Credit

Gonzalez alleges that Defendants violated the FLSA and NYLL by failing to pay the Tipped Subclass minimum wage because Defendants were not entitled to a tip credit. Doc. 133 at 6–21. Specifically, Gonzalez alleges that the Tipped Subclass was paid hourly rates less than the prevailing minimum wage, meaning that their wages would have been lawful only if Defendants were properly entitled to a tip credit. *Id.* at 7–8. But Defendants failed to satisfy the statutory conditions for entitlement to a tip credit because they did not (1) provide employees a pre-employment written notice of the amount of the tip credit, (2) provide employees an itemized tip credit amount on their paystubs, (3) maintain and preserve six years' weekly payroll records with information included

concerning tip credits. *Id.* at 8–15. Additionally, Defendants' improper retention of tips and requirement that employees do 2.5 hours of non-tipped side work daily are additional, independent bases to invalidate any tip credit entitlement. *Id.* at 16–21.

Defendants respond:

> [Gonzalez] and the [ ] Tipped Subclass argue that Defendants failed to pay them the appropriate minimum wage, but tellingly [they] do not actually assert that they failed to receive those minimum wages to which they were entitled, so instead they make the tortured argument that Defendants supposedly did not provide them with a proper wage notice, which then leads them to maintain that they were not given the proper tip-credit notice, which then results in the tortured conclusion that Defendants failed to pay [them] the proper minimum wage. Since the wage notice allegations at the bottom of this chain of assumptions is false and in dispute, the entire claim of improper minimum wage fails, especially since [Gonzalez] and the [ ] Tipped Subclass do not assert that they were not actually paid the minimum wage.

Doc. 133 at 6 (citation to Gonzalez's motion omitted). Defendants' sole basis for arguing that the "wage notice allegations . . . [are] false" is that Defendants used the DOL wage notice forms. *Id.* at 6–7. Defendants do not address Gonzalez's allegations concerning preservation of records, improper tip retention, and substantial non-tipped side work. *See* Doc. 133. Defendants cite no case law in support of their arguments. *Id.*

First, despite the fact that Defendants do not respond to several of Gonzalez's arguments and fail to cite any law in support of their assertions, the Court cannot grant summary judgment merely on the basis that the motion is unopposed. Courts are required to review even unopposed summary judgment motions "and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (citation omitted); *see also Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) ("[W]hen a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first

examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.").

Second, Defendants are wrong that Gonzalez never alleged that the Tipped Subclass did not receive minimum wages. *See* Doc. 133 at 6. To the contrary, Gonzalez explicitly alleges both that employees' hourly rates were below the prevailing minimum wage and that Defendants engaged in unlawful tip retention. Doc. 124 at 7–8, 16–19. More crucially, Gonzalez has submitted wage notices and paystubs from members of the Tipped Subclass demonstrating that tipped employees' hourly wages were below the statutory minimum wage. *See* Docs. 126-8, 126-13.

The pre-2018 wage notices do not include language informing the employee that tip credits taken could not exceed the amount of actual tips received, as the NYLL requires. *See* 12 N.Y.C.R.R. § 146-2.2(a). And the post-2018 wage notices state only that employees will be paid, for example $8.65 "+tips," but Defendants do not fill in the line for the amount of tip credit to be taken per hour. *See, e.g.*, Doc. 126-9 at 2. This too violates the NYLL. *See* 12 N.Y.C.R.R. § 146-2.2(a). Moreover, several employees allege that they never received the required notices. *See generally* Doc. 127. "Failure to provide adequate tip credit notice under § 146-2.2 invalidates any tip credit claimed by the employer." *Reyes v. Sofia Fabulous Pizza Corp.*, No. 13-cv-7549 (LAK) (JCF), 2014 U.S. Dist. LEXIS 188734, at *23 (S.D.N.Y. Apr. 7, 2014) (citing 12 N.Y.C.R.R. § 146-1.3), *R&R adopted by* 2014 U.S. Dist. LEXIS 60836 (S.D.N.Y., Apr. 24, 2014); *accord Romero v. Anjdev Enters.,* No. 14-cv-457 (AT), 2017 U.S. Dist. LEXIS 19275, at *24–25 (S.D.N.Y. Feb. 10, 2017).[6]

---

[6] Defendants argue that the Court should not find that they violated the wage notice requirements because they used the DOL forms. Doc. 133 at 6–7. Even if Defendants were correct that the use of DOL forms meant they complied with the law, it ultimately does not provide Defendants a complete defense or affect the disposition of the instant motion because, as described below, Defendants' improper tip retention constitutes an independent basis upon which Defendants' entitlement to a tip credit is nullified.

Defendants' failures as to the pay stubs, however, are not bases to find that employees were not paid minimum wage.  First, Defendants failed to produce any paystubs before 2019, which violates the NYLL's recordkeeping requirements.  *See* 12 N.Y.C.R.R. § 146-2.1(a).  But recordkeeping obligations are not a precondition to take the tip credit.  *See Reyes*, 2014 U.S. Dist. LEXIS 188734, at *29.  Second, as to the wage statements that were actually produced, Defendants failed to list the exact amount of the tip credit being deducted from each employee's pay, as the NYLL requires.  *See* 12 N.Y.C.R.R. § 146-2.3.  However, wage statement violations only trigger statutory damages but do not invalidate the tip credit.  *Reyes*, 2014 U.S. Dist. LEXIS 188734, at *30.[7]  Accordingly, only Defendants' failure to provide adequate wage notices is a basis to invalidate the tip credit, which would mean that Defendants failed to pay the Tipped Subclass the prevailing minimum wage.

Further, Gonzalez has alleged that employees in the Tipped Subclass were not permitted to retain all the tips they received, an additional independent basis to invalidate the tip credit.  Doc. 124 at 16–21. In support, Gonzalez notes:

- Defendants did not maintain or produce any records of tips received (Doc. 126 (C.K. Lee Decl.) ¶ 20 ("As part of the sampling produced by Defendants in this matter, no . . . tip-sheets or daily tip logs [were] produced."));

- Defendants engaged in a practice of tip pooling that the DOL already found to include non-tipped personnel (Doc. 126-14 (finding tip appropriation violation at Beaubourg Restaurant); Doc. 126-4 at 38:14–21 (Coucke testifying that the L'Appart tip pool operated similarly to that of Beaubourg); *see also* Doc. 134 ¶¶ 22–23); and

- employees have submitted declarations that Defendants both retained significant amounts of their tips and distributed tips from the tip pool to managers (*see generally* Doc. 127).

---

[7] But the failures may still have repercussions on the strength of employers' defenses, as "the lack of evidence as to how much was earned in tips may undermine employers' assertions that employees were adequately paid and greater weight may be given to plaintiffs' assertions of undercompensation."  *Reyes*, 2014 U.S. Dist. LEXIS 188734, at *30.

Both the NYLL and FLSA prohibit application of any tip credit if the employer does not permit employees to retain all tips.  *Gomez v. MLB Enters., Corp*., No. 15-cv-3326 (CM), 2018 U.S. Dist. LEXIS 96145, at *19 (S.D.N.Y. June 5, 2018) ("As with the FLSA, an employer loses its entitlement to the NYLL's tip credit if it improperly retains an employee's tips.").  Employers improperly retain tips when they require tipped employees to share tips with employees who do not provide direct customer service or with managers.  *Shahriar*, 659 F.3d at 240.  Accordingly, Defendants' improper retention of tips constitutes an independent basis for invalidation of the tip credit.

Additionally, Gonzalez submits Coucke's deposition testimony that even tipped employees were made to do 2.5 to 3 hours of non-tipped work before service at the restaurants began (Doc. 126-4 at 39:10–42:13, 80:13–22), as further evidenced by employee declarations (*see generally* Doc. 127).  This too is an independent basis to invalidate the tip credit.  The NYLL provides that if an employee does more than two hours of non-tipped work in their shift, "the wages of the employee shall be subject to no tip credit for that day."  12 N.Y.C.R.R. § 146-2.9.  And the FLSA requires that non-tipped side work be compensated at minimum wage.  *See Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18-cv-7342 (JGK), 2022 U.S. Dist. LEXIS 34090, at *33 (S.D.N.Y. Feb. 25, 2022); *see also Hart v. Crab Addison, Inc.*, No. 13-cv-6458 CJS, 2014 U.S. Dist. LEXIS 152590, at *11–13 (W.D.N.Y. Oct. 27, 2014).

Consequently, the Court grants summary judgment for Gonzales and the Tipped Subclass as to liability on the NYLL and FLSA claims for unpaid minimum wages.

### 3.  Summary Judgment is Granted as to the Wage Theft Prevention Act Claims

An employer's failure to provide a proper wage and hour notice, including the amount of tip credit claimed; provide a proper wage statement which also lists the amount of tip credit claimed for that pay period; and retain records for six years also constitute violations of New York's Wage Theft Prevention Act ("WTPA").  12 N.Y.C.R.R. §§ 146-2.1, 2.2, 2.3.  As the Court has already noted above, Defendants failed

to comply with their obligations under §§ 146-2.1, 146-2.2, and 146-2.3.  Consequently, Gonzalez's motion for summary judgment is granted as to the claims under the WTPA.

### 4.  *The Court Cannot Decide on Summary Judgment whether the Three-Year Statute of Limitations for "Willful" FLSA Violations Applies*

The FLSA generally provides for a two year statute of limitations, but the limitations period is extended to three years where the underlying violations are "willful." 29 U.S.C. § 255(a).  A willful violation will be found where the plaintiff shows "that the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 322 (2d Cir. 2021) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  Gonzalez asserts that Defendants' FLSA violations were willful, and the Class is therefore entitled to a three year limitation period.  Doc. 124 at 29–30.  Gonzalez specifically argues that this is not Defendants' first labor law violation, as they were involved with a prior wage-and-hour grievance involving similar violations but took no action to come into compliance with the FLSA.  *Id.*  Defendants respond that a "[p]laintiff must prove more than that the defendant violated the law and knew or should have known it was violating the law," and willfulness is therefore most typically left to the trier of fact to decide.  Doc. 133 at 14.

As a preliminary matter, Defendants are wrong that a plaintiff must "prove more than that the defendant violated the law and knew . . . it was violating the law."  *See id.* To the contrary, persisting in conduct the defendant knows to violate the FLSA is the very definition of willfulness, as Defendants' own quoted authority states.  *See McLaughlin*, 486 U.S. at 133; *Kuebel*, 643 F.3d at 366; *see also Whiteside*, 995 F.3d at 322.  However, Gonzalez has not met his burden to demonstrate willfulness here.  Gonzalez conclusorily states, without citations to the record or analogous case law, that Defendants were

"involved in another wage-and-hour grievance asserting similar violations."[8]  Doc. 124 at 29.  Accordingly, based on the record presently before the Court, it cannot grant summary judgment on the question of Defendants' willfulness or, therefore, the relevant FLSA statute of limitations.

>   5.   *The Court Cannot Decide on Summary Judgment whether the Class is Entitled to Liquidated Damages Pursuant to the FLSA and NYLL*

Both the FLSA and NYLL permit employees to recover liquidated damages against an employer who violates the minimum wage and overtime laws.  *See* 29 U.S.C. §§ 216(b), 260; NYLL § 198.  Both provisions allow employees to recover up to the full amount owed in unpaid minimum wage or overtime.  *Rana v. Islam*, 887 F.3d 118, 122–23 (2d Cir. 2018) (noting that there are "no meaningful differences" between the purpose or effect of the laws' liquidated damages provisions).  Under the FLSA, liquidated damages will be awarded unless the employer "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]."  29 U.S.C. § 260.  The employer "bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness."  *Reich v. S. New Eng. Telcomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) (internal quotation marks and citations omitted).  Similarly, under NYLL, an employer must show "a good faith basis to believe that its underpayment of wages was in compliance with the law."  *Rana*, 887 F.3d at 123 (quoting NYLL § 198).  "'Good faith' in this context requires more than ignorance of the prevailing law or uncertainty about its development."  *Reich*, 121 F.3d at 71.  Rather, it requires an employer to "take active steps to ascertain the dictates of the FLSA and then act to comply with them."  *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 142 (2d Cir. 1999).

---

[8] It is not clear from the moving papers which prior "wage-and-hour grievance" Gonzalez refers to here, but the Court assumes that Gonzalez refers to the June 2018 notice from the New York DOL that stockers were improperly part of the tip pool at Le District's Beaubourg restaurant.  *See* Doc. 134 ¶ 22.  But it is fatal to Gonzalez's argument that he failed to cite any case law supporting the assertion that such a notice is enough for a finding of willfulness.

A finding that an employer either "knew or showed reckless disregard" for relevant labor law supports an award of liquidated damages.  *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 22 (2d Cir. 2002) (quoting *Herman*, 172 F.3d at 141).  However, because the laws' liquidated damages provisions are nearly identical, plaintiffs may not recover liquidated damages under both laws.  *Rana*, 887 F.3d at 123.

Based on similar evidence and reasoning as his statute of limitations arguments, Gonzalez argues that the Class is entitled to liquidated damages pursuant to both the FLSA and NYLL.  Doc. 124 at 27–29.  Specifically, Gonzalez argues:  "Given the extent of Defendants' illegal policies and Defendants' refusal to correct such policies even after fine by the New York [DOL] makes it abundantly clear that Defendants have failed, and continue to fail, to show a good faith basis for believing that their underpayment of wages was in compliance with the law."  *Id.* at 29.  Additionally, Defendants knew that the law required employees to have an uninterrupted meal break but instructed employees to work through lunch anyway.  *Id.* at 28.  In support, Gonzalez cites employee declarations testifying that they were made to work through lunch but cite no other evidence in the record nor any analogous cases.  Defendants respond that they "acte[d] in subjective good faith with objectively reasonable grounds for believing that the wage notices provided to them by the New York [DOL] did not violate the FLSA and NYLL.  If employers in New York cannot reply on their own [DOL], who can they have confidence in?"  Doc. 133 at 13.  Additionally, Defendants dispute that employees were made to work through the meal break, as they were "quite aware of the rules and implemented them fairly."  *Id.*

Both parties' failures to cite relevant law and evidence in support of their arguments prevents entry of summary judgment.  As before, Gonzalez's evidence is an insufficient basis upon which to find willfulness.  And while the employee declarations may be evidence of a labor law violation, they do not demonstrate the presence or absence of any good faith efforts by Defendants to comply with the law.  Defendants' conclusory assertion that their reliance on the DOL forms demonstrates good faith cannot

save them; to be a viable argument, it would need to be coupled with citations to relevant precedent.  Accordingly, based on the record presently before the Court, it cannot grant summary judgment as to the presence or absence of Defendants' good faith efforts or, therefore, as to the availability of liquidated damages.

   6.   *The Court Cannot Decide on Summary Judgment whether Lamas and Poulakakos are "Employers" Within the Meaning of the FLSA and NYLL*

   Gonzalez argues that Lamas and Poulakakos are jointly and severally liable as employers under the FLSA and NYLL.  Doc. 124 at 30–32.  Defendants do not address the issue.[9]  *See* Doc. 133.

   The Second Circuit has used an "economic reality" test to determine whether an individual is an employer.[10]  *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984).  It considers whether the defendant "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Id.*  But none of these factors are either dispositive or exclusive. *See Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71 (2d Cir. 2003).  Courts may consider other relevant evidence to determine whether "an entity has functional control over workers even in the absence of the formal control measured by the *Carter* factors." *Id.* at 72 (considering whether the defendants' premises and equipment were used for the plaintiffs' work, the degree to which the defendants supervised the plaintiffs' work, and whether the plaintiffs worked exclusively or predominantly for the defendants).  Thus, the test for "employer" liability "as a flexible concept to be determined on a case-by-case

---

[9] Even though Defendants do not oppose this portion of the summary judgment motion, as before, the Court must review the motion "and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law."  *Vt. Teddy Bear Co., Inc.*, 373 F.3d at 246; *see also Amaker*, 274 F.3d at 681.

[10] Courts in this Circuit define "employer" under the NYLL coextensively with that under FLSA and apply the same test for both.  *Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 132 n.19 (S.D.N.Y. 2020) (collecting cases); *Jie Weng v. New Shanghai Deluxe Corp.*, No. 19-cv-9596 (ER), 2022 U.S. Dist. LEXIS 184276, at *10 (S.D.N.Y. Oct. 7, 2022) (same).

basis by review of the totality of the circumstances." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013) (citation omitted); *see also Barfield v. N.Y.C. Health and Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008) (holding that there is "no rigid rule" to define an employer in the Second Circuit).  Owners will be deemed employers if they have "operational control," "control[] significant functions of the business," or set employee salaries and make hiring decisions.  *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 192 (S.D.N.Y. 2003) (citation omitted).  Generally, this requires that they have "some direct contact with the plaintiff employee, such as personally supervising the employee's work, including determining the employee's day-to-day work schedules or tasks, signing the employee's paycheck or directly hiring the employees." *Vasto v. Credico (USA) LLC*, No. 15-cv-9298 (PAE), 2016 WL 4147241, at *6 (S.D.N.Y. Aug. 3, 2016) (internal quotation marks and citation omitted).  But the question of whether an individual is an employer "is a mixed question of law and fact and individual employer liability is therefore 'rarely suitable for summary judgment.'" *Redzepagic v. Hammer*, No. 14-cv-9808 (ER), 2017 U.S. Dist. LEXIS 27984, at *27 (S.D.N.Y. Feb. 27, 2017) (citation omitted).

Gonzalez has offered insufficient evidence from which the Court can conclude that Lamas and Poulakakos are employers.  Although it is undisputed that both are partial owners are Le District (Doc. 134 ¶¶ 5–6), that alone is not enough. *See Vasto*, 2016 WL 4147241, at *6; *Ansoumana*, 255 F. Supp. 2d at 192.  It is also undisputed that Lamas and Poulakakos set policies and payroll, which Muller then implemented, and that Muller reported to them regarding Le District operations.  Doc. 134 ¶¶ 7, 9.  Gonzalez also contends that Lamas and Poulakakos had authority to hire and fire Muller, who in turn had the authority to hire and fire members of the Class, and that Lamas and Poulakakos had access to the employee records if they wanted to review them.  Doc. 124 at 30–32. But the record shows that Lamas and Poulakakos had the authority to fire *only* Muller, not individual employees (Doc. 126-1 at 7:25–8:11), and they had access *only* to Muller's

2aeb9b3edae20bcc

employee records, not all employees' (Doc. 126-2 at 24:25–25:12).  Gonzalez cites no cases, however, in which a court found that an owner's similar operational control by proxy of another executive employee was sufficient to deem the owner an employer within the meaning of the FLSA or NYLL.  Doc. 124 at 30–32.  And neither party offers any evidence as to whether Lamas and Poulakakos were on site at Le District, determined day-to-day tasks, or otherwise personally interacted with the plaintiff employees.  *See id.*; *Zheng*, 355 F.3d at 72.  It is significant that Lamas and Poulakakos set policies and payroll, and supervised Muller's implementation of the same, which are at the heart of the Class' NYLL and FLSA claim.  *Ansoumana*, 255 F. Supp. 2d at 192.  Still, the Court is unable to conclude, from the record before it, that they were employers as a matter of law.  *See Redzepagic*, 2017 U.S. Dist. LEXIS 27984, at *27.  Accordingly, Gonzalez's motion for summary judgment is denied as to Lamas and Poulakakos' status as employers within the meaning of the NYLL and FLSA.

## III.   CONCLUSION

For the reasons set forth above, Gonzalez's motion for class certification is GRANTED.  Gonzales is directed to submit the class notice materials by March 26, 2024.

Further, Gonzalez's motion for partial summary judgment is GRANTED solely as to the claims for unpaid minimum wage and WTPA violations and is otherwise DENIED.  The parties are directed to appear for a conference on April 24, 2024 at 10:30

a.m. before the Honorable Edgardo Ramos in Courtroom 619 of the United States

Courthouse, 40 Foley Square, New York, NY 10007.

The Clerk of Court is respectfully directed to terminate the motions (Docs. 121 &

123).

It is SO ORDERED.

Dated:   March 18, 2024
         New York, New York

_____
            EDGARDO RAMOS, U.S.D.J.